IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(Santa Fe Division)

WAYNE KENNETH AUGÉ, II, M.D.
522 Wapiti Rd.
San Miguel County, Colorado  81435,

Individually and as trustee on behalf of
   The Covalent Global Trust,

       Plaintiffs,

v.

Case No. 1:14-CV-1089

STRYKER CORPORATION
2825 Airview Blvd.
Kalamazoo, Michigan  49002

Serve: CT Corporation System
      Registered Agent
       123 East Marcy Street
      Santa Fe, New Mexico 87501,

and

HOWMEDICA OSTEONICS CORP.
    d/b/a Stryker Orthopaedics
325 Corporate Drive
Mahwah, New Jersey  07430,

Serve:  The Corporation Trust Company
       820 Bear Tavern Rd.
       West Trenton, New Jersey  08628,

       Defendants.

COMPLAINT FOR BREACH OF CONTRACT

Plaintiff Wayne Kenneth Augé, II, M.D., acting in his individual capacity and as trustee

on behalf of The Covalent Global Trust, by his undersigned counsel, states his Complaint for

breach of contract and associated wrongs against Defendants Stryker Corporation and its subsidiary Howmedica Osteonics Corp.  In support of his claims Plaintiff alleges as follows:

## I.  PARTIES

1. Plaintiff Wayne Kenneth Augé, II, M.D. ("Dr. Augé") is an individual citizen of the State of Colorado, who currently resides at the address shown in the caption of this Complaint.  Dr. Augé is a medical doctor, who practiced medicine as a board certified orthopaedic surgeon.  Dr. Augé is also an innovator and inventor who has created new and improved medical tools, equipment, products, techniques and procedures that are manufactured, sold or utilized by businesses and health care providers in the United States and throughout the world, including the products and techniques giving rise to rights and interests that are the subject of this Complaint.

2. Dr. Augé is the trustee of The Covalent Global Trust, a revocable trust he created in 2003, to which he has caused assets to be assigned that include rights and interests that are the subject of this Complaint.

3. Defendant Stryker Corporation ("Stryker") is a publically traded corporation organized under the laws of the State of Michigan having its worldwide corporate headquarters located at the address shown in the caption of this Complaint.  Stryker is engaged in the manufacture and sale of a variety of medical and surgical products, including products based on and incorporating innovative designs developed by Dr. Augé for use in surgery and medical procedures which Stryker sells, or is preparing to sell, to health care providers and institutions in the United States and throughout the world.

4. Defendant Howmedica Osteonics Corp, doing business as Stryker Orthopaedics ("Howmedica"), is a subsidiary corporation of Stryker, organized under the laws of the State of

New Jersey, having its principal offices located at the address shown in the caption of this Complaint.  Howmedica is engaged in the development, manufacture and sale of orthopaedic products and services, including products incorporating innovative designs for orthopaedic or other medical and surgical products developed by Dr. Augé.  In all its actions described herein Howmedica acted at Stryker's direction and under its control, acting as its _alter_ _ego_, for Stryker's benefit.

## II.  JURISDICTION AND VENUE

5. This matter concerns claims that exceed the value of $75,000, exclusive of interests and costs, and is between citizens of different states, and this Court therefore has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

6. This Court has personal jurisdiction over Stryker, which regularly conducts business in New Mexico and which entered agreements with Dr. Augé that were entered and performed in New Mexico and give rise to his claims alleged herein that are governed by the laws of New Mexico and are expressly to be enforced in courts found in Santa Fe, New Mexico.

7. This Court has personal jurisdiction over Howmedica, which regularly conducts business in New Mexico, and which has specifically engaged in business and entered agreements with Dr. Augé in New Mexico concerning dealings that are the subject of this Complaint.

8. Venue is properly found in this judicial district, where a substantial part of the events giving rise to Plaintiff's claims occurred, in accord with 28 U.S.C. § 1391(b); and to which Dr. Augé and Stryker agreed in one or more agreements they entered giving rise to Plaintiff's claims.

## III.  BACKGROUND FACTS

9.  Beginning in the 1990's, Stryker encouraged Dr. Augé to allow it to commercialize some of his innovative developments in medical and surgical technology, which included, inter alia, devices and techniques he had developed or was working on related to orthopaedic medicine and surgery.  In order to gain access to Dr. Augé's innovative ideas and developments and to assure him that he would not lose ownership or control of his ideas and developments, Stryker, acting then through a subsidiary entity named Stryker Endoscopy, Inc. ("Stryker Endoscopy"), entered a Confidentiality Agreement with Dr. Augé on February 29, 2000, assuring Dr. Augé that any confidential information he provided would remain his property.  Stryker had selected its subsidiary Stryker Endoscopy to be the signatory to that Confidentiality Agreement for internal corporate purposes of Stryker as the parent company, and that Stryker and its family of companies were bound by that Agreement.

10.  The February 29, 2000 Confidentiality Agreement expressly provided that any improvements made by Stryker to products commercializing the confidential information disclosed by Dr. Augé were to remain his property; that upon his request Stryker would assign to him all intellectual property rights in any improvements it made to the designs and techniques he disclosed; that he would be entitled to injunctive relief as well as damages resulting from any violation by Stryker of their agreement; and that he would be entitled to recover Stryker's profits and his own attorneys fees as a result of such violation.

11.  Promptly after entry of the February 29, 2000 Confidentiality Agreement, Dr. Augé disclosed to Stryker a number of his ideas and proposed devices and techniques for consideration by Stryker, including systems and procedures for use in a variety of surgical procedures.  Over the ensuing years Stryker made plans to further develop and market products

4

and systems incorporating a number of the ideas, devices, systems and techniques disclosed by Dr. Augé.

12. Also over the ensuing years Stryker requested and Dr. Augé agreed to enter a series of agreements to extend the February 29, 2000 Confidentiality Agreement. These successor agreements were entered by Dr. Augé individually and on behalf of one of two business entities he controlled, Center of Orthopaedic and Sports Performance Research, Inc. ("COSPR") and MAP Technologies, LLC ("MAP"), with Stryker directly or with its subsidiaries Stryker Endoscopy or Howmedica, always with the understanding that Dr. Augé and Stryker's family of companies were all bound thereby. The basic provisions of all the confidentiality agreements were essentially the same, in that Stryker agreed to the non-disclosure of confidential information provided by Dr. Augé or his associated companies, and that the ownership of improvements made by Stryker to products commercializing Dr. Augé's innovations belonged to him and either of his related companies, COSPR or MAP. The two most recent of these agreements, dated December 2, 2003 and August 16, 2007 respectively, expressly provided that they were continuations of previous agreements, with the rights originally granted to Dr. Augé and COSPR assigned to MAP, and with the previous confidentiality agreements to remain in effect.

13. In 2008, MAP initiated dissolution. Its assets then included the rights and interests that had initially belonged to Dr. Augé and COSPR pursuant to the series of Confidentiality Agreements entered with Stryker, and as a result of MAP's dissolution those assets were distributed to Dr. Augé individually and to COSPR. In 2013, COSPR, whose shares Dr. Augé had transferred to his Covalent Global Trust, was dissolved and its share of those assets were distributed to Dr. Augé as trustee of that trust.

14. Based on promises of compensation to Dr. Augé, Stryker and one or more of its subsidiary entities undertook to develop and commercialize new medical and surgical products, systems and techniques incorporating technology disclosed by Dr. Augé pursuant to the confidentiality agreements entered by the parties. To that end, with an assignment by Dr. Augé of his rights as an inventor, Stryker submitted applications naming Dr. Augé as an inventor seeking to patent its TwinLoopFlex instrumentation suture and anchor system ("TwinLoopFlex"), pursuant to which U.S. Patent Nos. 8,439,947 B2 ("the '947 Patent") and 8,911,474 B2 ('the '474 Patent) subsequently were issued to Stryker's subsidiary, defendant Howmedica, on May 14, 2013 and December 16, 2014, respectively.

15. In further recognition of its need to have authorization from Dr. Augé to exploit its commercialization of technology he had disclosed to it under the terms of the February 29, 2000 and successor confidentiality agreements, Stryker and Augé negotiated the terms of compensation Dr. Augé would agree to accept for use of his technology and enhancements. An Assignment and Royalty Agreement ("Royalty Agreement") was entered as of July 21, 2009, between Howmedica as the designee of Stryker and Dr. Augé and COSPR, all of whose rights in which were subsequently assigned to Dr. Augé. Howmedica there agreed to pay royalties to COSPR and Dr. Augé for the TwinLoopFlex products at the rate of 3 percent of net worldwide sales for medical instrumentation and 1.5 percent of such sales of implants, for a period equal to the greater of seven years after the first commercial sale of such products as were subject to the Royalty Agreement, or the life of a patent that might issue on the invention incorporated in that product. The agreed royalty rates at that time were expressly reduced from the rates the parties had been discussing. Dr. Augé agreed to these lower rates because it was agreed the Royalty

6

Agreement did not cover other products containing further improvements of the TwinLoopFlex product, which had such improvements been included would have required a higher royalty rate.

16. Beginning in or around 2009 Stryker, through its Howmedica subsidiary, began to sell its TwinLoopFlex product, and at that time began to provide quarterly reports and pay royalties to Dr. Augé pursuant to the terms of the Royalty Agreement.

17. Over the years following the parties' entry of the Royalty Agreement, Stryker began to market and offer for sale a number of products incorporating designs for medical and surgical products and techniques, and improvements on the TwinLoopFlex suture and anchor product, all based on information disclosed by Dr. Augé subject to the series of confidentiality agreements entered by the parties beginning with the February 29, 2000 Confidentiality Agreement, as described above. The additional products marketed and offered for sale by Stryker and/or Howmedica, acting under Stryker's direction and control, included a system involving suture anchors incorporating Dr. Augé's designs and techniques which Stryker and Howmedica (referenced herein jointly as "the Stryker Defendants") marketed under the trade name Iconix; a flexible reaming instrument and system marketed by the Stryker Defendants under the trade name VersiTomic; and an improved flexible drill for procedures requiring drilling small holes in bone matter, which the Stryker Defendants marketed under the trade name MicroFX.

18. The Stryker Defendants, through their authorized representatives, acknowledged to Dr. Augé that the Iconix products incorporated and improved upon innovative designs he had created and provided to Stryker, all subject to the series of confidentiality agreements entered by the parties. At the time Stryker and Howmedica began to sell the Iconix products, in or around 2012, they began to provide periodic reports to Dr. Augé and paid him royalties at the same rates

as provided in the Royalty Agreement governing the rates at which royalties were being paid for the TwinLoopFlex product line, which the parties tacitly accepted as a temporary situation until they completed negotiations for an agreement on the Iconix products.

19. By early 2013 the Stryker Defendants realized that their Iconix products were or would be replacing their TwinLoopFlex products in the market. At that time they began negotiating with the purpose of reducing the obligation they had undertaken to pay Dr. Augé royalties on both the TwinLoopFlex and the Iconix products. Throughout the year 2013 representatives of the Stryker Defendants repeatedly affirmed to Dr. Augé that they recognized his contribution to the Iconix products, and presented him proposed terms for payment that were unacceptable to Dr. Augé, which would have had the consequences of limiting the amount and duration of his royalties for both the TwinLoopFlex and Iconix products in a manner that was unfairly disadvantageous to Dr. Augé. When the parties failed to reach agreement on payment terms for the Iconix product, the Stryker Defendants ceased paying royalties to Dr. Augé or providing him quarterly reports with respect to sales of the Iconix products, and instead, acting in bad faith, began to fabricate knowingly false justifications for their newly-asserted contention that they owed no obligation to Dr. Augé with respect to the Iconix products.

20. When negotiations concerning payments owed to Dr. Augé with respect to the Stryker Defendants' Iconix product line failed to result in an agreement between the parties, Dr. Augé, acting in accord with the confidentiality agreements he had entered with Stryker, requested Stryker to assign to him all rights in the Iconix product lines. Stryker then refused to honor its obligation to do so despite the terms of those agreements; and refused to negotiate with Dr. Augé to compensate him for their use of his confidential information or any improvements they had made.

21. At or about the same time the Stryker Defendants ceased to pay Dr. Augé for the Iconix Products they were selling, he became aware the Stryker Defendants had introduced their VersiTomic and MicroFX products to the market, which products also incorporated innovative design improvements Dr. Augé had created and had provided to Stryker subject to the series of confidentiality agreements described above. Rather than inform Dr. Augé about their introduction of these products, the Stryker Defendants actually hid these new products from Dr. Augé and have never provided him any reports of their sales or offered to pay him royalties on their sales.

22. When Dr. Augé learned of the Stryker Defendants' commercialization of the VersiTomic and MicroFX products he demanded Stryker assign to him all rights in those product lines, which they refused to do, despite the provisions of the agreements between the parties. The Stryker Defendants, again acting in bad faith, again fabricated knowingly false justifications for not providing him information about those products or failing to either assign all rights in those products to him or to compensate him for their use of his designs and sales of those products.

23. The Stryker Defendants committed all these actions described above with knowledge of Dr. Augé's rights under agreements they had structured and entered, or promised they would enter, with Dr. Augé for the purpose of securing the right to commercialize, market and sell medical and surgical devices, techniques and systems created by Dr. Augé for their own benefit.

## IV.  CLAIMS FOR RELIEF

### COUNT I

### (Breach of Contract)

24. Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 23 above.

25. By the actions alleged herein, Stryker and Howmedica breached their contractual obligations to Dr. Augé by utilizing his proprietary designs, techniques and enhancements, and then by failing to either assign to him rights in, or to pay him compensation for product lines including but not necessarily limited to those named Iconix, VersiTomic and MicroFX, all in violation of a series of agreements entered by the parties culminating in the July 21, 2009 Royalty Agreement.

26. By these actions Stryker and Howmedica have caused damage to Dr. Augé in an amount to be established at trial, in excess of $5,000,000, exclusive of interest and costs; and to an injunction prohibiting the Stryker Defendants from continuing to violate their contractual obligations.

### COUNT II

### (Breach of Obligation of Good Faith and Fair Dealing)

27. Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 26 above.

28. By the actions alleged above, Stryker and Howmedica, acting knowingly, willfully and maliciously in bad faith, in conscious disregard of their contractual obligations to Dr. Augé, violated and breached the obligation of good faith and fair dealing implicit in all the contracts they had entered with Dr. Augé.

29.     As a result of the actions alleged above, Stryker and Howmedica have caused injury to Dr. Augé, and are liable to him both for compensatory damages in an amount to be established at trial, believed to be in excess of $5,000,000 exclusive of interest and costs, and are further liable to Dr. Augé for exemplary damages and to reimburse him for his attorney's fees incurred in bringing this action.

## COUNT III

(Common Law Unfair Practices and Unfair Competition)

30.     Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 29 above.

31.     By the actions described above, Stryker and Howmedica have engaged in conduct in knowing violation of Dr. Augé's rights and interests, by utilizing his proprietary products, procedures, techniques and enhancements for their own benefit, passing them off as defendants' own, in violation of Dr. Augé's right to be free from such unfair practices and competition.

32.     By the actions described above Stryker and Howmedica have caused injury to Dr. Augé, and Dr. Augé is entitled to injunctive relief prohibiting those defendants from engaging in such unfair practices as are alleged herein, and is further entitled to recover his actual damages, in an amount believed to be in excess of $5,000,000, exclusive of interests and costs, to be proved at trial.

## COUNT IV

(New Mexico Unfair Practices Act)

33.     Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 32 above.

34. By the actions described above, Stryker and Howmedica have engaged in unfair and unconscionable trade practices in violation of Dr. Augé's rights and interests protected by the New Mexico Unfair Practices Act, 1978 NMSA § 57-12-1, et seq.

35. By the actions described above Stryker and Howmedica have caused injury to Dr. Augé, and Dr. Augé is entitled to an injunction prohibiting those defendants from engaging in the practice of marketing and selling products and systems incorporating Dr. Augé's designs and enhancements, including but not limited to their Iconix, VersiTomic and MicroFX products and systems; and Dr. Augé is further entitled to recover his actual damages, exemplary damages, attorney's fees and costs all as provided by the Unfair Practices Act.

COUNT V

(New Mexico Uniform Trade Secrets Act)

36. Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 35 above.

37. By their actions described above Stryker and Howmedica, acting surreptitiously and by improper means, willfully and maliciously, misappropriated Dr. Augé's proprietary trade secrets that defendants incorporated in their product lines, including but not limited to those named TwinLoopFlex, Iconix, VersiTomic and MicroFX, and offered and sold such products to the public, all in violation of New Mexico's Uniform Trade Secrets Act, 1978 NMSA § 57-3A-1 et seq.

38. By the actions described above, Stryker and Howmedica have caused injury to Dr. Augé and Dr. Augé is entitled to injunctive relief prohibiting defendants from marketing and selling the offending products and systems, and Dr. Augé is entitled to recover both

compensatory and exemplary damages, including his attorney's fees incurred in enforcing his rights, as provided by the New Mexico Uniform Trade Secrets Act.

## COUNT VI

### (Quantum Meruit)

39.     Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 38 above.

40.     By the actions described above Dr. Augé conferred a valuable benefit on the Stryker Defendants with the reasonable expectation that he would be compensated reasonably for the value of his contribution incorporated in the Iconix, VersiTomic and MicroFX product lines, and is accordingly entitled to receive the value of his contribution.

41.     Dr. Augé is entitled to receive an award of damages from the Stryker Defendants for the reasonable value of innovative designs they incorporated in these products, in an amount believed to be in excess of $5,000,000, which shall be established at trial.

## COUNT VII

### (Unjust Enrichment)

42.     Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 41 above.

43.     By the actions described above the Stryker Defendants have incorporated innovative designs originally developed by Dr. Augé in products they marketed and sold under the names Iconix, VersiTomic and MicroFX, without compensating him for their use, and accordingly have been unjustly enriched by their actions.

44.     By their actions described above the Stryker Defendants have incurred an equitable obligation to pay Dr. Augé the reasonable value of his innovative designs and

developments incorporated in their Iconix, VersiTomic and MicroFX product lines, which value is believed to be in excess of $5,000,000, and which shall be established at trial.

## COUNT VIII

### (Intentional Business Tort)

45. Dr. Augé realleges and incorporates herein by reference the facts alleged in paragraphs 1 through 44 above.

46. By their actions described above the Stryker Defendants have, acting intentionally, maliciously and in bad faith, sought to injure Dr. Augé in his business.

47. By their actions described above the Stryker Defendants have caused injury to Dr. Augé in his business by willfully omitting information about their conduct complained of, in order to avoid paying Dr. Augé amounts properly owed in connection with their marketing and sale of their Iconix, VersiTomic and MicroFX products, and Dr. Augé is accordingly entitled to recover his actual damages, exemplary damages, attorney's fees and costs incurred in enforcing his rights in order to remedy the wrongs done.

## V. PRAYER FOR RELIEF

WHEREFORE, Dr. Augé prays for judgment against defendants Stryker and Howmedica, jointly and severally, as follows:

1. That this Court enter judgment in favor of Dr. Augé and against Stryker and Howmedica for breach of contract, and award Dr. Augé damages in an amount believed to be in excess of $5,000,000, which amount shall be established at trial.

2. That this Court order Stryker and Howmedica to provide an accounting of its sales and profits in connection with their sale of the products found to include the designs and techniques and enhancements provided by Dr. Augé pursuant to the confidentiality agreements

entered by and among the parties, including but not limited to Iconix, VersiTomic and MicroFX, and that the Court award Dr. Augé a reasonable royalty based on those sales, now owing on past sales and to be paid on future sales, in accordance with the Royalty Agreement; and

      3.      That this Court award Dr. Augé damages caused by the unfair practices of Stryker and Howmedica, all as provided under common law and under the provisions of the New Mexico Unfair Practices Act, in the amount of all profits earned by those defendants on the sale of Iconix, VersiTomic and MicroFX products, or any other products incorporating improvements on Dr. Augé's designs which amount shall be multiplied in accordance with the Unfair Practices Act.

      4.      That this Court find that Stryker and Howmedica, acting knowingly, willfully and maliciously, have misappropriated Dr. Augé's proprietary designs and techniques by improper means, in violation of the New Mexico Uniform Trade Secrets Act, and that it award Dr. Augé all relief to which it is entitled under that Act, including but not limited to compensatory damages in an amount believed to be in excess of $5,000,000, exclusive of interest and costs, multiplied under that Act, exemplary damages, and attorney's fees incurred by Dr. Augé in seeking relief hereunder.

      5.      That this Court find that the Stryker Defendants continued sale of products containing Dr. Augé's innovative designs and techniques, including but not limited to Iconix, VersiTomic and MicroFX are unlawful and will cause irreparable harm to Dr. Augé, and the sale of those products be preliminarily and permanently enjoined.

      6.      That this Court find the Stryker Defendants' refusal to assign to Dr. Augé title to the improvements to his designs or to pay him the profits they earned from products incorporating those improvements is in violation of the series of confidentiality agreements

entered by the parties, and order the Stryker Defendants to specifically perform their obligations to fulfill their contractual obligations in those respects.

7. That this Court award Dr. Augé prejudgment interest on the amount of all damages awarded him against Stryker and Howmedica, jointly and severally.

8. That this Court award Dr. Augé his costs of suit as permitted by the laws and rules governing this proceeding, including but not limited to an award of attorney's fees he incurred in seeking relief hereunder, as provided by applicable law.

9. That this Court award Dr. Augé post-judgment interest on all amounts payable pursuant to the judgment of the Court.

10. That this Court award Dr. Augé such further relief as it deems just and proper.

## VI.  JURY DEMAND

Plaintiff requests trial by jury on all claims triable by jury alleged in its Complaint.

Respectfully submitted

PEACOCK MYERS, P.C.

By: /s/ JLS
   Jeffrey L. Squires
   NM Bar No. 143015
   Email: jsquires@peacocklaw.com
   201 Third St. NW, Suite 1340
   Albuquerque, NM 87102
   Office: (505) 998-6116
   Fax: (505) 243-2542

G:\A-Clients\AUGE\LIT\Stryker\Complaint re Stryker Final.docx