IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WAYNE AUGÉ, II, M.D.,
Individually and as trustee on behalf of
The Covalent Global Trust,

    Plaintiffs,

vs.                                                                           Civ. No. 14-1089 KG/SMV

STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORPORATION,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' Motion to Dismiss, or in the alternative, for More Definite Statement and Memorandum in Support Thereof (collectively, Defendants' Motion), filed February 27, 2015. (Docs. 16 and 17). Plaintiffs filed a response on March 11, 2015, and Defendants filed a reply on March 30, 2015. (Docs. 20 and 21). Having reviewed Defendants' Motion, the accompanying briefs, and the Complaint (Doc. 1), the Court grants, in part, and denies, in part, Defendants' Motion.

A.  *Complaint for Breach of Contract (Complaint) (Doc. 1)*[1]

This diversity case arises from a dispute regarding royalty payments Stryker Corporation and Howmedica Osteonics Corporation (collectively, Defendants) allegedly owe Plaintiffs. Plaintiff Wayne Augé, II, M.D., (Plaintiff Dr. Augé) claims that he entered into a Confidentiality Agreement on February 29, 2000, (February 29, 2000, Agreement), with Defendant Stryker regarding Plaintiff Dr. Augé's devices and techniques related to orthopaedic medicine and

---

[1] For purposes of resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pled facts as true. Accordingly, the Court has relied on Plaintiffs' Complaint in outlining the facts pertinent to this motion.

surgery.  (Doc. 1) at ¶ 9.  The February 29, 2000, Agreement provided that any information Plaintiff Dr. Augé disclosed would remain his property.  *Id.*  Defendant Stryker's subsidiary, Stryker Endoscopy, was the signatory to the February 29, 2000, Agreement, nonetheless, Defendant Stryker, as the parent company, was bound to the February 29, 2000, Agreement.  *Id.*

The February 29, 2000, Agreement included the following express terms:  (1) "any improvements made by [Defendant] Stryker to products commercializing the confidential information disclosed by [Plaintiff] Dr. Augé were to remain his property;" (2) upon Plaintiff Dr. Augé's request, Defendant Stryker "would assign to [Plaintiff Dr. Augé] all intellectual property rights in any improvements it made to the designs and techniques he disclosed;" (3) that [Plaintiff Dr. Augé] "would be entitled to injunctive relief as well as damages resulting from any violation by [Defendant] Stryker of their agreement;" and (4) "that [Plaintiff Dr. Augé] would be entitled to recover [Defendant] Stryker's profits and his own attorneys [sic] fees as a result of such violation."  *Id.* at ¶ 10.

Plaintiffs allege that shortly after the parties executed the February 29, 2000, Agreement, Plaintiff Dr. Augé disclosed to Defendant Stryker "a number of his ideas and proposed devices and techniques," including "systems and procedures for use in a variety of surgical procedures." *Id.* at ¶ 11.  Then, over a period time, the parties entered into a series of agreements extending the February 29, 2000, Agreement.  *Id.*  Plaintiff Dr. Augé entered the successor agreements individually, and on behalf of one of two business entities he controlled, Center of Orthpaedic and Sports Performance Research, Inc. (COSPR) and MAP Technologies, LLC (MAP).[2]  *Id.* at ¶ 12.  Defendant Stryker also entered the successor agreements directly or accompanying its

---

[2] In 2008, MAP initiated dissolution which resulted in its assets—including the rights and interests addressed in the successor agreements—distributed to Plaintiff Dr. Augé and to COSPR. (Doc. 1) at ¶ 13.  In 2013, COSPR was dissolved and its assets were transferred to Covalent Global Trust.  *Id.*  According to Plaintiffs, the shares were then distributed to Plaintiff Dr. Augé as trustee of Covalent Global Trust.  *Id.*

2

subsidiaries, Stryker Endoscopy or Howmedica. *Id.* The basic provisions of the successor agreements stated that Defendant Stryker agreed to the non-disclosure of confidential information provided by Plaintiff Dr. Augé, COSPR, or MAP. *Id.* The agreements further provided that any improvements by Defendant Stryker to its products commercializing Plaintiff Dr. Augé's innovations belonged to Plaintiff Dr. Augé, COSPR, or MAP. *Id.* The two most recent successor agreements, respectively dated December 2, 2003, and August 16, 2007, expressly provided that those agreements "were continuations of the previous agreements, with the rights originally granted to Plaintiff Dr. Augé and COSPR assigned to MAP, and with the previous confidentiality agreements to remain in effect." *Id.*

Plaintiffs further claim that, at some point, Defendant Stryker and one or more of its subsidiaries developed and commercialized new medical and surgical products incorporating technology disclosed by Plaintiff Dr. Augé. *Id.* at ¶ 14. As a result of those new medical and surgical products, Defendant Stryker filed two patent applications for the TwinLoopFlex instrumentation suture and anchor system (TwinLoopFlex). *Id.* The applications named Plaintiff Dr. Augé as the inventor of TwinLoopFlex. *Id.* On May 14, 2013, and December 16, 2014, United States Patent Numbers 8,439,947 B2 (947 Patent) and 8,911,474 B2 (474 Patent), respectively, were issued to Defendant Howmedica for the TwinLoopFlex. *Id.*

On July 21, 2009, Defendant Howmedica, as the designee of Defendant Stryker, Plaintiff Dr. Augé and COSPR entered an Assignment and Royalty Agreement (Royalty Agreement). *Id.* at ¶ 15. Plaintiffs allege that Defendant Howmedica agreed to pay royalties to COSPR and Plaintiff Dr. Augé for the TwinLoopFlex products at the rate of three percent (3%) of net worldwide sales for medical instrumentations and one point five percent (1.5%) "of such sales of implants, for a period equal to the greater of seven years after the first commercial sale of such

products as were subject to the Royalty Agreement, or the life of a patent that might issue on the invention incorporated in that product." *Id.*  Plaintiff Dr. Augé states that he accepted the lower rates because the parties agreed that the Royalty Agreement did not cover other products containing further improvements of the TwinLoopFlex product.  *Id.*

In or around 2009, Defendant Stryker, through its subsidiary Defendant Howmedica, began selling the TwinLoopFlex product.  *Id.* at ¶ 16.  Defendants also provided Plaintiff Dr. Augé quarterly reports and royalties pursuant to the Royalty Agreement.  *Id.*

Over the subsequent years, according to Plaintiffs, Defendant Stryker began marketing and selling "a number of products incorporating designs for medical and surgical products and techniques, and improvements on the TwinLoopFlex suture and anchor product."  *Id.* at ¶ 17.  Plaintiffs claim that the designs and improvements were based on information disclosed by Plaintiff Dr. Augé; and such confidential information was subject to the February 29, 2000, Agreement and all successive agreements.  *Id.*  Plaintiffs allege that the Defendants marketed and sold a product identified as Iconix, "which included a system involving suture anchors incorporating [Plaintiff] Dr. Augé's designs and techniques . . . ."  *Id.*  Plaintiffs further claim that Defendants also marketed and sold a "flexible reaming instrument and system" under the name VersiTomic.  *Id.*  And, Defendants marketed MicroFX, "an improved flexible drill for procedures requiring drilling small holes in bone matter."  *Id.*

Plaintiffs maintain that Defendants, through their representatives, acknowledged that the Iconix products incorporated and improved upon innovative designs Plaintiff Dr. Augé created and provided to Defendant Stryker under the parties' confidentiality agreements.  *Id.* at ¶ 18.  In 2012, Defendants began selling Iconix products and provided Plaintiff Dr. Augé reports and paid royalties at the same rates as the TwinLoopFlex products.  *Id.*  Plaintiffs contend that they

4

accepted the royalty payments as a "temporary situation" until the parties concluded royalty negotiations on the Iconix products. *Id.*

Plaintiffs also state that in 2013, Defendants' representatives affirmed to Plaintiff Dr. Augé that he contributed to the Iconix products. *Id.* at ¶ 19. Despite these affirmations, Plaintiffs state that the parties were unable to reach a royalty agreement because Defendants' proposed terms limited the amount and duration of Plaintiffs' royalties for the TwinLoopFlex and Iconix products. *Id.*

Shortly thereafter, Plaintiffs maintain that Defendants ceased paying royalties and providing quarterly reports with respect to the Iconix products. *Id.* Instead, according to Plaintiffs, Defendants asserted that they owed Plaintiff Dr. Augé no obligation with respect to the Iconix products. *Id.* Plaintiff Dr. Augé, acting in accord with the parties' successor agreements, requested Defendant Stryker assign all rights in the Iconix product lines to him. *Id.* at ¶ 20. Plaintiffs claim Defendant Stryker refused to assign any rights or continue royalty negotiations. *Id.*

Around this same time, Plaintiff Dr. Augé became aware that Defendants had introduced the VersiTomic and MicroFX products to the market. *Id.* at ¶ 21. Plaintiffs claim the VersiTomic and MicroFX incorporate "innovative design improvements" Plaintiff Dr. Augé created and disclosed under the parties' confidentiality agreements. *Id.* With regard to the VersiTomic and MicroFX, Plaintiffs maintain that Defendants failed to inform Plaintiffs about the products, failed to provide Plaintiffs any reports, or offer royalties pursuant to the parties' agreements. *Id.* Consequently, Plaintiff Dr. Augé demanded Defendant Stryker assign all rights in the VersiTomic and MicroFX to him. *Id.* at ¶ 22. Defendants refused to assign any rights or pay royalties to Plaintiffs. *Id.*

In Count I, Plaintiffs state a breach of contract claim against Defendants.  *Id.* at ¶¶ 24–25.  Plaintiffs claim Defendants breached their contractual obligations by utilizing Plaintiff Dr. Augé's proprietary designs, techniques and enhancements, and by failing to either assign to him rights in or pay royalties for the product lines Iconix, VersiTomic, and MicroFX, all in violation of the parties' agreements culminating in the July 21, 2009, Royalty Agreement.  *Id.* at ¶ 25.  Plaintiff Dr. Augé seeks compensatory and injunctive relief for Count I.  *Id.* at ¶ 26.

In Count II, Plaintiffs allege Defendants knowingly, willfully, and maliciously in bad faith violated the obligation of good faith and fair dealing.  *Id.* at ¶¶ 27–28.  Plaintiffs seek compensatory and exemplary damages, and attorneys' fees.  *Id.* at ¶ 29.  In Count III, Plaintiffs bring a common law unfair practices and unfair competition claim against Defendants.  *Id.* at ¶¶ 30–32.  In Count IV, Plaintiffs assert a state law claim under the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -26.  *Id.* at ¶¶ 33–35.  In Count V, Plaintiffs allege Defendants violated the New Mexico Uniform Trade Secrets Act, NMSA 1978, §§ 57-3A-1 to -7.  *Id.* at ¶¶ 36–37.  Under Count V, Plaintiffs seek compensatory and exemplary damages, and injunctive relief.  *Id.* at ¶ 38.  In Count VI and Count VII, Plaintiffs bring claims for equitable relief under quantum meruit and unjust enrichment, respectively.  *Id.* at ¶¶ 39–44.  Finally, in Count VIII, Plaintiffs allege an intentional business tort claim against all Defendants.  *Id.* at ¶¶ 45–47.

Defendants now move to dismiss all Counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  In the alternative, Defendants move for a more definite statement of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(e).  Plaintiffs oppose Defendants' Motion in its entirety.

B.  *Discussion*[3]

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded

---

[3] The Court will discuss the Counts in the order in which Defendants addressed the Counts in Defendants' Motion.

allegations as true and must view them in the light most favorable to the plaintiff.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id*. at 570.  A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Granting a Rule 12(b)(6), however, "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quotation omitted).

1. *Breach of Contract (Count I) and Breach of the Obligation of Good Faith and Fair Dealing (Count II) Claims*

Defendants contend that, even if the Court assumes the Complaint's allegations to be true, Plaintiffs' Complaint does not state a claim for a breach of contract or a breach of the obligation of good faith and fair dealing because the Complaint does not identify the specific agreements in dispute nor provide sufficient factual allegations as to how Defendants breached those agreements.  Defendants further claim Plaintiffs' Complaint fails to identify the specific confidential information disclosed to Defendants and how that information is linked to Defendants new products:  Iconix, VersiTomic, and MicroFX.

A contract is a legally enforceable promise that must consist of "an offer, an acceptance,

7

consideration, and mutual assent." UJI 13-801 NMRA 2015. A person may breach a contract by "failing to perform a contractual obligation when the performance is" required, unless that performance is otherwise excused. UJI 13-822 NMRA 2015. Incomplete performance is a breach of the contract. *Cochrell v. Hiatt*, 97 N.M. 256, 258, 638 P.2d 1101, 1103 (N.M. Ct. App. 1981). To state a claim for breach of contract in New Mexico, the Plaintiff must allege facts showing: (1) existence of a contract; (2) breach of the contract; (3) causation; and (4) damages. *Anderson Living Trust v. ConocoPhillips Co., L.L.C.*, 952 F. Supp. 2d 979, 1030 (D.N.M. 2013).

Reviewing the Complaint, in conjunction with Plaintiffs' response, Plaintiffs' Complaint gives the Court reason to believe that Plaintiffs have a reasonable likelihood of mustering factual support for the breach of contract and the breach of the obligation of good faith and fair dealing claims. While the Court acknowledges that Plaintiffs' Complaint references a "series of agreements," without identifying the agreements in contention, Plaintiffs' response specifically identifies and attaches the following contracts at issue: (1) the February 29, 2000,, Agreement; (2) the December 13, 2000,, Confidentiality Agreement; (3) the December 13, 2000,, Confidentiality Agreement; (4) the December 2, 2003, Confidentiality Agreement; (5) the August 16, 2007, Confidentiality Agreement; and (6) the July 21, 2009, Royalty Agreement. *See* (Docs. 20-1 to 20-6). As such, the Court finds Plaintiffs have sufficiently established the existence of a contract.

Moreover, Plaintiffs' Complaint states the express and basic provisions of the aforementioned agreements. *See* (Doc. 1) at ¶¶ 9–12. And, more importantly, the Complaint sufficiently alleges facts showing how Defendants breached said agreements. *Id.* at ¶¶ 18–23. For instance, Plaintiffs allege that Defendants acknowledged that the Iconix product incorporated Plaintiff Dr. Augé's designs and, as a result, paid Plaintiff Dr. Augé royalties for a period of

time.  Defendants then, according to Plaintiffs' factual allegations, ceased royalty payments and refused to assign all rights of the Iconix product to Plaintiff Dr. Augé—contrary to the express provisions of the parties' agreements.  The Complaint further provides some factual detail with respect to the VersiTomic and MicroFX products.  In particular, Plaintiffs allege that the VersiTomic and MicroFX products are derived from the confidential information disclosed by Plaintiff Dr. Augé under the parties' agreements.  Plaintiffs, additionally, allege that Defendants were able to bring those products to market by incorporating Plaintiff Dr. Augé's innovative design improvements.  Defendants, nonetheless, refused to assign any rights pertaining to VersiTomic or MicroFX to Plaintiffs, thereby resulting in an alleged breach of the parties' agreements.  It is noteworthy that Defendants have not proffered any authority—and the Court has found none—that, at the pleading stage, a plaintiff is required to cite verbatim all confidential information disclosed to an opposing party.  Therefore, at this stage, Plaintiffs have pled sufficient factual allegations, that if assumed to be true, state a plausible breach of contract claim.  *See Animal Care Sys., Inc. v. Hydropac/Lab Prods., Inc.*, 2014 WL 103812, at * 3 (D. Colo. 2014) (finding sufficient factual allegations when plaintiff linked disclosed "confidential material" to a specific product).  Consequently, the Court further finds that Plaintiffs' Complaint suffices to address the breach of the obligation of good faith and fair dealing claim.  *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 439, 872 P.2d 852, 857 (N.M. 1994) (implied covenant of good faith and fair dealing within contract "becomes part of the contract and the remedy for its breach is on the contract itself").  The Court, therefore, concludes Defendants' Motion, with respect to Count I and Count II, is denied.

    2.  *New Mexico Uniform Trade Secrets Act (Count V) Claim*

Defendants argue that Plaintiffs' New Mexico Uniform Trade Secrets Act (UTSA) claim

is subject to dismissal because Plaintiffs failed to identify the "trade secrets" at issue or how Defendants allegedly used the trade secrets.

Under UTSA, a plaintiff may recover damages for misappropriation of a "trade secret." New Mexico defines "trade secret" as information, including a pattern, compilation, formula, program, method, device, process or technique, that:

> (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

NMSA 1978, § 57-3A-2(D).  Misappropriation of a trade secret is defined as:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) disclosure of use of a trade secret of another without express or implied consent by a person who:
>   (a) used improper means to acquire knowledge of the trade secret; or
>   (b) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:  1) derived from or through a person who had utilized improper means to acquire it; 2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or 3) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limits its use; or
>   (c) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

NMSA 1978, 57-3A-2(B).

In this matter, viewing the alleged facts as true and in the light most favorable to Plaintiffs, the Court finds Plaintiffs have sufficiently pled factual allegations to state a claim of relief under UTSA.  In the Complaint, Plaintiffs repeatedly state that, pursuant to the parties' confidentiality agreements, Plaintiff Dr. Augé disclosed to Defendants various "devices and techniques he had developed or was working on related to orthopaedic medicine and surgery." (Doc. 1) at ¶ 9.  Plaintiffs further described the information as "systems and procedures for use in

10

a variety of surgical procedures," and, even more particularly as, "suture anchors incorporating Dr. Augé's designs and techniques." *Id.* at ¶¶ 11, 17. Defendants ask this Court to apply a heightened pleading standard for Plaintiff Dr. Augé's trade secret claims, asserting Plaintiffs should be required to state the "specific information disclosed by Plaintiff" to Defendants that forms the basis of the UTSA claim. Defendants cite to no authority for such a heightened pleading standard. Indeed, "plaintiff is not and cannot be expected to plead its trade secrets in detail. Such a public disclosure would amount to an effective surrender of trade secret status." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 24 (D.D.C. 2002). The Court finds Plaintiffs' general descriptions of the trade secrets at issue—intellectual property relating to devices and techniques for orthopaedic medicine and surgery—are alleged with sufficient factual particularity.

The Court also finds that Plaintiffs have sufficiently pled factual allegations that Defendants knew or had reason to know that Plaintiffs' trade secrets were acquired by improper means. Indeed, the Complaint alleges that Defendants recognized that the Iconix products incorporated Plaintiff Dr. Augé's designs and techniques. (Doc. 1) at ¶ 18. Yet, Defendants allegedly ceased paying Plaintiffs royalties in 2013, despite the parties' confidentiality agreements. *Id.* at ¶¶ 18–19. Furthermore, the Complaint alleges that Defendants utilized Plaintiffs' trade secrets to bring to market the VersiTomic and MicroFX products, but refused to comply with the provisions of the parties' agreements that required Defendants to either pay royalties or assign the rights to Plaintiffs. *Id.* at ¶ 21. Accordingly, the Court is able to draw the reasonable inference that Defendants' utilization and implementation of Plaintiffs' trade secrets, in violation to the parties' agreements, could be found to be an improper means for acquiring the trade secrets. The Court, therefore, concludes that Plaintiffs have sufficiently pled factual

allegations for a plausible claim of relief under UTSA.  Thus, Defendants' Motion with respect to Count V is denied.

    3.   *New Mexico Unfair Practices Act (Count IV) Claim*

Defendants argue Plaintiffs' Complaint fails to state a claim under the New Mexico Unfair Practices Act (UPA), NMSA, 1978 §§ 57-12-1 to -26, because Plaintiffs do not factually allege that Defendants made a false or misleading representation in connection with the sale of products or services.  Plaintiffs counter that Defendants made a false or misleading representation to Plaintiffs when they omitted the facts concerning their commercialization of Plaintiffs' designs and techniques.  Plaintiffs also appear to assert that the omission was made in connection with Defendants' sale of the VersiTomic and MicroFX products to the public.

"The UPA . . . provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices."  *Quynh Truong v. Allstate Ins. Co.*, 2010–NMSC–009, ¶ 22, 227 P.3d 73, 80.  A UPA claim requires an "oral or written statement, visual description, or other representation of any kind" that:  (1) was false or misleading; (2) was knowingly made; (3) was either made in connection with the sale, lease, rental, or loan of goods or services or in the extension of credit or in the collection of debts; (4) was made by a person in the regular course of that person's trade or commerce; and (5) may, tends to, or does deceive or mislead any person. NMSA 1978, § 57-12-2(D).

Here, to establish a "representation of any kind" Plaintiffs contend Defendants falsely represented the production and sales of the VersiTomic and MicroFX products through Defendants omissions to Plaintiffs.  In response, Defendants ignore Plaintiffs' argument that an omission may constitute a representation.  Rather, Defendants posit that Plaintiffs' Complaint fails to allege any deceptive "statement" or "representation" by Defendants.  This Court has held

that the term "representation, as used in the UPA, covers action and inaction, in addition to oral and written statements." *Duke v. Garcia*, 2014 WL 1318646, at *6–7 (D.N.M.).  In the Complaint, Plaintiffs allege Defendants "hid" the VersiTomic and MicroFX products and never provided any sale reports to Plaintiffs.  Viewing these factual contentions in the light most favorable to Plaintiffs, the Court finds Plaintiffs' factual allegation that Defendants "hid" the VersiTomic and MicroFX products from Plaintiffs sufficient for the Court to reasonably infer Defendants inaction violated the UPA.

The Court further finds that Plaintiffs allege with factual particularity that Defendants knowingly made deceptive omissions to Plaintiffs regarding the general production of the VersiTomic and MicroFX products.  *See* (Doc. 1) at ¶¶ 22–23.  The Court, nonetheless, finds that Plaintiffs have not sufficiently pled facts demonstrating Defendants' alleged omissions were made in connection with a sale—to Plaintiffs or third parties.  The Complaint does not address a sale of any kind to a third party or to Plaintiffs.  The Complaint, instead, references "sales" in generalities, *i.e.*, Defendants failed to inform Plaintiffs of any "sales."  *See* (Doc. 1) at ¶¶ 21–22.  Because Defendants, in the alternative, move for a more definite statement of Plaintiffs' claims, the Court determines that, in order to avoid dismissal, Plaintiffs must file an amended complaint sufficiently stating facts in support of a representation that was made in connection with a sale of the VersiTomic and/or MicroFX products.  *See Porter v. Karavas*, 157 F.2d 984, 985–86 (10th Cir. 1946) ("Indefiniteness of a complaint is not ground for dismissing the action if it states a claim showing that the plaintiff is entitled to relief.  And where the complaint states a claim in general language but is not sufficiently definite in certain respects to enable the defendant to answer . . . the remedy is to move for a more definite statement . . . .").  Thus, the Court concludes that Count IV is not subject to dismissal under Rule 12(b)(6) at this time.  The Court,

however, does conclude that a more definite statement is warranted and, thus, Defendants' Rule 12(e) motion is granted as to Count IV.

    4. *Common Law Unfair Competition (Count III) Claim*

Defendants claim that *Thompson v. Youart*, 109 N.M. 572, 787 P.2d 1255 (N.M. Ct. App. 1990), clearly establishes that no common law unfair competition claim exists in New Mexico. And, as a result, Plaintiffs' claim must be dismissed. In response, Plaintiffs concede that the *Youart* Court stated in *dicta* that the UPA represented the "statutory codification" of the common law cause of action. Plaintiffs, nevertheless, contend that this Court should adhere to its recent holding that the common law unfair competition claim is not preempted by the UPA. *See N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 54 F. Supp. 3d 1189, 1234 (D.N.M. 2014). The Court agrees.

In *New Mexico Oncology*, this Court predicted that the New Mexico Supreme Court would not hold that the UPA preempts common law claims arising out of the same conduct as a statutory claim because the plain language of the UPA states that "[t]he relief provided in this section is *in addition* to remedies otherwise available against the same conduct under the *common law* or other statutes of this state." *Id.* (quoting NMSA 1978, § 57-12-10(D) (emphasis added)). In light of the plain language of the UPA, this Court finds *New Mexico Oncology* persuasive and declines to follow *Youart*. Hence, the Court denies Defendants' Motion as to the common law unfair competition claim to the extent that Defendants seek dismissal of the claim on the ground that it is preempted by the UPA.

Next, Defendants argue that Plaintiffs' Complaint does not give sufficient notice of the specific legal claims set forth under the Restatement (Third) Unfair Competition. Indeed, Plaintiffs' Complaint is void of any reference to a particular common law claim under the

Restatement (Third) Unfair Competition. As a result, the Court hereby orders Plaintiffs to file an amended complaint indicating factual allegations and the common law at issue in Count III. Accordingly, Defendants' Motion for a more definite statement is granted with respect to Count III.

   5. *Intentional Business Tort (Count VIII) Claim*

Defendants state, without authority, that New Mexico does not observe intentional business tort as a cause of action. Plaintiffs counter that "New Mexico recognizes a variety of business torts that fall within the category of intentional business torts." (Doc. 20) at 17. In support of their assertion, Plaintiffs cite *Deflon v. Sawyers*, 2006–NMSC–025, ¶ 14, 137 P.3d 577, 583; *Loveless Medical Center v. Mendez*, 1991–NMSC–002, ¶ 31, 805 P.2d 603, 611 (citation omitted); and *Williams v. Ashcraft*, 1963–NMSC–080, ¶ 1, 381 P.2d 55, 55. These cases address two types of intentional torts: intentional interference with a contract and malicious interference with the business relations of another. Plaintiffs do not explain which tort they are asserting. Instead, Plaintiffs claim that the Complaint satisfies the "basic elements" of an intentional business tort. The Court disagrees.

It is well established that "[p]arties to a contract cannot bring an action for tortious interference with an existing contract against each other. Rather, the cause may be asserted only against a third party." *Salazar v. Furr's, Inc.*, 629 F. Supp. 1403, 1410 (D.N.M. 1986) (citation omitted). Here, Plaintiffs' Complaint does not factually allege how Defendants interfered with Plaintiffs' actual or prospective business relations with a third party. The Complaint also lacks any allegations, beyond Plaintiffs' conclusory statement, that Defendants conduct was malicious. With that being said, Plaintiffs have not stated a plausible claim for intentional interference with a contract or malicious interference with the business relations of another. The Court,

nevertheless, determines that an amended complaint may resolve any issues regarding Plaintiffs' "vague and ambiguous" allegations and the actual legal claim being asserted. Plaintiffs, thus, may file an amended complaint setting forth the cause of action and sufficient allegations to give Defendants fair notice and grounds on which Plaintiffs' Count VIII claim rests. Accordingly, Plaintiffs' Count VIII is not subject to dismissal under Rule 12(b)(6), at this time.

6. *Plaintiffs' Equitable Claims: Quantum Meruit (Count VI) and Unjust Enrichment (Count VII)*

Defendants argue that Plaintiffs' equitable claims should be dismissed because New Mexico courts consider unjust enrichment and quantum meruit to be the same causes of action. Furthermore, equitable claims may not be invoked in light of an express contract between the parties. *See Arena Res., Inc. v. Obo, Inc.*, 2010–NMCA–061, ¶¶ 16–17, 238 P.3d 357, 361. Plaintiffs counter that pursuant to Fed. R. Civ. P. 8(d), Plaintiffs properly pled the two equitable claims in the alternative. Defendants, in reply, state that Plaintiffs have not asserted alternative claims of relief, but rather, allege separate claims with no language that they should be construed as alternative claims.

It is well-settled that the Federal Rules of Civil Procedure recognize that a plaintiff may not know in advance which legal theory will succeed; and, therefore, Rule 8(d)(2)–(3) permits a plaintiff to "set forth two or more statements of a claim or defense alternatively or hypothetically" and to "state as many separate claims or defenses as the party has regardless of consistency." *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (recognizing plaintiffs will not always know in advance which legal theory will prevail). In this case, Plaintiffs maintain that they pled the quantum meruit and unjust enrichment claims in the alternative. Accordingly, the Court finds that Plaintiffs' quantum meruit and unjust enrichment claims may be pled in the alternative and, therefore, are not subject to dismissal under Rule

12(b)(6). On the other hand, the Court determines that Plaintiffs' claims in Count VI and Count VII should be amended to clarify that the equitable claims are pled alternatively. Alternative statements of a claim are, generally, explicitly labeled in the complaint as being pled "in the alternative." Additionally, alternative statements are typically the last counts pled. Plaintiffs' Complaint does not follow either of these practices. Consequently, it may be difficult for an opposing party to determine which claims are pled in the alternative without any identification. Therefore, the Court finds that Plaintiffs may file an amended complaint labeling Count VI and Count VII, as alternative theories.

    IT IS, THEREFORE, ORDERED that

    1. Defendants' Motion to Dismiss, or in the alternative, for More Definite Statement (Doc. 16) is granted, in part, and denied, in part; and

    2. Plaintiffs shall have fourteen (14) days from the date of this Memorandum Opinion and Order to file an amended complaint that sets forth (a) plausible factual allegations demonstrating a representation that was made in connection with a sale of the VersiTomic and/or MicroFX products in Count IV; (b) the specific legal bases Plaintiffs rely on in bringing Count III under the Restatement (Third) Unfair Competition; (c) allegations indicating the precise common law claim Plaintiffs contend in Count III; (d) the specific legal bases for Count VIII; (e) what tortious acts and active or prospective business relations support their claim for an intentional business tort in Count VIII; and (f) label Count VI and Count VII as alternative statements of a claim. Failure to timely file an amended complaint that complies with these instructions may result in dismissal of the aforementioned claims with prejudice.

                                                      _____
                                                      UNITED STATES DISTRICT JUDGE