IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CLARKE COLL,**

    **Plaintiff,**[1]

**v.**                                                                                          **No. 14-cv-1089 KG/SMV**

**STRYKER CORPORATION and**
**HOWMEDICA OSTEONICS CORPORATION,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DE-DESIGNATE DISCOVERY MATERIAL MARKED "ATTORNEYS' EYES ONLY"

THIS MATTER is before the Court on Plaintiff's Motion to De-Designate Discovery Material Marked "Attorneys' Eyes Only" [Doc. 68], filed on November 8, 2016. The Court has considered the briefing on the motion [Docs. 73, 88, 89, 100, 119], the relevant portions of the record, the oral argument of February 27, 2017, and the relevant law. Being otherwise fully advised in the premises, the Court finds that Defendants fail to show that the discovery material at issue constitutes trade secrets or that they might be harmed if Dr. Augé sees it. Thus, the motion should be granted to the extent that the materials should be de-designated, but no expenses or fees are warranted.

### Background

In the 1990's, Wayne Augé, II, M.D., (the originally named Plaintiff in this action) made innovative developments in orthopedic medicine and surgery. Defendants were interested in his

---

[1] Mr. Coll was substituted as Plaintiff in this matter when the original Plaintiff, Wayne Augé, II, M.D., filed for bankruptcy. Mr. Coll is the trustee of the bankruptcy estate. [Doc. 30].

inventions, and they entered into a series of confidentiality agreements with him for their common benefit. Defendants utilized Dr. Augé's inventions in several products that went to market. Over the years, however, as Defendants marketed new products with his inventions, Dr. Augé came to believe that Defendants were not fulfilling their agreements to honor his ownership rights or to pay him what they owed. So, Dr. Augé filed this lawsuit in 2014.

The parties anticipated that some materials disclosed in discovery would be sensitive, and they entered into an Agreed Protective Order ("APO") early on. [Doc. 59]. The APO provided for two tiers of protection: "Confidential" and "Attorneys' Eyes Only." *Id.* at 1, 4. Confidential information may be accessed by the parties, including Dr. Augé, but cannot be used for any purpose outside this litigation. *Id.* at 1, 3. Material designated "Attorneys' Eyes Only" ("AEO") may not be accessed by the parties, including Dr. Augé, and is intended to protect "trade secrets or highly confidential, non-public, personal or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." *Id.* at 4.

On August 26, 2016, Defendants produced 86,802 pages of initial disclosures. [Doc. 88] at 8. Of those, approximately 63,335 pages (or 3,809 documents) were designated AEO. *Id.* Plaintiff first objected to the designations in writing on September 30, 2016. [Doc. 89-12] at 4. That same day, defense counsel explained that the designations were necessary because the materials constituted "internal [research and development] and product development files." *Id.*; [Doc. 88] at 9. Counsel conferred at least twice more. *See* [Doc. 88] at 8–9, 9 n.12; [Doc. 68] at 5; [Doc. 102] at 2. Although the APO instructs the producing party (i.e., Defendants) to

2

submit the dispute by formal motion within ten calendar days of the parties' "conference" on the dispute, Plaintiff actually filed the instant motion on November 8, 2016. [Doc. 68]. Plaintiff asks the Court to de-designate the materials and to award attorney fees. *Id.* at 11.

### Standard

"There is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (alterations omitted) (quoting *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979)). Under Fed. R. Civ. P. 26(c)(1)(G), a court may, for good cause, issue a protective order (or permit a party to avail itself of an already issued protective order) to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *In re Cooper Tire & Rubber, Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009). A party seeking that its information only be revealed in a certain way, such as limiting who can view or access the materials, under this Rule "must first establish that the information sought is a trade secret [or other confidential research, development, or commercial information]." *Id.* at 1190; Fed. R. Civ. P. 26(c)(1)(G). Further, that party must additionally "demonstrate that its disclosure might be harmful." *In re Cooper Tire*, 568 F.3d at 1190 (quoting *Centurion*, 665 F.2d at 325). To establish the requisite harm, the party seeking protection must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *E.g., Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 245 (D. Kan. 2010) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)); *accord* JENNER &

BLOCK, MOORE'S ANSWERGUIDE FEDERAL DISCOVERY PRACTICE § 16.29(b) (2017 ed.) (a showing of "specific prejudice or harm" is required to limit the disclosure of trade secrets).

For example, in *McKellips v. Kumho Tire Co.*, a products liability case, the parties had entered into a protective order that prohibited the plaintiffs and their counsel from sharing certain discovery material (e.g., "confidential research, development, or proprietary business information") outside the litigation. 305 F.R.D. 655, 661 (D. Kan. 2015). The protective order notwithstanding, the defendant Kumho opposed producing certain discovery materials, such as the number of tires produced; the specifications and blueprints for the subject tire; skim stock compounds and formulas; manufacturing processes; manufacturing or design defects found; tread separation studies and testing; speed rating; and driver response, effects, risk, and causes of tread separation. *Id.* at 661, 664. Kumho considered these materials to be trade secrets. The Court agreed, but only in part.

Kumho had submitted an affidavit in support of its position that the skim stock compounds and formulas for its tires constituted trade secrets. *Id.* at 663. The court was persuaded that the skim stock materials constituted trade secrets. *Id.* However, the court found that Kumho had not met its burden to establish that the other material constituted trade secrets. *Id.* at 664. For example, the court found that Kumho's vague characterization of the disputed material as "manufacturing processes" was not enough. *Id.* Kumho had not identified any particular aspect of its manufacturing processes that was unique to it, closely guarded, and if disclosed, would be valuable to competitors. *Id.* Further, the court found that the protective

4

order already in place provided sufficient protection for Kumho's information.  Other than the skim stock materials, therefore, the court ordered Kumho to produce the discovery materials.

In *Northern Natural Gas Co. v. L.D. Drilling, Inc.*, the District of Kansas similarly addressed whether materials sought in discovery constituted trade secrets.  2010 U.S. Dist. LEXIS 145522; 2010 WL 9519354 (D. Kan. Mar. 26, 2010) (unpublished).  The plaintiff Northern wanted entry onto L.D. Drilling's land in order to collect natural gas samples from certain gas wells.  U.S. Dist. LEXIS 145522 at *12.  L.D. Drilling submitted an affidavit supporting its claim that allowing such sampling would expose its trade secrets.  *Id.* at 27.  The affiant, Mr. Davis, explained that information about the physical and chemical composition of material produced from the wells was economically valuable especially because the information was not generally known or readily ascertainable to those who might otherwise make use of it. *Id.*  The court did not indicate whether the affidavit was convincing.  Instead, the court assumed without finding that the gas samples were trade secrets and went on to hold that LD Drilling failed to show that it would be harmed by disclosure of the samples.  *Id.* at 30–31.

Once the party seeking protection for its trade secrets has met its initial burden—to show that the materials constitute trade secrets and disclosure of them might cause harm—the burden then shifts to the party seeking disclosure to establish that such disclosure is "relevant and necessary to the action." *Centurion*, 665 F.2d at 325.

> The need for the trade secrets should be balanced against the claim of harm resulting from the disclosure.  "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure."  If the party seeking discovery cannot prove that the information is relevant and necessary, then discovery should be

> denied. However, if the party meets its burden, "the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing."

*In re Cooper Tire*, 568 F.3d at 1190 (internal citations omitted) (quoting *Centurion*, 665 F.2d at 325, 326).

> Where the protection sought is only to prevent certain identified individuals from viewing the materials, such as in-house counsel or the patent inventor, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.

*Layne Christensen*, 271 F.R.D. at 249.

These standards are consistent with the APO in this case, which sets forth the following. The party designating materials AEO must provide (1) a description of the documents so marked and (2) a description of how such documents relate to the issues in this action. [Doc. 59] at 4, ¶ 10. If the receiving party objects to the AEO designation, he must notify the producing party in writing. The parties must use their best efforts to resolve the objections between themselves. If they cannot resolve the objections, the producing party has ten calendar days (from the date "of the conference") to file a formal motion with the Court. "The Producing Party shall bear the burden of proof on the issue." If no motion is filed within ten days, the AEO designation will be re-designated or removed. The Producing Party shall, at its expense, provide to the other parties to this action one additional copy thereof from which the AEO designation has been adjusted appropriately. *Id.* at 7, ¶ 16.

## Analysis

Here, the Court finds that Defendants fail to meet their burden to show that the discovery material (more than 63,000 pages) constitutes "trade secrets . . . or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." [Doc. 59] at 4, ¶ 10; *see Layne Christensen*, 271 F.R.D. at 248 (describing a very similar standard under Rule 26).

### Defendants fail to show that the AEO material constitutes trade secrets.

Defendants represent that the AEO material comprises "internal [research and development] and product development files." [Doc. 88] at 9. Plaintiff counters that much of the material (at least 2,000 pages) is publicly available, unintelligible, or otherwise patently not trade secrets. [Doc. 68] at 9; [Doc. 73]. Defendants respond that the "isolated pages" identified by Plaintiff were produced as part of Defendants' "much larger" files, and those files contain other pages that do constitute trade secrets. [Doc. 88] at 11–12. For example, Defendants indicate that other portions of the discovery contain "product development proposals, including market analyses, product strategies, competitor analyses, pricing strategies, . . . product timelines[,] design concept evaluations[, and] internal risk assessments." *Id.* at 11. It appears that Defendants' position is that because the discovery material does contain some trade secrets, they are entitled to an AEO designation on all of it because they should not be required to do a page-by-page review of the materials. *Id.* at 8–10.

The Court is not persuaded for several reasons. First, the level of review undertaken by Defendants is beside the point. It is a red herring. The standard here does not necessarily require

any certain level of review (e.g., file-by-file, document-by-document, page-by-page). Rather, the standard requires Defendants—as the proponents of the AEO designation—to establish that that the materials constitute trade secrets and that Defendants might be harmed if Dr. Augé saw them.

Second, Defendants emphasize that they were entitled to designate the material "AEO" as long as they "reasonably believe[d]" that the material contained "trade secrets or highly confidential, non-public, personal or proprietary business information." [Doc. 88] at 7 (quoting [Doc. 59] at 4, ¶ 10). They are correct. However, once Plaintiff challenged the designation, Defendants then bore the burden of proving that the materials warranted the designation. [Doc. 59] at 7, ¶ 16.

Defendants do not meet that burden. They attempt to establish that the discovery material constitutes trade secrets by submitting excerpts of the discovery material itself.[2] [Docs. 119-1, 119-2, and 119-3]; *see* [Doc. 88] at 10–12. Defendants' position at bottom is that they maintained these materials in their research and design files, and *ipso facto*, they are trade secrets. The Court is not persuaded.

Defendants have submitted no affidavit or other evidence showing that the materials are trade secrets. They have not, for example, provided any evidence (or even explicit allegation) that the materials are not generally known or readily ascertainable. This is noteworthy especially considering that some of the materials are undisputedly public (such as published scientific literature). Defendants identify no particular aspect of its designs that is unique to them, closely guarded, or if disclosed, would be valuable to competitors. Instead, counsel for Defendants

---

[2] They also submit an affidavit from defense counsel averring that the excerpts submitted are, indeed, accurate copies of the material produced in discovery, and he offers nothing more. [Doc. 89] at 3.

describes some of the disputed materials as "relating to the creation, marketing, pricing, and launch of [the] TwinLoops FLEX product[; containing] market analyses, product strategies, competitor analyses, pricing strategies, and product timelines[;] design concept evaluations[;] internal risk assessments[; in other words,] competitive product development and marketing." [Doc. 88] at 1. This jargon does not show that the disputed material is not generally known, not readily ascertainable by others, or that it is unique to or closely guarded by Defendants. The Court cannot infer from these descriptions that the AEO material has qualities that could qualify it as trade secrets. These conclusory descriptions of counsel do not satisfy Defendants' burden.

The parties should not misunderstand; the Court does not hold that representations of counsel can never establish that discovery materials constitute trade secrets or that an affidavit is necessarily required. Nor does the Court prescribe any specific quantum of evidence or argument that is necessarily required. Rather, the Court holds that, in this case, when comparing the thousands of pages of materials that undisputedly do *not* contain trade secrets against the conclusory representation of counsel (that some other pages contain "product timelines" or "pricing strategies" and nothing more specific than that), the mere representations of the attorney do not meet the burden.

Lastly, the Court declines to adopt Defendants' position that Plaintiff has failed to identify any authority allowing him to "root around" in their design files and has failed to establish that the materials are not trade secrets. To find these positions persuasive would require placing the burden on Plaintiff to show that the materials are not trade secrets. Such is not his burden.

<u>Defendants fail to show that they might be harmed by disclosure.</u>

Nor do Defendants meet their burden to show that they might be harmed if Dr. Augé accessed the materials. They do not explain what "competitive harm . . . would befall [them] by virtue of the disclosure of the trade secrets or other highly[ ]confidential proprietary information." *Layne Christensen*, 271 F.R.D. at 249. The most specific allegation of harm is that Dr. Augé is a "competitive decision maker" and allowing him access "presents an unacceptable risk of or opportunity for inadvertent disclosure of information." [Doc. 88] at 4. Such allegation of harm is conclusory. Besides, if the harm that Defendants fear is disclosure in and of itself, which is all they argue in their brief, the confidentiality agreements signed by the parties early in their relationship, and the "confidential" designation pursuant to the APO in this case, are sufficient to protect Defendants.

Defendants fail to show that the material at issue "contain[s] trade secrets or highly confidential, non-public, personal or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." [Doc. 59] at 4, ¶ 10. Therefore, the burden does not shift to Plaintiff to show that the material is necessary for the action. *See, e.g., Centurion*, 665 F.2d at 325. Nevertheless, the material at issue is indisputably relevant because it was produced as part of Defendants' initial disclosures, on which they intend to rely for their defenses. [Doc. 88] at 7–8.

Besides, considering that disclosure itself is the only harm identified by Defendants, Plaintiff's need to see the materials would trump this alleged harm. The Court understands that Plaintiff's expert can already access the materials and, thus, form an opinion as to whether

10

Defendants have met their obligations to honor Dr. Augé's ownership rights and to pay him what they owed.  Nevertheless, it seems obvious that, as the inventor, Dr. Augé's own review of the material will be useful in identifying where and to what extent his inventions are utilized in Defendants' products, i.e., in prosecuting his claims.  Dr. Augé's need outweighs the potential harm identified by Defendants.  This is particularly true considering the confidentiality agreements and APO.

Defendants' citations to *Davis v. AT&T Corp.* and *Layne Christensen* do not alter the result because neither of those cases is helpful in determining whether Defendants here have met their burden to show that the materials are trade secrets or that Defendants might be harmed by their disclosure.

In *Davis*, the parties *agreed* that the disputed discovery constituted trade secrets.  1998 WL 912012 at *1, 1998 U.S. Dist. LEXIS 20417 (W.D.N.Y. Dec. 23, 1998) (unpublished).  The issue for the court was balancing one side's need for the discovery with the potential harm in disclosing the other side's trade secrets.  Here, in contrast, the dispute is whether the material constitutes trade secrets in the first place.

Similarly, in *Layne Christensen*, the court was not tasked with determining whether any specific discovery actually constituted trade secrets.  Rather, there, the court was resolving a dispute over the language and provisions of a protective order that would govern the case.  There was no dispute that discovery in that case would "probably involve disclosure of trade secrets." 271 F.R.D. at 247.  But the parties disagreed on whether the co-plaintiff and inventor, Dr. SenGupta, should be allowed to access such trade secrets.  *Id.* at 243.  After narrowing the

scope of materials that could constitute trade secrets, the court determined that Dr. SenGupta should not have access, presuming that their designation was proper. *Id.* at 247–50.

Defendants fail to show that the material at issue constitutes "trade secrets . . . or proprietary business information." [Doc. 59] at 4, ¶ 10. Defendants also fail to show that disclosure of the material to Dr. Augé might be "especially detrimental or harmful," especially in light of the confidentiality agreements and the APO. *Id.* The AEO designation should be removed.

## Attorney Fees

The Court has given serious consideration to Plaintiff's request for attorney fees. On the one hand, Defendants apparently failed to provide descriptions of the documents marked AEO and of how such documents relate to the issues in this action, as required by paragraph 10 of the APO, [Doc. 59] at 4, until more than 30 days after they were produced, and only when Plaintiff objected in writing to the designations. *See* [Doc. 88] at 8–9. Even then, it appears that the only description provided—for more than 63,000 pages of material—was that it contained "internal [research and development] and product development files." *Id.* at 9. At a minimum, this description was untimely; it should have been produced along with the discovery materials. Additionally, it does not appear to represent counsel's "best efforts to resolve [Plaintiff's] objection between themselves," considering that Plaintiff had alerted Defendants that "they included many documents" that were obviously not trade secrets because they were publicly available (such as published articles). [Doc. 89-12] at 4.

On the other hand, however, Plaintiff never clearly communicated that he considered the "conference" (that is, the best efforts required by paragraph 16 to try to resolve the objections) to be complete, thus, explicitly triggering Defendants' duty to file a motion. On careful consideration of the facts relevant to this motion, and pursuant to paragraph 9 of the APO, [Doc. 59] at 4, and Fed. R. Civ. P. 37(a)(5)(C), no expenses should be awarded.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to De-Designate Discovery Material Marked "Attorneys' Eyes Only" [Doc. 68] is **GRANTED**.

**IT IS FURTHER ORDERED** that no later than **April 14, 2017**, Defendants must, at their own cost, provide one additional copy of the discovery materials to Plaintiff with a lesser or no designation under the Agreed Protective Order [Doc. 59].

**IT IS FURTHER ORDERED** that, pursuant to paragraph 9 of the Agreed Protective Order, [Doc. 59] at 4, and Fed. R. Civ. P. 37(a)(5)(C), no expenses are appropriate. Plaintiff's request for expenses is **DENIED**.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**