IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLARKE COLL,

    Plaintiff,[1]

v.                                                                       No. 14-cv-1089 KG/SMV

**STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORPORATION,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER
## AWARDING ATTORNEY'S FEES

Defendants filed a motion to compel. [Doc. 67]. I denied the motion. [Doc. 123]. Because I found that the motion was not substantially justified, I told the parties I would award reasonable expenses under Rules 36(a)(6) and 37(a)(5). *Id.* at 2. Plaintiff filed a Declaration listing the time his counsel had expended on the motion. [Doc. 127]. Defendants filed objections. [Doc. 134]. Plaintiff requested permission to file a reply to the objections. *See* [Doc. 135]. I denied that request but allowed Plaintiff to file a supplemental declaration with case law from the District of New Mexico addressing the issue of the reasonable hourly rate to be applied. *Id.* Plaintiff filed a supplemental declaration. [Doc. 136]. Having considered the parties' submissions, and having reviewed other cases from this district involving the award of attorney's fees, I conclude that $350 is a reasonable hourly rate for Mr. Squires' time; $150 is a reasonable hourly rate for Mr. Wityak's time; and $125 is a reasonable hourly rate for Mr. Yobino's time. I will reduce the amount of time requested because I find that it is excessive.

---

[1] Mr. Coll was substituted as Plaintiff in this matter when the original Plaintiff, Wayne Augé, II, M.D., filed for bankruptcy. Mr. Coll is the trustee of the bankruptcy estate. [Doc. 30].

# THE LAW REGARDING ATTORNEY'S FEES

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Ekerhart*, 461 U.S. 424, 433 (1983), and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543–44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case;" and (ii) "the appropriate hourly rates." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson*, 160 F.3d at 1281; *see Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates. *See Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006)). Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255–56 (10th Cir. 1998). Only if the district court does not have adequate evidence of prevailing

market rates for attorney's fees, may it, "in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Case*, 157 F.3d at 1257; *see also United Phosphorus*, 205 F.3d at 1234 (A court abuses its discretion when its "decision makes no reference to the evidence presented by either party on prevailing market rate[,]" and its rate decision is based solely on the court's "own familiarity with the relevant rates in this community.").

## ANALYSIS

Plaintiff requests $13,512.50 in attorney's fees. [Doc. 127] at 2–4. The request includes time expended by counsel, Jeffrey L. Squires; his associate, Ryan Wityak; and his paralegal, Francisco Yobino. *Id.* The hours expended on the motion are broken down as follows.

| | | |
|---|---|---|
| 11/7/2016 | Review motion to compel and discuss with A. Hankel | 1.0 hour |
| 11/8/2016 | Discuss research needs with Ryan Wityak | .4 hours |
| 11/12/2016 | Review case law research material and organize response | 2.5 hours |
| 11/13/2016 | Begin drafting response to motion to compel | 1.5 hours |
| 11/14/2016 | Draft portion of response | 1.5 hours |
| 11/15/2016 | Draft and revise opposition to motion to compel | 4.5 hours |
| 11/16/2016 | Draft and revise opposition to motion to compel | 4.0 hours |
| 11/17/2016 | Final review and revisions to opposition to motion to compel | 2.0 hours |
| 12/26/2016 | Prepare for hearing on motion | 1.5 hours |
| 2/27/2017 | Attend hearing on motion | .8 hours |
| 2/28/2017 | Draft fee application | 1.0 hours |
| 3/01/2017 | Review and revise fee application; meet with Ryan Wityak and Francisco Yobino | .8 hours |
| | **TOTAL** | **21.5 hours** |

*Id.* at 3. Mr. Wityak's time:

| 11/8/2016 | Research on Rule 36 and analyzing cases | 4.5 hours |
|---|---|---|
| 11/10/2016 | Research on scope of Rule 36 and coverage of legal issues | 3.8 hours |
| 11/14/2016 | Research on treatment of alternative theories of contract breach | 5.0 hours |
| 11/15/2016 | Research on good faith in contesting answers to requests | 4.5 hours |
| 2/28/2017 | Research on inclusion of fees for preparation of application | .4 hours |
| | **TOTAL** | **18.2 hours** |

*Id.* at 4. Mr. Yobino's time:

| 2/27/2017 | Attendance at hearing on RFA motion | .8 hours |
|---|---|---|
| | **TOTAL** | **.8 hours** |

*Id.* Plaintiff requests an hourly rate of $495 for Mr. Squires, $150 for Mr. Wityak, and $175 for Mr. Yobino. *Id*. at 2–4.

### A. The Time Expended on the Motion

Courts have an obligation to exclude hours not "reasonably expended" from the lodestar calculation. *Malloy*, 73 F.3d at 1018. There are two elements to the reasonableness inquiry: First, whether the attorney has exercised billing judgment and deleted excessive, unnecessary, or redundant fees from his or her fee application, and second, whether the fee award is reasonable in light of the success obtained. *See Hensley*, 461 U.S. at 434. The burden is on the party requesting fees to demonstrate that the time expended was indeed reasonable. *Case*, 157 F.3d at 1249. With respect to legal research performed, the party requesting fees must provide

enough information to determine whether the research was related to successful issues and reasonably necessary. *See id*. at 1252. "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." *Id*. at 1254 (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986)).

As for the success obtained, Plaintiff won. Nothing more need be said on that point.

As for the reasonableness of the time expended, Defendants argue that the motion was "just a discovery disagreement," [Doc. 134] at 8, and that "a claim of $13,512.50 to respond to [a] discovery Motion is unreasonable on its face," *id*. at 9. To the extent Defendants argue that this dispute was over-litigated, I agree. Requests for Admission are not really all that complicated. They are used to establish admission of facts over which there is no real dispute. 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 36.02[1] (Matthew Bender 3d ed.) ("While the basic purpose of discovery is to elicit facts and information and to obtain production of documents, Rule 36 was not designed for this purpose. Instead, requests for admission are used to establish admission of facts about which there is no real dispute.").

But that is not what Defendants were attempting to do with Request for Admission #2, the request at issue. Defendants were trying to force Plaintiff to take a stand on one of his alternative theories of liability. [Doc. 67] at 1–2 ("This motion is focused on one issue of urgent concern—whether Plaintiff contends Defendants are in breach of the 2009 Royalty Agreement between the parties. . . . After nearly two years of litigation, it is time for Plaintiff to take a position.") (emphasis omitted). Defendants were aware that Plaintiff had pleaded breach of the 2009 Royalty Agreement as an alternative theory of recovery (that is, his theory that he owned the Improvements to Defendants' products). *See, e.g.*, Amended Complaint [Doc. 34] at 9 ("By

5

the actions alleged herein, Stryker and Howmedica breached their contractual obligations to Dr. Augé by utilizing his proprietary designs, techniques[,] and enhancements, and then by failing to *either assign to him rights in, or to pay him compensation for* product lines including but not necessarily limited to those named Iconix, VersiTomic[,] and MicroFX, all in violation of a series of agreements entered by the parties culminating in the July 21, 2009 Royalty Agreement.") (emphasis added); Plaintiff's Response [to Motion to Compel] [Doc. 78] at 5–6 ("Defendants have long been aware that Dr. Augé's claim under the Royalty Agreement depended on whether he had been properly paid royalties under that agreement, and was also an alternative theory of recovery, depending on the result of Defendants' defensive contention that they had "bought out" the rights to such Improvements by entering the Royalty Agreement—although there was no provision to that effect in the Royalty Agreement."); [Doc. 78-2] (Correspondence dated 10/17/2016 from Plaintiff's counsel to defense counsel discussing alternative theories of recovery); [Doc. 67] at 8–9 (Plaintiff's Answer to RFA #2: "In addition to his initial response to this request for admission, Plaintiff is not able to admit or deny this request because his ability to admit or deny the request is dependent upon the resolution of Plaintiff's claim that his damages in this case are the result of Defendants' breach of a series of Confidentiality Agreements. If, as Plaintiff states in his Interrogatory Answers, it were to be determined—as Defendants have asserted—that Plaintiff's claims and rights to damage are to be calculated by application of the July 21, 2009 Assignment and Royalty Agreement, rather than the series of Confidentiality Agreements, then Plaintiff would deny this requested admission. If it were determined that Plaintiff is entitled to damages for the claimed unauthorized manufacture and sale of products by Defendants in violation of the Confidentiality Agreements, culminating

in the August 16, 2007 Mutual Nondisclosure Agreement, and it w[ere] shown that defendants have paid Dr. Aug[é] all royalties for the TwinLoopFlex products owed under the July 21, 2009 Assignment and Royalty Agreement, then Plaintiff would assert no claim for breach of that latter agreement.") (internal ellipsis and brackets omitted).

Thus, rather than using Rule 36 for its intended purpose—to identify facts over which there is no dispute—Defendants were attempting to use it as a Rule 56 surrogate. Defendants were trying to get Plaintiff to choose one of his alternative theories of recovery and abandon the other. That is what turned a simple discovery dispute into a motion requiring 113 pages of briefing and exhibits, [Docs. 67, 78, and 87], and an in-person hearing. I am therefore unmoved by Defendants' argument that it would be "fundamentally unfair to make Defendants pay Plaintiff for Plaintiff's attorneys to learn about alternative theories of contract breach." [Doc. 134] at 8 (internal quotation marks omitted).

Nevertheless, I agree with Defendants that the time expended on the briefing appears excessive. Plaintiff asks me to award 17.4 hours of Mr. Squires' time and 17.9 hours of Mr. Wityak's time for researching, drafting, and revising the Response to the Motion. [Doc. 127] at 3–4. I have reviewed the Response in detail. Having done so, I conclude that the time allowed for researching, drafting, and revising the Response should be reduced to 9.4 hours of Mr. Squires' time[2] and 5.4 hours of Mr. Wityak's time.[3]

---

[2] I arrived at this number by reducing the drafting/revision time from 16 hours to 8 hours. [Doc. 127]. I find the time spent reviewing the motion (1.0 hours) and discussing the motion with Mr. Wityak (0.4) to be reasonable.
[3] I reduced the time for "research on Rule 36 and Analyzing cases" from 4.5 to 2.0 hours. I reduced "research on scope of Rule 36 and coverage of legal issues" from 3.8 to 2.0 hours. I reduced "research on treatment of alternative theories of contract breach" from 5.0 to 1.0 hour. I deleted the time for "research on good faith in contesting answers to requests" because Plaintiff failed to establish that that research was necessary to prepare the Response.

7

I find that the rest of the time requested, including preparation for and attending the hearing (2.3 hours of Mr. Squires' time and 0.8 hours of Mr. Yobino's time), and preparing the fee application[4] (1.8 hours of Mr. Squires' time and 0.4 hours of Mr. Wityak's time) is reasonable and not excessive, redundant, or unnecessary. In making that determination, I have considered the novelty and difficulty of the questions involved and the skill required to perform the legal services properly.

### B. The Reasonable Hourly Rate

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." *Lippoldt*, 468 F.3d at 1224. "The rate must reflect rates that are reasonable in light of: (i) the attorney's level of experience; and (ii) the work the attorney performed." *XTO Energy, Inc. v. ATD, LLC*, No. 14-cv-1021 JB/SCY, 2016 WL 5376322, at *10 (D.N.M. Aug. 22, 2016). Defendants do not challenge the fee request based on Plaintiff's counsel's level of experience. Mr. Squires' Declaration adequately describes his level of experience as well as that of his associate and paralegal. *See* [Doc. 127]. I accept that they are well-qualified, have considerable experience in complex commercial litigation, and are entitled to be compensated at the prevailing market rate.

The prevailing market rate is typically established through the affidavits of local attorneys who practice in the same field as the attorneys seeking the fees. *See, e.g.*, *United Phosphorus*, 205 F.3d at 1232 ("In addition [to submitting an affidavit from the attorney requesting fees], United submitted one affidavit from another attorney in Kansas City who reviewed the rates, stating the rates were within the range of what attorneys with comparable

---

[4] "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." *Mares*, 801 F.2d at 1205.

skills and experience practicing trademark infringement law in the Kansas City area would charge."); *XTO Energy*, 2016 WL 5376322, at *5–7 (discussing affidavits submitted by attorneys practicing similar legal work in New Mexico); *Martinez ex rel. Est. of Martinez v. Salazar*, No. 14-cv-0534 KG/WPL, 2016 U.S. Dist. LEXIS 57269, at *2 (D.N.M. Apr. 28, 2016) ("Plaintiff supported Coberly's declaration with the resumes of Coberly and Chakeres as well as with a declaration by Daniel Yohalem, a New Mexico attorney, who opined as to the prevailing market rates for attorneys like Coberly and Chakeres."). Neither party has submitted such affidavits in this case. Mr. Squires' Declaration states the hourly rates his firm charges for similar work. *See* [Doc. 127] at 2. But that is not the issue. "The relevant market value . . . is 'the price that is customarily paid in the community for services like those involved in the case at hand.'" *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (quoting *Beard v. Teska*, 31 F.3d 942, 956 (10th Cir. 1994)). Plaintiff has submitted no evidence on the prevailing market rate.[5]

Likewise, Defendants have submitted no evidence of the prevailing market rate for patent work. Defendants provided a list of cases "as related to the reasonableness of an attorney's hourly rate in the broader context of practicing law in the state of New Mexico." [Doc. 134] at 5. I found this table to be interesting and helpful in my analysis, but none of the cases cited in the list involved patent litigation. The closest case is *XTO Energy*, a 2016 case in which Judge Browning held that $350 was a reasonable hourly rate for "high-end commercial work." [Doc. 134] at 5 (quoting *XTO Energy*, 2016 WL 5376322, at *13). In the *XTO* case, the parties

---

[5] Plaintiff could argue that the amount counsel typically charges is indirect proof of the prevailing market rate. There are two problems with that argument. First, counsel states only what he charges; nowhere in the declaration does he say, "…and our clients pay what we charge." Second, counsel may be able to charge his clients an above-market rate based on his experience and track record.

had submitted opposing affidavits on the prevailing market rate from experienced attorneys familiar with the prevailing market rate. *Id*. at 5–7. I find Judge Browning's analysis of the prevailing market rate to be persuasive.

Plaintiff could argue that Judge Browning was analyzing the market rate for "high-end insurance work," and that patent work justifies a higher hourly rate. While that may be true, I have two responses. First, Judge Browning's conclusion comports with my own personal knowledge of the prevailing market rate for complex commercial work in New Mexico. Second, Plaintiff had the burden of proof on this issue. *E.g., Blum*, 465 U.S. at 895 n. 11; *Ellis*, 163 F.3d at 1203. If the prevailing market rate for patent work is higher than $350/hour, Plaintiff could have established that by submitting affidavits from other experienced attorneys familiar with the prevailing rate. He did not do so, and I consider any such argument waived.

I find, therefore, that the evidence before the Court is inadequate to establish the prevailing market rate for patent work in New Mexico, and I will employ own knowledge (informed by Judge Browning's excellent, in-depth analysis in *XTO Energy*) in concluding that the appropriate hourly rates in this case are: $350 for Mr. Squires (lead counsel); $150 for Mr. Wityak; and $125 for Mr. Yobino. *Cf. Case*, 157 F.3d at 1257 (court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before it is inadequate). In arriving at these conclusions I have taken into account that this is a fairly complex case involving specialized legal knowledge.[6] I will therefore award the following fees pursuant to Fed. R. Civ. P. 36(a)(6) and 37(a)(5), *see* [Doc. 123]:

---

[6] *See Schueller v. Experian Info. Sols., Inc.*, No. 11-cv-0955 MCA/LFG, 2013 U.S. Dist. LEXIS 197742, at *24–25 (D.N.M. Mar. 27, 2013) (analyzing prevailing rates in New Mexico and concluding that $250/hour was a reasonable rate for performing "unspecialized work in uncomplicated cases").

|  | Hours | Rate | Fees |
|---|---|---|---|
| Mr. Squires | 13.5 | $350 | $4,725 |
| Mr. Wityak | 5.4 | $150 | $810 |
| Mr. Yobino | 0.8 | $125 | $100 |
|  |  | **TOTAL** | **$5,635** |

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that **$5,635** is **AWARDED** to Plaintiff as reasonable expenses, pursuant to Fed. R. Civ. P. 36(a)(6) and 37(a)(5). *See* [Doc. 123]. Defendants must pay such expenses to Plaintiff **no later than May 1, 2017**. However, if Defendants timely object to this order, the order will be stayed pending resolution of the objections.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge**