# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**CLARKE COLL,**

    **Plaintiff,[1]**

**v.**                                       **No. 14-cv-1089 KG/SMV**

**STRYKER CORPORATION and**
**HOWMEDICA OSTEONICS CORPORATION,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS AND AFFIRMING ORDER TO DE-DESIGNATE DISCOVERY MATERIAL MARKED "ATTORNEYS' EYES ONLY"

THIS MATTER is before the Court on Defendants' Objections to Magistrate Judge's Memorandum Opinion and Order Granting Plaintiff's Motion to De-Designate Discovery Material Marked "Attorneys' Eyes Only" [Doc. 138], filed on March 29, 2017. The Honorable Stephan M. Vidmar, United States Magistrate Judge, issued his Memorandum Opinion and Order ("MOO") granting Plaintiff's motion to de-designate discovery material marked "Attorneys' Eyes Only" on March 15, 2017. [Doc. 132]. Plaintiff responded in opposition to the objections, [Doc. 146], and Defendants replied, [Doc. 157]. Being fully advised in the premises, the Court finds that Defendants fail to show that the MOO is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Accordingly, the Court will overrule the objections, affirm the Magistrate Judge's MOO, and order Defendants, **within 30 days** and at their own cost, to

---

[1] Mr. Coll was substituted as Plaintiff in this matter when the original Plaintiff, Wayne Augé, II, M.D., filed for bankruptcy. Mr. Coll is the trustee of the bankruptcy estate. [Doc. 30].

provide one additional copy of the discovery materials to Plaintiff with a lesser or no designation under the Agreed Protective Order, [Doc. 59].

**<u>Background</u>**

In the 1990's, Wayne Augé, II, M.D., (the originally named Plaintiff in this action) made innovative developments in orthopedic medicine and surgery. Defendants were interested in his inventions, and they entered into a series of confidentiality agreements with him for their common benefit. Defendants utilized Dr. Augé's inventions in several products that went to market. Over the years, however, as Defendants marketed new products with his inventions, Dr. Augé came to believe that Defendants were not fulfilling their agreements to honor his ownership rights or to pay him what they owed. So, Dr. Augé filed this lawsuit in 2014.

The parties anticipated that some materials disclosed in discovery would be sensitive, and they entered into an Agreed Protective Order ("APO") early on. [Doc. 59]. The APO provided for two tiers of protection: "Confidential" and "Attorneys' Eyes Only." *Id.* at 1, 4. Confidential information may be accessed by the parties, including Dr. Augé, but cannot be used for any purpose outside this litigation. *Id.* at 1, 3. Material designated "Attorneys' Eyes Only" ("AEO") may not be accessed by the parties, including Dr. Augé, and is intended to protect "trade secrets or highly confidential, non-public, personal or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." *Id.* at 4.

On August 26, 2016, Defendants produced 86,802 pages of initial disclosures. [Doc. 88] at 8. Of those, approximately 63,335 pages (or 3,809 documents) were designated AEO. *Id.*

Plaintiff first objected to the designations in writing on September 30, 2016. [Doc. 89-12] at 4. That same day, defense counsel explained that the designations were necessary because the materials constituted "internal [research and development] and product development files." *Id.*; [Doc. 88] at 9. Counsel conferred at least twice more. *See* [Doc. 88] at 8–9, 9 n.12; [Doc. 68] at 5; [Doc. 102] at 2. Although the APO instructs the producing party (i.e., Defendants) to submit the dispute by formal motion within ten calendar days of the parties' "conference" on the dispute, Plaintiff actually filed the motion on November 8, 2016. [Doc. 68]. Plaintiff asked the Court to de-designate the materials and to award attorney fees. *Id.* at 11. Judge Vidmar granted the motion on March 15, 2017. [Doc. 132]. Defendants timely objected pursuant to Fed. R. Civ. P. 72. [Doc. 138].

## Standard

"There is no absolute privilege for trade secrets and similar confidential information." *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (alterations omitted) (quoting *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979)). Under Fed. R. Civ. P. 26(c)(1)(G), a court may, for good cause, issue a protective order (or permit a party to avail itself of an already issued protective order) to require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *In re Cooper Tire & Rubber, Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009). A party seeking that its information only be revealed in a certain way, such as limiting who can view or access the materials, under this Rule "must first establish that the information sought is a trade secret [or other confidential research, development, or commercial

information]." *Id.* at 1190; Fed. R. Civ. P. 26(c)(1)(G). Further, that party must additionally "demonstrate that its disclosure might be harmful." *In re Cooper Tire*, 568 F.3d at 1190 (quoting *Centurion*, 665 F.2d at 325). To establish the requisite harm, the party seeking protection must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *E.g., Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 245 (D. Kan. 2010) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)); *accord* JENNER & BLOCK, MOORE'S ANSWERGUIDE FEDERAL DISCOVERY PRACTICE § 16.29(b) (2017 ed.) (a showing of "specific prejudice or harm" is required to limit the disclosure of trade secrets).

For example, in *McKellips v. Kumho Tire Co.*, a products liability case, the parties had entered into a protective order that prohibited the plaintiffs and their counsel from sharing certain discovery material (e.g., "confidential research, development, or proprietary business information") outside the litigation. 305 F.R.D. 655, 661 (D. Kan. 2015). The protective order notwithstanding, the defendant Kumho opposed producing certain discovery materials, such as the number of tires produced; the specifications and blueprints for the subject tire; skim stock compounds and formulas; manufacturing processes; manufacturing or design defects found; tread separation studies and testing; speed rating; and driver response, effects, risk, and causes of tread separation. *Id.* at 661, 664. Kumho considered these materials to be trade secrets. The Court agreed, but only in part.

Kumho had submitted an affidavit in support of its position that the skim stock compounds and formulas for its tires constituted trade secrets. *Id.* at 663. The court was persuaded that the skim stock materials constituted trade secrets. *Id.* However, the court found

that Kumho had not met its burden to establish that the other material constituted trade secrets. *Id.* at 664. For example, the court found that Kumho's vague characterization of the disputed material as "manufacturing processes" was not enough. *Id.* Kumho had not identified any particular aspect of its manufacturing processes that was unique to it, closely guarded, and if disclosed, would be valuable to competitors. *Id.* Further, the court found that the protective order already in place provided sufficient protection for Kumho's information. Other than the skim stock materials, therefore, the court ordered Kumho to produce the discovery materials.

In *Northern Natural Gas Co. v. L.D. Drilling, Inc.*, the District of Kansas similarly addressed whether materials sought in discovery constituted trade secrets. 2010 U.S. Dist. LEXIS 145522; 2010 WL 9519354 (D. Kan. Mar. 26, 2010) (unpublished). The plaintiff Northern wanted entry onto L.D. Drilling's land in order to collect natural gas samples from certain gas wells. U.S. Dist. LEXIS 145522 at *12. L.D. Drilling submitted an affidavit supporting its claim that allowing such sampling would expose its trade secrets. *Id.* at 27. The affiant, Mr. Davis, explained that information about the physical and chemical composition of material produced from the wells was economically valuable, especially because the information was not generally known or readily ascertainable to those who might otherwise make use of it. *Id.* The court did not indicate whether the affidavit was convincing. Instead, the court assumed without finding that the gas samples were trade secrets and went on to hold that LD Drilling failed to show that it would be harmed by disclosure of the samples. *Id.* at 30–31.

Once the party seeking protection for its trade secrets has met its initial burden—to show that the materials constitute trade secrets and disclosure of them might cause harm—the burden

then shifts to the party seeking disclosure to establish that such disclosure is "relevant and necessary to the action." *Centurion*, 665 F.2d at 325.

> The need for the trade secrets should be balanced against the claim of harm resulting from the disclosure. "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure." If the party seeking discovery cannot prove that the information is relevant and necessary, then discovery should be denied. However, if the party meets its burden, "the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing."

*In re Cooper Tire*, 568 F.3d at 1190 (internal citations omitted) (quoting *Centurion*, 665 F.2d at 325, 326).

> Where the protection sought is only to prevent certain identified individuals from viewing the materials, such as in-house counsel or the patent inventor, the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action.

*Layne Christensen*, 271 F.R.D. at 249.

<u>Judge Vidmar found that these standards were consistent with the APO.</u>

Judge Vidmar found that the APO in this case set forth the following. The party designating materials AEO must provide (1) a description of the documents so marked, and (2) a description of how such documents relate to the issues in this action. [Doc. 132] at 6 (citing [Doc. 59] at 4, ¶ 10). If the receiving party objects to the AEO designation, he must notify the producing party in writing. The parties must use their best efforts to resolve the objections between themselves. If they cannot resolve the objections, the producing party has ten calendar days (from the date "of the conference") to file a formal motion with the Court. "The Producing

Party shall bear the burden of proof on the issue." If no motion is filed within ten days, the AEO designation will be re-designated or removed. The Producing Party shall, at its expense, provide to the other parties to this action one additional copy thereof from which the AEO designation has been adjusted appropriately. *Id.* (citing [Doc. 59] at 7, ¶ 16).

<u>Judge Vidmar found that Defendants failed to meet their initial burden.</u>

Judge Vidmar found that Defendants failed to meet their burden to show that the discovery material (more than 63,000 pages) constituted "trade secrets . . . or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." [Doc. 132] at 7 (quoting [Doc. 59] at 4, ¶ 10; citing *Layne Christensen*, 271 F.R.D. at 248 (describing a very similar standard under Rule 26)).

<u>Judge Vidmar found that Defendants failed<br>to show that the AEO material constituted trade secrets.</u>

Defendants represented that the AEO material comprised "internal [research and development] and product development files." [Doc. 88] at 9. Plaintiff countered that much of the material (at least 2,000 pages) was publicly available, unintelligible, or otherwise patently not trade secrets. [Doc. 68] at 9; [Doc. 73]. Defendants responded that the "isolated pages" identified by Plaintiff were produced as part of Defendants' "much larger" files, and those files contained other pages that did constitute trade secrets. [Doc. 88] at 11–12. For example, Defendants indicated that other portions of the discovery contained "product development proposals, including market analyses, product strategies, competitor analyses, pricing strategies, . . . product timelines[,] design concept evaluations[, and] internal risk assessments." *Id.* at 11. Apparently, Defendants argued that because the discovery material did contain some trade

secrets, they were entitled to an AEO designation on all of it because they should not be required to do a page-by-page review of the materials. *Id.* at 8–10.

Judge Vidmar was not persuaded. First, he found the level of review undertaken by Defendants was a "red herring." [Doc. 132] at 7–8. He found that the standard here did not necessarily require any certain level of review (e.g., file-by-file, document-by-document, page-by-page). Rather, the standard required Defendants—as the proponents of the AEO designation—to establish that that the materials constituted trade secrets and that Defendants might be harmed if Dr. Augé saw them. *Id.*

Second, Defendants emphasized that they were entitled to designate the material "AEO" as long as they "reasonably believe[d]" that the material contained "trade secrets or highly confidential, non-public, personal or proprietary business information." [Doc. 88] at 7 (quoting [Doc. 59] at 4, ¶ 10). Judge Vidmar agreed. [Doc. 132] at 8. However, he found that once Plaintiff challenged the designation, Defendants then bore the burden of proving, not just that they *reasonably believed* the designation was warranted, but that the materials *actually did* warrant the designation. *Id.* (citing [Doc. 59] at 7, ¶ 16).

He found that Defendants failed to meet that burden. *Id.* Defendants attempted to establish that the discovery material constituted trade secrets by submitting excerpts of the discovery material itself.[2] [Docs. 119-1, 119-2, 119-3; *see* [Doc. 88] at 10–12. Defendants' position at bottom was that they maintained these materials in their research and design files, and *ipso facto*, they were trade secrets. Judge Vidmar did not agree. [Doc. 132] at 8–9.

---

[2] They also submit an affidavit from defense counsel averring that the excerpts submitted are, indeed, accurate copies of the material produced in discovery, and defense counsel offers nothing more. [Doc. 89] at 3.

He found that Defendants had submitted no affidavit or other evidence showing that the materials were trade secrets. *Id.* They had not, for example, provided any evidence (or even explicit allegation) that the materials were not generally known or readily ascertainable. This was noteworthy to Judge Vidmar because some of the materials were undisputedly public (such as published scientific literature). *Id.* Defendants identified no particular aspect of its designs that was unique to them, closely guarded, or if disclosed, would be valuable to competitors. Instead, counsel for Defendants described some of the disputed materials as "relating to the creation, marketing, pricing, and launch of [the] TwinLoops FLEX product[; containing] market analyses, product strategies, competitor analyses, pricing strategies, and product timelines[;] design concept evaluations[;] internal risk assessments[; in other words,] competitive product development and marketing." [Doc. 88] at 1. Judge Vidmar found that this jargon failed to establish that the disputed material was not generally known, not readily ascertainable by others, or that it was unique to or closely guarded by Defendants. [Doc. 132] at 8–9. He explained that he could not infer from these descriptions that the AEO material had qualities that could qualify it as trade secrets. Judge Vidmar found that these conclusory descriptions by counsel did not satisfy Defendants' burden. *Id.*

Judge Vidmar clarified that he did not hold that representations of counsel can never establish that discovery materials constitute trade secrets or that an affidavit was necessarily required. *Id.* at 9. Nor did he prescribe any specific quantum of evidence or argument that was necessarily required. *Id.* Rather, he held that, in this case, when comparing the thousands of pages of materials that undisputedly did *not* contain trade secrets against the conclusory

representation of counsel (that some other pages contained "product timelines" or "pricing strategies" and nothing more specific than that), the mere representations of the attorney did not meet the burden. *Id.*

Lastly, Judge Vidmar declined to adopt Defendants' position that Plaintiff had failed to identify any authority allowing him to "root around" in their design files and had failed to establish that the materials were not trade secrets. *Id.* To find these positions persuasive, he found, would require placing the burden on Plaintiff to show that the materials were not trade secrets; such was not his burden. *Id.*

<u>Judge Vidmar found that Defendants</u>
<u>failed to show they might be harmed by disclosure.</u>

Judge Vidmar further found that Defendants did not meet their burden to show that they might be harmed if Dr. Augé accessed the materials. [Doc. 132] at 10–12. They did not explain what "competitive harm . . . would befall [them] by virtue of the disclosure of the trade secrets or other highly[ ]confidential proprietary information." *Layne Christensen*, 271 F.R.D. at 249. The most specific allegation of harm was that Dr. Augé was a "competitive decision maker" and allowing him access "present[ed] an unacceptable risk of or opportunity for inadvertent disclosure of information." [Doc. 132] at 10 (quoting [Doc. 88] at 4). Judge Vidmar found that such allegation of harm was conclusory. [Doc. 132] at 10. He further found that if the harm that Defendants feared was disclosure in and of itself, which is all they had argued in their brief, the confidentiality agreements signed by the parties early in their relationship, and the "confidential" designation pursuant to the APO in this case, would sufficiently protect Defendants. *Id.*

Ultimately, Judge Vidmar determined that Defendants failed to show that the material at issue "contain[ed] trade secrets or highly confidential, non-public, personal or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." *Id.* (quoting [Doc. 59] at 4, ¶ 10).

<u>Judge Vidmar found that Dr. Augé's need to access</u>
<u>the AEO materials outweighed the potential harm alleged by Defendants.</u>

Because Judge Vidmar found that Defendants had failed to meet their initial burden, he consequently found that the burden did not shift to Plaintiff to show that the material was relevant and necessary for the action. *Id.* (citing *Centurion*, 665 F.2d at 325). Nevertheless, Judge Vidmar weighed Dr. Augé's need to access the material against the potential harm that Defendants claimed could result from disclosure. *Id.* at 10–12. Judge Vidmar found that the material at issue was indisputably relevant because it was produced as part of Defendants' initial disclosures, on which they intend to rely for their defenses. *Id.* at 10 (citing [Doc. 88] at 7–8). Considering that disclosure itself was the only harm identified by Defendants, Judge Vidmar found that Plaintiff's need to see the materials trumped this potential harm. *Id.* at 10–11. He acknowledged that Plaintiff's expert had access to the materials and, thus, could form an opinion as to whether Defendants had met their obligations to honor Dr. Augé's ownership rights and to pay him what they owed. Nevertheless, it seemed obvious to Judge Vidmar that, as the inventor, Dr. Augé's own review of the material would be useful in identifying where and to what extent his inventions had been utilized in Defendants' products, i.e., in prosecuting his claims. *Id.* Thus, Judge Vidmar concluded that Dr. Augé's need to access the materials outweighed the

potential harm identified by Defendants, which was particularly true given the existing confidentiality agreements and APO. *Id.*

Moreover, Judge Vidmar found that the Defendants' citations to *Davis v. AT&T Corp.* and *Layne Christensen* did not alter the result because neither of those cases was helpful in determining whether Defendants here had met their burden to show that the materials were trade secrets or that Defendants might be harmed by their disclosure. *Id.* at 11–12.

In *Davis*, the parties *agreed* that the disputed discovery constituted trade secrets. 1998 WL 912012 at *1, 1998 U.S. Dist. LEXIS 20417 (W.D.N.Y. Dec. 23, 1998) (unpublished). The issue for the court was balancing one side's need for the discovery with the potential harm in disclosing the other side's trade secrets. Here, in contrast, the dispute was whether the material constituted trade secrets in the first place.

Similarly, in *Layne Christensen*, the court was not tasked with determining whether any specific discovery actually constituted trade secrets. Rather, there, the court was resolving a dispute over the language and provisions of a protective order that would govern the case. There was no dispute that discovery in that case would "probably involve disclosure of trade secrets." 271 F.R.D. at 247. But the parties disagreed on whether the co-plaintiff and inventor, Dr. SenGupta, should be allowed to access such trade secrets. *Id.* at 243. After narrowing the scope of materials that could constitute trade secrets, the court determined that Dr. SenGupta should not have access, presuming that their designation was proper. *Id.* at 247–50.

Ultimately, Judge Vidmar found that Defendants "fail[ed] to show that the material at issue constitute[d] 'trade secrets . . . or proprietary business information.'" [Doc. 132] at 12

(quoting [Doc. 59] at 4, ¶ 10). He also found that Defendants "fail[ed] to show that disclosure of the material to Dr. Augé might be 'especially detrimental or harmful,' especially in light of the confidentiality agreements and the APO." *Id.* (quoting [Doc. 59] at 4, ¶ 10). Therefore, he granted Plaintiff's motion and ordered Defendants, at their own cost, to provide one additional copy of the discovery materials to Plaintiff with a lesser or no designation under the Agreed Protective Order [Doc. 59]. *Id.* at 12–13. Defendants timely objected under Fed. R. Civ. P. 72. [Doc. 138].

## Standard of Review for Objections to<br>Magistrate Judge's Non-Dispositive Order

The district judge reviews a magistrate judge's ruling when a party timely files written objections. Objections to non-dispositive rulings are reviewed under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). In reviewing the objections, the district court must defer to the magistrate judge's ruling unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). The clearly erroneous standard "requires that the reviewing court affirm unless [the court,] on the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1998) (internal quotation marks omitted).[3]

Under the "contrary to law" standard, the district judge conducts a plenary review of the magistrate judge's legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard. 12 CHARLES ALAN WRIGHT, ET. AL., FED. PRACTICE &

---

[3] The United States Court of Appeals for the Seventh Circuit has stated that, to be clearly erroneous, "a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

13

PROCEDURE CIV. § 3069 (2d ed. 1997). "In sum, it is extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." *Id.* On the other hand, just "as the district judge should defer to the magistrate judge's decision . . . he or she should not be hamstrung by the clearly erroneous standard. At i[t]s broadest, it is limited to factual findings." *Id.* Finally, "theories raised for the first time in objections to a magistrate judge's [order] are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

<u>Analysis</u>

Defendants argue that Judge Vidmar's order is clearly erroneous and contrary to law because they should have been required to show only that they *reasonably believed* the AEO designation was warranted, not that it *actually was* warranted. [Doc. 138] at 6. Next, Defendants argue that Plaintiff should have had the burden to show that his need to access the material outweighed their need to protect it. *Id.* at 7–10. Finally, they argue that Judge Vidmar erred in declining to require Plaintiff to specifically identify—document by document—his objections to the AEO designation. *Id.* at 11–12. None of Defendants' objections is meritorious. Judge Vidmar applied the correct legal standards, and his ruling is not clearly erroneous.

<u>Defendants fail to show that Judge Vidmar erred in interpreting the APO.</u>

Defendants argue that Judge Vidmar erred in holding that they were required to prove that the disputed material *actually does* constitute trade secrets because the APO only requires them to show that they *reasonably believed* that the material constituted trade secrets. [Doc. 138] at 5–7. The APO reads, in pertinent part:

> 10.     *A party in this action shall have the right to designate and label Discovery Material revealed or produced by*

*that party in this action as "Attorneys' Eyes Only" if it reasonably believes that such information, documents or tangible things contain trade secrets or highly confidential, non-public, personal or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties.* Parties designating and labeling Discovery Material "Attorneys' Eyes Only" shall provide a description of the documents so marked and how such documents relate to the issues in this action.

. . . .

16.     *In the event that a party receiving Discovery Material marked "Confidential" or "Attorneys' Eyes Only" ("Receiving Party") objects to the designation, counsel for the Receiving Party shall notify the Producing Party of its objections in writing.* The parties will use their best efforts to resolve the objections between themselves. *Should the parties be unable to resolve the objections, the Producing Party shall, within ten (10) calendar days of the conference submit the dispute by formal motion **and the Producing Party shall bear the burden of proof on the issue***. If no motion is filed within the stated time period, the "Confidential" or "Attorneys' Eyes Only" designation will be re-designated or removed as appropriate. Information subject to the dispute shall, until further order of the Court, be treated consistently with its designation. With respect to any material which is re-designated or ceases to be subject to the protection of this Protective Order, the Producing Party shall, at its expense, provide to the other parties to this action one additional copy thereof from which all confidentiality legends have been adjusted to reflect the re-designation.

[Doc. 59] at 4, 7 (emphases added). Defendants argue that these portions of the APO make clear that their burden under paragraph 16 is to prove merely that they reasonably believed that "the AEO materials contained 'trade secrets or highly confidential, non-public, personal or proprietary business information,' and disclosure of the materials 'could be especially detrimental or harmful to the designating party if disclosed to opposing parties.'" [Doc. 138] at 6

(quoting [Doc. 59] at 7). Judge Vidmar read the APO differently. He agreed that Defendants were entitled to designate the material "AEO" as long as they "reasonably believe[d]" that the material contained "trade secrets or highly confidential, non-public, personal or proprietary business information." [Doc. 132] at 7. However, once Plaintiff challenged the designation, Judge Vidmar found that Defendants then bore the burden of proving that the materials actually did warrant the designation. *Id.* (citing [Doc. 59] at 7, ¶ 16).

Defendants object. They argue that their interpretation of the APO is so obviously correct, and that Judge Vidmar's interpretation is so clearly erroneous, that his order should be overturned. [Doc. 138] at 5–7. The Court does not agree. The APO dictates that the "Producing Party shall bear the burden of proof on the issue." [Doc. 59] at 7. Defendants fail to show that it was clearly erroneous for Judge Vidmar to interpret "the issue" as whether the AEO designation was actually warranted, rather than whether Defendants reasonably believed it was warranted.

In a similar vein, Defendants argue that Judge Vidmar erred in requiring them to show that disclosure of the materials *would* harm them because the APO only required them to show that disclosure *could* harm them. [Doc. 138] at 7. The Court does not agree that Judge Vidmar applied the wrong standard. He required Defendants to show only that disclosure *could* harm them. [Doc. 132] at 1. 3, 5, 7, 10–12 (consistently utilizing "might" and "could"). He did not require more.[4]

---

[4] Defendants also present a new argument for the first time in their Objections. They argue that Judge Vidmar "disregarded" paragraph 11 of the APO, which seemed to imply that documents related to "product development or marketing activities" could be "the type of discovery that warrant[s] the AEO designation." [Doc. 138] at 6. However, Defendants did not raise any argument about paragraph 11 in their briefing before Judge Vidmar, and therefore, it is waived. *See Garfinkle*, 261 F.3d 1031.

<u>Defendants fail to show that Judge Vidmar applied an incorrect legal standard.</u>

Defendants argue that Judge Vidmar's MOO is contrary to law because he did not require Dr. Augé to "prove[]" that his need to access the AEO documents outweighed Defendants' need to protect them from the potential harm of disclosure, [Doc. 138] at 7. This matters because they believe Judge Vidmar "completely ignore[d] the crux of [their] position," which was that Dr. Augé was "directly involved in competitive decision making or scientific research squarely adverse to [Defendants'] competitive and legal interests." *Id.* at 8 (internal quotation marks omitted). The Court is not persuaded that Judge Vidmar erred.

To be clear, Defendants object because, they argue, "whether [they have] prove[n] the AEO materials contain[ed] trade secrets is irrelevant to the balancing test established by the courts." [Doc. 138] at 10. This objection is overruled because it misstates the law. As explained above, Defendants had the initial burden to show that the disputed material "contain[ed] trade secrets or highly confidential, non-public, personal or proprietary business information, disclosure of which could be especially detrimental or harmful to the designating party if disclosed to opposing parties." [Doc. 59] at 4, ¶ 10; *see Layne Christensen*, 271 F.R.D. at 248 (describing a very similar standard under Rule 26)). Upon that showing, the burden would have shifted to Dr. Augé to show that disclosure was reasonable and necessary for the action. However, Defendants did not make the initial showing. Judge Vidmar was correct; the burden never shifted to Dr. Augé. *See, e.g., Centurion*, 665 F.2d at 325.

Even though the burden did not shift to Dr. Augé to show that disclosure was reasonable and necessary to the action, Judge Vidmar nevertheless weighed Dr. Augé's need to access the

material against the potential harm that Defendants claimed could result from disclosure. [Doc. 132] at 10–12. On the one hand, he found that the material at issue was indisputably relevant because it was produced as part of Defendants' initial disclosures, on which they intend to rely for their defenses. *Id.* at 10 (citing [Doc. 88] at 7–8). On the other hand, he looked at the potential harm alleged by Defendants.

Defendants alleged nothing more than that Dr. Augé might inadvertently disclose the information. [Doc 88] at 4. That was the entirety of their alleged potential harm. They did not explain how they might be harmed if Dr. Augé inadvertently disclosed the information. They did not allege, for example, that Dr. Augé might disclose the information to a competitor who might use it to make money that should belong to Defendants. They did not make that allegation—or anything like it. *See* [Doc. 88]. Considering that disclosure *itself* was the only harm identified by Defendants, Judge Vidmar found that Plaintiff's need to see the materials trumped this potential harm. [Doc. 132] at 10–12.

Additionally, he found that Defendants' interests were adequately protected considering the confidentiality agreements that were already in place and considering that Defendants were still free to label the materials as "Confidential" under the APO. *Id.* at 10–11. Defendants' assertion that Judge Vidmar failed to weigh Dr. Augé's need against their interests, [Doc. 138] at 10, is not an accurate reflection of the MOO, because Judge Vidmar, in fact, did weigh the parties' comparative interests, [Doc. 132] at 10–11. More importantly, however, such analysis was not required because Defendants had failed their burden in the first place. In other words, because Defendants had failed to show that the material constituted "trade secrets or highly

confidential, non-public, personal or proprietary business information" and, thus, needed extra protection, there was no requirement for Judge Vidmar to analyze whether Dr. Augé's need outweighed Defendants'.

Finally, Defendants argue that Plaintiff should have been required to make "specific document challenges" to the disputed material rather than simply disputing the AEO designation of more than 60,000 pages. [Doc. 138] at 11. In support, they cite unpublished cases from the Southern District of Florida and the District of Colorado. *Id.* Neither of these cases suggests that Judge Vidmar erred. Judge Vidmar found that the "level of review (e.g., file-by-file, document-by-document, page-by-page)" was not the issue. [Doc. 132] at 7–8. Instead, Defendants—as the proponents of the AEO designation—were required to establish that that the disputed materials constituted "trade secrets or highly confidential, non-public, personal or proprietary business information," and that Defendants might be harmed if Dr. Augé saw them. [Doc. 59] at 4; [Doc. 132] at 7–8. Defendants failed to meet their burden.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Objections to Magistrate Judge's Memorandum Opinion and Order Granting Plaintiff's Motion to De-Designate Discovery Material Marked "Attorneys' Eyes Only" [Doc. 138] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Judge Vidmar's Memorandum Opinion and Order Granting Plaintiff's Motion to De-Designate Discovery Material Marked "Attorneys' Eyes Only" [Doc. 132] is **AFFIRMED**.

**IT IS FURTHER ORDERED** that no later than **30 days** after entry of this Order, Defendants must, at their own cost, provide one additional copy of the discovery materials to Plaintiff with a lesser or no designation under the Agreed Protective Order [Doc. 59].

**IT IS SO ORDERED**.

_____
**UNITED STATES DISTRICT JUDGE**