# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**CLARKE COLL,**

    **Plaintiff,**[1]

**v.**                                                            **No. 14-cv-1089 KG/SMV**

**STRYKER CORPORATION and**
**HOWMEDICA OSTEONICS CORPORATION,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

THIS MATTER is before the Court on Plaintiff's Motion for an Order Compelling Responses to Document Requests [Doc. 154], filed April 27, 2017. Defendants responded on May 19, 2017. [Docs. 159, 160]. Plaintiff replied on June 1, 2017. [Doc. 168]. Having considered the briefing and the relevant law, and being otherwise fully advised in the premises, the Court will DENY Plaintiff's Motion to Compel.

### Background

In the 1990s, Wayne Augé, II, M.D., (the originally named Plaintiff in this action) made innovative developments in orthopedic medicine and surgery. Defendants were interested in his inventions, and so they entered into a series of agreements with him for their common benefit. Defendants utilized Dr. Augé's inventions in several products that went to market. Over the years, however, as Defendants marketed new products with his inventions, Dr. Augé came to

---

[1] Mr. Coll was substituted as Plaintiff in this matter when the original Plaintiff, Wayne Augé, II, M.D., filed for bankruptcy. Mr. Coll is the trustee of the bankruptcy estate. [Doc. 30].

believe that Defendants were not fulfilling their agreements to honor his ownership rights or to pay him what they owed. Consequently, Dr. Augé filed this lawsuit in 2014. He alleges breach of contract and other related claims stemming from Defendants' alleged violation of the parties' agreements. [Doc. 34] at 9–14.

Plaintiff claims that three lines of medical devices sold by Defendants—the Iconix, VersiTomic, and MicroFX product lines—contain "[i]mprovements over confidential disclosures of proprietary information made by Dr. Augé." [Doc. 154] at 2. He claims, in part, that he is entitled to "all profits derived from the commercialization" of the "improvements." *Id.* (internal quotation marks omitted). In other words, he claims he is entitled to all profits Defendants earned in connection with the commercialization of the new products made with Dr. Augé's inventions. *Id.* at 2–3.

Because Plaintiff requests damages in the amount of the profits Defendants earned from the three specified product lines, he has sought discovery of Defendants' revenues and expenses pertaining to those products. Following an earlier request for production, Defendants furnished Plaintiff with spreadsheets and other charts showing their revenues, expenses, and profits from sales of the relevant product lines. *See* [Doc. 154] at 3; [Doc. 159] at 3–4; *see also* [Docs. 160-1, 160-2, 160-3]. The spreadsheets provided relevant financial data in summary form; Defendants did not supply itemized lists of each cost and expense deducted in calculating their profits. [Doc. 154] at 3 & n.4. Nor did Defendants provide "documents evidencing actual expenses." *Id.* Plaintiff subsequently requested additional documents pertaining to Defendants' financials. Plaintiff requested the following:

> Documents, including invoices or other source documents that show or support all items of expense you incurred in the design,

2

> manufacturing, marketing and sales, including sales commissions, of each of the product lines Iconix, VersiTomic and MicroFX that are included in amounts deducted from revenues in calculating profits from the sale of devices in those product lines, as reflected in documents you have marked or otherwise produced . . . .

[Doc. 154-1] at 2. Defendants objected to the request for production, and Plaintiff filed the instant motion to compel.

Plaintiff claims he is entitled to discovery of the underlying source documents from which Defendants calculated the expenses they incurred and compiled the financial summaries of revenues and expenses already provided to Plaintiff. He contends that without these documents, he will be forced to "accept, unquestioned, Defendants' representation as to the cumulative figures for expenses they would claim to be entitled to deduct from revenues in order to calculate their profits." [Doc. 154] at 3. He argues that these source documents are not easily obtained elsewhere. *Id.* at 5. Given that Defendants' profits are the central damages issue in the case, Plaintiff contends that he is entitled to the requested documents.

Defendants argue that the discovery sought is so voluminous that its production would impose an undue burden on them. [Doc. 159] at 4, 8–9; [Doc. 159-4] at 10–11. They also contend that the request is cumulative and that Plaintiff has no need for further financial information, in light of the summary financial data Defendants have already provided. [Doc. 159] at 6, 8. They maintain that the spreadsheets show "expansive financial details" and that the data in the spreadsheets was lifted directly from Defendants' Oracle Enterprise Resource Planning ("ERP") database. *Id.* at 5–6, 8. Moreover, Defendants point out that their corporate representatives will be prepared to answer questions during their depositions as to the methodologies Defendants employed in calculating the profits of the product lines in question,

3

determining expenses, and compiling the financial information provided to Plaintiff in summary form. *Id.* at 3, 12.

## **Legal Standard**

Pursuant to Fed. R. Civ. P. 26(b)(1), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Whether requested discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 26 also imposes specific limitations on electronically stored information ("ESI"). "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). On a motion to compel, the party withholding discovery under this provision bears the initial burden of showing that the information sought "is not reasonably accessible because of undue burden or cost." *Id.* If such a showing is made, the burden shifts to the requesting party to show good cause. *Id.* Whether a responding party must produce ESI depends on whether the burdens and costs of production outweigh the potential benefits of the discovery, as well as "whether those burdens and costs can be justified in the circumstances of the case." Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment. In undertaking such an evaluation, courts may consider, among other things, the specificity of the request, the availability of information from other more easily accessed sources, the likelihood of finding relevant,

responsive information that cannot be obtained elsewhere more easily, the likely importance and usefulness of the information, the importance of the issues at stake in the litigation, and the parties' respective resources. *Id.*

Finally, courts may limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## **Analysis**

Applying the rules of reasonableness and proportionality, the Court finds that Plaintiff is not, at present, entitled to discovery of the underlying source documents he seeks. The burden on Defendants outweighs the likely benefit to Plaintiff. However, as explained in greater detail below, Plaintiff still has some recourse to investigate the integrity of the financial data Defendants have provided. For one, Defendants have offered Plaintiff access to the ERP database itself. [Doc. 154-1] at 3. Furthermore, Plaintiff is entitled to question Defendants' designated Rule 30(b)(6) representatives during deposition about the summary financial data that Plaintiff already has. Plaintiff is entitled to ask Defendants' representatives whether the financial data they produced to Plaintiff (i.e., the revenue and expense figures for the product lines in question) has been produced in their tax returns, filings with the Securities and Exchange Commission ("SEC"), or other similar corporate disclosure. If the methodologies employed or figures provided to Plaintiff differ from those employed or produced in contexts outside of this litigation, Plaintiff may be entitled to discovery on the underlying documents he presently seeks.

### Burden of Production on Defendants

Defendants have shown, primarily through the declaration of Nick Mead, Director of Finance for Defendant Stryker Corporation, that producing the underlying source documents would impose a significant burden on them. [Docs. 159, 159-4]. Defendants do maintain their financial data in a database (the ERP database) in the ordinary course of business. [Doc. 159] at 4. Indeed, the financial information they produced to Plaintiff through an earlier request for production was culled from that database. *Id.* at 3–4. The database is populated with information from various sources pertinent to Defendants' financial recordkeeping. These underlying source documents (the documents that Plaintiff seeks) include, for example, "product orders from hospitals, invoices associated with product orders, cancelled checks, payroll and commission payments to Defendants' sales force, documents related to returned products, freight and shipping bills, [and] medical device excise tax charges and payments." *Id.* at 4. The documents include "purchase orders made to hundreds of customers over hundreds of discrete orders for worldwide sales since 2010; tens of thousands of invoices and orders relating to the products; [and] payroll data for every sales representative who sold the products, including 400–500 sales representatives in the United States alone." *Id.*

While the financial information from the source documents is maintained in the ERP database itself, Defendants "do not maintain the underlying source documents (*e.g.*, invoices, receipts, agreements, etc.) together in any centralized location or in particular fashion." *Id.* at 8–9. Further, collection of the source documents would require access to multiple ERP databases maintained at separate branch locations, triggering "numerous security hurdles." *Id.* at 9. In short, Defendants estimate that the requested source documents number in the tens of thousands

or even hundreds of thousands. *Id.*; [Doc. 159-4] at 5. They contend that it would require "a team of at least ten employees working full time for many weeks, if not months, to even begin making progress on collecting the scope of the requested materials." *Id.*

Plaintiff challenges Defendants' assessment of the burden of producing the requested documents. He contends that Defendants rely solely on the declaration of Mr. Mead, whose representations, he claims, are vague and unsubstantiated. [Doc. 168] at 3 (Mr. Mead "makes <u>unsupported</u> allegations about his 'understanding' about the number of employees and time required to 'begin making progress'" on production.). He argues that Mr. Mead's representations "appear to be grossly exaggerated if not completely fabricated." *Id.* Plaintiff contends that a party's "stereotyped and conclusory statements" of the cost of production will not suffice. [Doc. 168] at 5 (quoting *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013)). But Mr. Mead provided a signed declaration stating that he had "personal knowledge of the facts set forth" therein. [Doc. 159-4] at 2. He testified to the efforts that would be required to collect the source documents "[b]ased on [his] experience." *Id.* at 3. Moreover, through Mr. Mead, Defendants provided an approximation of the volume of documents they would be required to produce to Plaintiff. Though they did not provide a dollar amount or hard number, Defendants' response is more than a "stereotyped and conclusory statement" of the burden they would face. Plaintiff's contention that Defendants' estimation was "fabricated" or is otherwise spurious is unavailing.

Relatedly, Plaintiff asserts that Defendants undermined their own argument about the burden of production by acknowledging that "the [source] documents are entered in or contained in Defendants' audited [ERP] database containing information 'directly imported into the ERP

7

database, from the source documents themselves.'" [Doc. 168] at 2 (quoting [Doc. 159] at 4). "It is exactly the existence of the ERP database that should make production of the source materials or data—or copies—readily accessible, without undue burden . . . ." *Id.* at 3. But Plaintiff seems to misunderstand Defendants' characterization of the contours of the database. While the financial *data* from the source documents "was directly imported into the ERP database," the source documents themselves are not maintained in one "centralized location," "apart from maintaining the information from the documents within the ERP database itself." [Doc. 159] at 4. It is not just the information from the source documents that Plaintiff has requested. Plaintiff requested the source documents themselves, "including invoices or other source documents that show or support all items of expense . . . incurred in the design, manufacturing, marketing and sale" of the product lines in question. [Doc. 154-1] at 2. Defendants do not represent that such documents are available through the database, only that the database is populated with financial information taken from those documents.[2] [Doc. 159] at 4, 8–9.

## Likely Benefit to Plaintiff

There is no question that discovery of Defendants' profits as to the three product lines in question is relevant to this case. And, as Plaintiff notes, Defendants' profits are central to

---

[2] It is clear that Plaintiff has requested the underlying source documents from which the costs and expenses associated with the product lines were tallied. In his reply, however, Plaintiff also seems to request (either instead of, or in addition to, the source documents) the cost and expense data itself. *E.g.*, [Doc. 168] at 4 ("[Mr. Mead] provides no facts that show Defendants are unable to download or produce the documents in that database, *or the specific cost entries*, that Defendants claim to be properly deductible in determining their profits."). To the extent Plaintiff would be satisfied with access to the ERP database, in order to review more granular financial data, Defendants have already offered it. [Doc. 154-1] at 3. If Plaintiff is requesting that Defendants produce, for example, copies of specific pages of data from the database, the Court does not pass on whether such production would impose an undue burden on Defendants. Though it appears to the Court that, unlike the source documents, such information *is* contained in a centralized location, i.e., the database, it is not clear whether the database is sufficiently accessible such that the thousands of expense-related entries could be produced without undue burden on Defendants.

8

Plaintiff's damages calculation. Nevertheless, at present, Plaintiff has not shown that his need for additional discovery on Defendants' expenses outweighs the burden that Defendants have identified.

As discussed at length above, Plaintiff already has information pertaining to Defendants' revenues and expenses. Although Plaintiff "accepts, for present purposes, the revenue information provided by Defendants," he seeks the underlying source documents in order to "question the summary cumulative expense figures provided by Defendants."[3] [Doc. 154] at 3. Plaintiff contends that the summary figures are insufficient because "Defendants will attempt to present the largest dollar amount of expenses possible for present purposes, in order to make a case that their profits are as low as possible (or perhaps contend that profits are nonexistent despite the large volume of sales), in order to minimize their damage exposure." [Doc. 168] at 6. Plaintiff offers no evidence that this is in fact what has occurred; he argues only that he is entitled to this additional discovery in order to find out. Only through review of the actual source documents, Plaintiff reasons, can he determine whether the expense figures Defendant has already provided are "directly and fairly deducted from sales," i.e., whether he can rely on Defendants' summary figures in calculating damages. *Id.* at 7.

As an initial matter, it is worth noting that the financial data Defendants have already provided was culled directly from their ERP database. [Doc. 154-1] at 3; [Doc. 159] at 3–4. The

---

[3] Plaintiff notes that information in summary or chart form is admissible pursuant to Fed. R. Evid. 1006 only where the party offering such evidence has made available for review the underlying records from which the summary information was compiled. [Doc. 154] at 5. Plaintiff suggests that, if the Court declines to grant his motion, "the trial court should rule . . . that any offer of summary proof of [Defendants'] expenses would be inadmissible." [Doc. 154] at 5. The Court sees two flaws in this logic. First, Plaintiff himself (presumably) relies on these summaries as proof of Defendants' revenues, toward his calculation of profits. Does Plaintiff suggest that the trial court exclude the summary spreadsheets as to expenses, but not as to revenues? Such a result seems unreasonable. Second, and more to the point, as discussed *supra*, Defendants have offered Plaintiff access to the ERP database from which the spreadsheets were compiled. Surely such access would satisfy any concern Plaintiff had with the Rule 1006 requirement.

information contained in the ERP database is maintained in the ordinary course of business, as Defendants point out. [Doc. 159] at 4. The database is internally monitored and audited by teams of Defendants' own financial and information systems personnel. *Id.* at 5. It is also subjected to independent auditing by the accounting firm Ernst & Young. *Id.* These features suggest the integrity of the data.

Moreover, to the extent Plaintiff is concerned that Defendants "doctored" their expense figures to yield a damages calculation that is more advantageous to them, he may pursue this line of inquiry during the depositions of Defendants' designated corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiff is entitled to depose Defendants' corporate representatives on the subject of the revenue and expense data Defendants provided him. Indeed, Defendants have already agreed to make available witnesses with knowledge as to (1) "[t]he method by which Defendants calculate profits" for their product lines, (2) "[t]he methodology by which Defendants determined the costs they have shown in information provided to Plaintiff in discovery," and (3) "[t]he sources, compilation and calculation of information concerning the revenues and costs reported with respect to the [product lines], including but not limited to" the summary financial information Defendants provided to Plaintiff's counsel. [Doc. 159] at 3. Plaintiff may ask them whether the financial data Defendants produced to Plaintiff has been produced in their tax returns, filings with the SEC, or other similar corporate disclosure. If Plaintiff learns that the methodologies Defendants employed or the figures provided to Plaintiff for purposes of the damages calculation differ in some respect from the methodologies employed or financial figures Defendants have reported elsewhere, outside of this litigation, the discovery

landscape looks different. In such case, Plaintiff may be entitled to discovery of the underlying source documents he seeks. At present, however, Plaintiff is not entitled to this discovery.

The case law Plaintiff cites for the proposition that a defendant must "provide invoices and other data supporting defendant's contentions about the calculation of profits" does not compel a different outcome. *See* [Doc. 168] at 5–6. The cases Plaintiff cites are all distinguishable. *See Wahoo Intern., Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400, at *6–7 (S.D. Cal. July 18, 2014) (plaintiff was entitled to financial information from a third party where the parties did not dispute that the information was necessary to calculate damages, there was no evidence about the burden of production, and the third party itself had not moved to quash the subpoena); *Flexiteek Ams., Inc. v. Tek-Dek, LTD.*, 2015 WL 11123312, at *1 (S.D. Fla. Mar. 6, 2015) (plaintiffs were entitled to discovery of additional source documents to fill in gaps in financial information, where defendant had already provided some source documents and plaintiffs had identified discrepancies within the materials produced); *Reinsdorf v. Sketchers, U.S.A., Inc.*, 296 F.R.D. 604, 620–21 (C.D. Cal. 2013) (defendant was not required produce "subledgers" of data where it had already produced its "general ledger of aggregate data" containing millions of rows of data over several years, the production of which was not itself the subject of the dispute). These cases may show that, in some instances, a party may be required to produce invoices or other source documents. But none of these cases suggests that Plaintiff is entitled to discovery of all source documents in this case, where Defendants have already produced data from their ERP database, made a showing of the significant burden production would entail, and offered Plaintiff access to the database itself.

**Conclusion**

For the reasons set out in the foregoing analysis, Plaintiff is not, at present, entitled to discovery of the underlying source documents he seeks. The burden of production outweighs the likely benefit to Plaintiff, and Plaintiff's purpose in obtaining the documents may be effectuated through the other means set out above. Plaintiff may renew his request for such documents if his questioning of Defendants' corporate representatives or other investigation calls into question the integrity of the data Defendants have already provided.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for an Order Compelling Responses to Document Requests [Doc. 154] is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 37(a)(5), reasonable expenses are **AWARDED** to Defendants. Defendants must file an affidavit of such expenses no later than **July 24, 2017**. Plaintiff may object to the affidavit no later than **August 7, 2017**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**