IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WAYNE KENNETH AUGÉ II,

    Plaintiff,[1]

v.    No. 14-cv-1089 KG/SMV

STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORPORATION,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REOPEN DISCOVERY FOR LIMITED PURPOSE

THIS MATTER is before the Court on Plaintiff's Motion to Reopen Discovery for Limited Purpose [Doc. 327], filed on June 24, 2020. Defendants Stryker Corporation and Howmedica Osteonics Corporation (collectively, "Stryker") responded on July 10, 2020. [Doc. 329]. No reply is needed to decide the instant Motion. The Court has considered the briefing, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises, the Court finds that the Motion is not well taken and shall be denied.

### BACKGROUND

This case began nearly six years ago, when Plaintiff sued Stryker[2] for various claims relating to their business relationship. Discovery terminated over three years ago, and now—perhaps with the benefit of hindsight and new counsel representing him—Plaintiff moves to reopen

---

[1] Clarke C. Coll was substituted as Plaintiff in this matter when Dr. Augé filed for bankruptcy. Mr. Coll is the trustee of the bankruptcy estate. [Doc. 30]. Dr. Augé was reinstated as Plaintiff after Mr. Coll, as trustee, abandoned certain claims of the bankruptcy estate, including the claims in the instant lawsuit. [Doc. 187].

[2] The parties have a long history of operating under various entities or subsidiaries. *See* [Doc. 207] at 2 n.2. For simplicity's sake, the Court will refer to the contracting parties as "Plaintiff" and "Stryker."

discovery, long after the presiding judge, the Honorable Kenneth J. Gonzales, decided pretrial motions and the parties filed two pretrial orders. The Court will deny this request.

Plaintiff is an orthopaedist who has invented medical equipment and products. [Doc. 34] at 1. Stryker is a manufacturer of medical and surgical products. *Id.* at 2. The parties signed a confidentiality agreement in 2000 so they could negotiate Stryker's development and marketing of certain drill technologies invented by Plaintiff. [Doc. 178-3] at 1. The confidentiality agreement allowed Plaintiff to exchange his sensitive designs with Stryker without fear that Stryker would appropriate the technology for itself. *See id.* at 1–2. The confidentiality agreement also provided that any improvements to Plaintiff's inventions developed by Stryker would belong to Plaintiff. *Id.* at 2. The parties executed additional confidentiality agreements before signing a royalty agreement. [Doc. 178-5]; [Doc. 186-1] at 3.

Under the royalty agreement, Plaintiff assigned to Stryker all rights, title, and interest in certain inventions in exchange for a licensing fee and subsequent royalty payments. [Doc. 178-5] at 1–4. According to Plaintiff, the royalty agreement "provides royalties for (i) seven years from the first commercial sale of the specific Product, or (ii) the lifetime of a patent covering the specific Product, whichever is longer." [Doc. 327] at 3. Stryker paid royalties to Plaintiff for its use of one of his inventions, the TwinLoop Flex device. [Doc. 207] at 4.

After the parties executed the royalty agreement, Stryker developed three additional lines of products: Iconix, VersiTomic, and MicroFX. [Doc. 186-1] at 6–7. Though Stryker initially paid Plaintiff some royalties on the Iconix products, it never paid him royalties for VersiTomic and MicroFX sales and eventually ceased paying Iconix royalties. *Id.*; [Doc. 207] at 5.

## PROCEDURAL HISTORY

In early 2014, Plaintiff filed for bankruptcy. *In re Wayne Kenneth Augé, II*, No. 14-10443-t7, [Doc. 1]. Later in 2014, Plaintiff retained the law firm of Peacock Myers P.C. to represent him in a potential lawsuit against Stryker. *See* [Doc. 329-10] at 1. On December 2, 2014, Plaintiff sued Stryker for various claims related to its non-payment of royalties. [Doc. 1] at 1. As is relevant here, he alleges that Stryker breached both the confidentiality agreements and the royalty agreement by using his designs and failing to pay him the proper amount of royalties. *Id.* at 10. Plaintiff also claims that Stryker breached its obligation of good faith and fair dealing by failing to pay him the royalties to which he feels entitled. *Id.* at 10–11.

On September 17, 2015, Plaintiff's bankruptcy trustee, Clarke C. Coll, was substituted as the Plaintiff in this case. [Doc. 30] at 1. The Court held a Rule 16 Scheduling Conference on September 9, 2016, where it set a discovery deadline of May 8, 2017, and a pretrial-motions deadline of June 8, 2017. [Doc. 64] at 1–3. The Court later allowed the parties to complete depositions by July 14, 2017, and extended the pretrial-motions deadline to August 25, 2017. [Doc. 167]. Before discovery terminated, Plaintiff conducted a substantial amount of discovery, including (1) receipt of over 100,000 pages of documents in response to 98 requests for production, (2) service of 28 interrogatories and 89 requests for admission, (3) two Rule 30(b)(6) depositions, and (4) one technical expert report and two damages expert reports. [Doc. 329] at 20.

Stryker moved for summary judgment on all of Plaintiff's claims on August 25, 2017. [Docs. 178, 179]. On September 1, 2017, Coll abandoned the claims in the instant lawsuit, thereby returning the claims to Dr. Augé and once again substituting him as Plaintiff in this case. [Doc. 184] at 1. The parties filed the Proposed Pretrial Order on November 10, 2017. [Doc. 203].

On May 11, 2018, Judge Gonzales granted in part and denied in part Stryker's Motions for Summary Judgment. [Doc. 207]. He granted summary judgment in Stryker's favor on Plaintiff's claim for breach of the confidentiality agreements but denied summary judgment on Plaintiff's claims for breach of the royalty agreement and breach of the obligation of good faith and fair dealing. *Id.* at 11–12. In granting summary judgment on the breach-of-confidentiality-agreements claim, Judge Gonzales stated that Stryker, under the confidentiality agreements, could "manufactur[e] Improvements to Plaintiff's flexible drill technology, including the Iconix, VersitTomic, and MicroFX devices." *Id.* at 11. Thus, Stryker did not violate the confidentiality agreement by developing those products. *Id.* at 12. However, Judge Gonzales stated that Stryker failed to "establish that the Royalty Agreement forecloses royalties on" any products "incorporating Plaintiff's flexible drill technology." *Id.* at 12. Therefore, Judge Gonzales denied summary judgment on Plaintiff's breach-of-royalty-agreement claim. *Id.*

The parties filed the Supplemental Proposed Pretrial Order on April 3, 2019. [Doc. 247]. Judge Gonzales set the trial for November 12, 2019. [Doc. 258] at 1. On August 23, 2019, however, Judge Gonzales granted Peacock Myers' Motion to Withdraw, [Doc. 278], and vacated the trial, *see* [Doc. 303]. On December 2, 2019, Plaintiff retained new counsel. [Docs. 305, 306].

Judge Gonzales held a status conference on June 11, 2020. [Doc. 321] (clerk's minutes). Plaintiff's new counsel indicated that he might request that the Court reopen discovery. *Id.* at 1. He also believed that after this additional discovery closed, "a supplemental motion for summary judgment . . . would probably be necessary." [Doc. 331] at 9. Judge Gonzales permitted Plaintiff to file a motion to reopen discovery but warned him that he should not expect to "unring all the

4

bells that have been rung in discovery so far, so this request will have to be for a very tight, limited process for discovery." *Id.* at 15.

On June 24, 2020, Plaintiff filed the instant Motion to Reopen Discovery. [Doc. 327]. Motions in limine are due on January 15, 2021. [Doc. 332] at 1. Jury instructions are due on February 1, 2021. *Id.* Judge Gonzales will hold a pretrial conference on February 18, 2021. *Id.* Trial will begin on March 1, 2021. *Id.*

## DISCUSSION

Plaintiff requests that the Court reopen discovery in three allegedly "limited" categories. *Id.* at 1. First, he requests additional "Products Discovery," which he defines as discovery concerning "identification of the products commercialized by Stryker that pertain to" his technology. *Id.* at 3. In this category, Plaintiff requests interrogatories, requests for production, a Rule 30(b)(6) deposition, and "[a]dditional technical expert discovery." *Id.* Plaintiff believes that he could not have foreseen the necessity of this Products Discovery before discovery terminated because the need for it only arose after Judge Gonzales' ruling on the Motions for Summary Judgment. *Id.* at 2. Second, Plaintiff requests additional "Damages Discovery" in order to ascertain the applicable period for paying royalties and obtain information about Stryker's profits from selling his technology. *Id.* at 3–4. In this category, Plaintiff requests interrogatories, requests for production, updated economic expert reports, and additional expert discovery. *Id.* at 4. Third, Plaintiff requests additional "Good Faith Discovery," which includes only a deposition of Ryan Yearsley, Plaintiff's "main contact at Stryker," in order to ascertain "Stryker's motive and intent in its business dealings with [Plaintiff]." *Id.* at 4.

5

Stryker objects to each of Plaintiff's discovery requests. It argues that Plaintiff has not shown good cause for reopening discovery and has not shown excusable neglect for his failure to bring this Motion until long after discovery ended. [Doc. 329] at 11–20. Stryker also objects to the requested discovery as duplicative and burdensome. *Id.* at 20–22. Because the Court agrees with Stryker's first two arguments, it will deny Plaintiff's Motion.

### A.     Plaintiff fails to show good cause to reopen discovery.

A court may modify a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Courts consider six factors when deciding whether to reopen discovery: (1) whether trial is imminent, (2) whether the request is opposed, (3) the prejudice to the non-moving party, (4) whether the moving party diligently attempted to obtain discovery before the deadline passed, (5) the foreseeability of the need for additional discovery, and (6) the likelihood that the discovery will lead to relevant evidence. *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). However, the moving party's diligence remains the most important factor. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019).

Before the Court analyzes the *Smith* factors, it will note the wide breadth of Plaintiff's requested discovery. Plaintiff requests that the Court reopen discovery three years after it ended in order to obtain nearly every type of discovery: five interrogatories, five requests for production, one Rule 30(b)(6) deposition, another deposition, an unspecified amount of "[a]dditional technical expert discovery," updated economic expert reports, and an unspecified amount of "[a]dditional expert discovery regarding" the applicable the royalty period. [Doc. 327] at 3–4. This discovery includes incredibly broad parameters about virtually every disputed issue in the case, such as written discovery concerning the "identification of the products commercialized by Stryker that

6

pertain to or incorporate Dr. Aug[é]'s flexible drill technology"—a category that seemingly covers the general subject-matter of the case. *Id.* at 3. Plaintiff has failed to heed Judge Gonzales' warning that he should not attempt to "unring all the bells that have been rung in discovery so far." [Doc. 331] at 15. This broad request at such a late stage of the case colors the Court's analysis of the *Smith* factors.

The balance of the *Smith* factors weighs against reopening discovery. First, the breadth of discovery requested and the related motions practice would consume significant resources and interfere with the trial. Trial will begin on March 1, 2021, about six months after entry of this order. *See* [Doc. 332] at 1. Normally, courts would not consider this trial setting imminent. *See Benton v. Avedon Eng'g, Inc.*, No. 10-cv-01899-RBJ-KLM, 2013 WL 1751886, at *1 (D. Colo Apr. 23, 2013) (finding that a trial set for five months after date of opinion was not imminent). Nonetheless, Plaintiff has requested a broad amount of discovery. He also anticipates filing a "supplemental motion for summary judgment" after he completes the requested discovery.[3] [Doc. 331] at 9. He believes the parties could complete the requested discovery and file a supplemental motion for summary judgment by "the end of the year"—leaving little time to brief and decide the motion before the motion in limine deadline and pretrial conference, *and* prepare for trial. *Id.*; *see* [Doc. 332] at 1. Especially given the delays in obtaining discovery during the Covid-19 pandemic, the Court is skeptical that the parties could complete this significant amount of discovery and leave sufficient time to prepare for trial. *See Buffalo Hogan, Inc. v. Greene*, No. 16-cv-0420, 2017 WL 3635317, at *2 (D.N.M. Aug. 23, 2017) (holding that the first *Smith*

---

[3] It is unclear exactly on what claims(s) Plaintiff would file this supplemental motion for summary judgment.

7

factor weighed slightly against reopening discovery when trial was set for about four months away but little time existed to complete the requested discovery and prepare for trial).

Second, Stryker opposes the request to reopen discovery. [Doc. 329] at 16.

Third, Stryker would suffer significant prejudice should the Court allow the requested discovery. Before the Court stayed the case, trial was set for November 12, 2019. [Doc. 258] at 1. Stryker spent a "considerable" amount of time preparing for that trial. [Doc. 329] at 16. The broad discovery requested by Plaintiff into virtually every disputed issue in the case would significantly disrupt that trial preparation, upend the parties' justified reliance on the Scheduling Order, and increase expenses. *See Mann v. Fernandez*, 615 F. Supp. 2d 1277, 1290 (D.N.M. 2009) (finding prejudice when the opposing party had expended significant time and resources developing its trial strategy without the requested discovery). That Plaintiff's request comes at such a late stage of the case only magnifies Stryker's prejudice. *See AssociationVoice, Inc. v. Athomenet, Inc.*, No. 10-cv-00109-CMA-MEH, 2011 WL 2297677, at *3 (D. Colo. June 9, 2011) ("Defendants would be prejudiced by having to adjust their approach to defending this litigation well after the close of discovery and the passing of the dispositive[-]motion deadline."); *Wing v. Kaye Scholer, LLP*, No. 2:09-CV-371, 2010 WL 5020576, at *3 (D. Utah Dec. 3, 2010) ("This case is in the advanced stages of litigation and the parties are planning for trial . . . . Reopening discovery would upend the scheduling order upon which the parties have relied and built their expectations."). Moreover, the Court's ruling on Plaintiff's anticipated supplemental motion for summary judgment could drastically change Stryker's trial strategy, further prejudicing it. *See Am. Motorists Ins. Co. v. Gen. Host Corp.*, 162 F.R.D. 646, 648 (D. Kan. 1995) (finding prejudice

when "there is a distinct possibility that revised dispositive motions may be necessary in light of any additional information . . . obtained").

Fourth and fifth, despite that Plaintiff should have foreseen the need for much of the requested discovery, he failed to diligently request it. Plaintiff argues that any "lack of diligence is attributable to prior counsel and occurred during the time that the Bankruptcy Trustee was substituted as Plaintiff in this case." [Doc. 327] at 26. Yet, Plaintiff voluntarily chose his attorney before the trustee was substituted as the Plaintiff—and then the trustee simply used the attorney that *Plaintiff chose*. *See* [Doc. 329-10]. Plaintiff can hardly complain about the diligence of counsel he chose. He identifies no authority suggesting that the actions of the trustee and prior counsel do not bind him. *See Mann*, 615 F. Supp. 2d at 1287 (declining to reopen discovery after the petitioner expressed dissatisfaction with the actions taken by former counsel because he "voluntarily chose this attorney as his representative, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent," stating that "[a]ny other notion would be wholly inconsistent with our system or representative litigation" (quoting *Smith*, 834 F.2d at 170)). The trustee and Plaintiff did not have adverse interests; both had the same interest in prevailing in this case. Plaintiff fails to explain how the trustee allegedly caused prior counsel to neglect any discovery obligations. Lastly, if the trustee indeed caused any lack of diligence, Plaintiff should have moved to reopen discovery when the trustee abandoned his claims in September of 2017—not nearly three years later.[4] *See* [Doc. 184] at 1.

---

[4] Plaintiff also asserts that "during the discovery period, [he] was prohibited from accessing the documents produced by Stryker and foreclosed from meaningfully participating in diligent efforts to seek information." [Doc. 327] at 26. He fails to explain why his attorneys could not diligently seek discovery in spite of this alleged prohibition. This conclusory statement, without more, does not excuse any lack of diligence.

Having established that Plaintiff is bound by the actions of the bankruptcy trustee and former counsel, the Court will analyze the alleged diligence shown by Plaintiff in attempting to obtain each area of the requested discovery.

Products Discovery

The Court begins with Plaintiff's so-called "Products Discovery." Plaintiff requests additional discovery regarding the identification of "products commercialized by Stryker that pertain to or incorporate Dr. Aug[é]'s flexible drill technology." [Doc. 327] at 3. The entire case relates to products commercialized by Stryker pertaining to his technology. Plaintiff wants to obtain discovery concerning whether certain Iconix, VersiTomic, and MicroFX products are royalty bearing. *See id.* at 10–11, 16–17. He should have realized since the case began that such discovery would be necessary to prove his prima facie case; whether certain products are royalty bearing represents the crux of Plaintiff's breach-of-royalty-agreement claim. Stryker foresaw the necessity of discovery about the products it commercialized; its expert covered this topic in his report. *See* [Doc. 329-5] at 2–4. Plaintiff's technical expert discussed the "Stryker Products which represent improvements to Aug[é]'s original design" when analyzing his breach-of-confidentiality-agreements claim. [Doc. 329-4] at 2–8. Both parties foresaw the importance of discovery concerning whether the agreements covered the disputed products, but Plaintiff now wants a second bite at the apple. He has not acted diligently.

Plaintiff contends this Products Discovery did not become necessary until after Judge Gonzales' summary-judgment ruling, long after discovery ended. *See, e.g.*, [Doc. 327] at 2. Plaintiff believes Judge Gonzales held that certain Iconix, VersiTomic, and MicroFX products are royalty bearing. *Id.* Stryker disagrees. It argues that Judge Gonzales only found that those

products were royalty bearing after applying the lenient summary-judgment standard analyzing the facts in the light most favorable to Plaintiff. [Doc. 329] at 5–7. Plaintiff wishes to obtain additional discovery about these products should the Court agree with Stryker and require him to submit evidence at trial that those products bear royalties. [Doc. 327] at 2–3. Because this dispute did not arise until after Judge Gonzales decided the pretrial motions, Plaintiff reasons, he could not have foreseen the necessity of discovery related to it. [Doc. 327] at 21–22.

The Court disagrees. Regardless of who has correctly interpreted Judge Gonzales' ruling, it is Plaintiff's job, *during discovery*, to obtain the evidence necessary to prove his case at trial. This process involves anticipating how the case could change depending on pretrial-motions rulings and being prepared if a court does not rule in the exact way the party had hoped. The failure to prepare for Judge Gonzales' ruling demonstrates precisely why Plaintiff has not acted diligently. Moreover, even if the ruling excused Plaintiff's failure to seek this discovery before the deadline expired, Plaintiff fails to explain why he delayed requesting additional discovery until June of 2020—two years after the ruling and nearly seven months after he retained new counsel.

Plaintiff makes two additional arguments suggesting that he has acted diligently, each of which lacks merit. First, he implies that he recently discovered certain publicly available brochures from Stryker showing additional products commercialized using his technology. [Doc. 327] at 11. Plaintiff fails to show that he could not have investigated the products from the brochures during discovery.[5] *See id.* at 11–12. Second, according to Plaintiff, "portions of the Products Discovery and Damages Discovery did not exist during the discovery period" because

---

[5] Stryker asserts that it has publicized the brochures on its website "for nearly a decade." [Doc. 329] at 8. If Plaintiff wanted information about these products, he could have bought them and given them to an expert for analysis.

11

Stryker continues to "introduce[] into the market Iconix, VersiTomic, and MicroFX products since discovery closed in 2017." *Id.* at 23.  Plaintiff does not explain what "portions" of the requested discovery require supplementation.  The Court will not reopen discovery at the eleventh hour based on the vague assertion that Stryker continues to develop products relating to Plaintiff's designs.[6]

Damages Discovery

Plaintiff fails to show that he acted diligently in obtaining the so-called "Damages Discovery."  He argues that the parties disagree over the "applicable period for paying royalties owed." [Doc. 327] at 3.  Plaintiff contends that Stryker owes him royalties for the longer of either (i) seven years from the first commercial sale of the *specific* product at issue, or (ii) the lifetime of a patent covering the *specific* product at issue.  *Id.*  Stryker, on the other hand, argues that the royalty period began from the date of the first commercial sale of *any* product incorporating Plaintiff's technology.  *Id.* at 3–4.  Because the parties disagree about an important issue, Plaintiff requests additional discovery.  *See id.*

This disagreement does not justify reopening discovery.  Again, it is Plaintiff's job, during discovery, to prepare for potential disagreements about the elements of his case—like damages.  Plaintiff does not argue that this dispute arose after discovery ended.  Stryker "has long contended" that Plaintiff has misinterpreted the royalty period.  [Doc. 329] at 9.  This discovery was foreseeable, and Plaintiff has not shown that he acted diligently in attempting to obtain it.

---

[6] Plaintiff repeatedly stresses the "efficiency" of deciding all claims related to his products in one action. [Doc. 327] at 16–17.  If Plaintiff wanted an efficient trial disposing of all of his potential claims, he should have diligently requested discovery related to his claims during the discovery period or moved to reopen discovery shortly after he retained new counsel—not moved to reopen discovery in the midst of a global pandemic long after the parties submitted the proposed pretrial order.  Even Plaintiff admits that "some portions of his current request would have been better[ ]suited for motions to compel." *Id.* at 19; *see id.* at 11–12 (stating that Stryker has refused to produce documents concerning the development of Iconix, VersiTomic, and MicroFX products).

Plaintiff also requests that the Court reopen discovery to permit the parties to submit "[u]pdated economic expert reports to calculate the damages sustained through the present." [Doc. 327] at 4. To the extent Plaintiff requests additional discovery about products sold after discovery ended, Stryker has voluntarily agreed to update its sales data, [Doc. 329] at 9, and Plaintiff fails to explain why he needs additional *expert reports* to calculate damages given that he will have the underlying sales data. Post-trial damages discovery also could alleviate Plaintiff's concerns about updated damages information.

Finally, Plaintiff requests additional "expert discovery regarding whether claims on the patents issued cover the products that pertain to" his technology. [Doc. 327] at 4. Plaintiff does not attempt to explain how he has diligently sought this discovery. Whether a product relates to one of Plaintiff's patents helps determine the royalty period; Stryker allegedly owes Plaintiff royalties on those products for the life of the patent. *See* [Doc. 178-5] at 4. Discovery concerning the applicability of Plaintiff's patents to the products at issue here is an eminently foreseeable part of Plaintiff's case. Stryker foresaw the need for this discovery; its expert opines that the patents did not cover the products at issue. *See* [Doc 329-5] at 2–3. Plaintiff fails to show that he could not obtain this discovery within the discovery period despite diligent efforts.

Good Faith Discovery

Plaintiff asserts that he must depose his "main contact at Stryker," Ryan Yearsley, in order to prove his breach-of-good-faith-and-fair-dealing claim (the so-called "Good Faith Discovery"). [Doc. 327] at 4. Calling Yearsley a "central figure in this case," *id.*, Plaintiff argues that Yearsley "possesses critical information about the company's intentions to pay [him] royalties on the Iconix products and potential motives for stopping the royalty payments," *id.* at 18. Plaintiff offers no

explanation for why he chose not to depose this central figure within the discovery period. He identified Yearsley in his initial disclosures. [Doc. 327-6] at 2. Stryker identified Yearsley as a person responsible for making royalty payments to Plaintiff in an interrogatory response dated September 8, 2016. [Doc. 327-1] at 18, 22. Given his central role, Plaintiff should have foreseen the need to depose him.[7] The fourth and fifth *Smith* factors weigh against reopening discovery.

Finally, the sixth factor weighs slightly in favor of reopening discovery because at least some of the requested discovery is likely to lead to relevant evidence at trial. Yet, this factor weighs in Plaintiff's favor largely because he has requested such a broad amount of discovery—not because Plaintiff has assured the Court that he will use most of the requested discovery at trial. In fact, he has already obtained a significant amount of discovery, *see* [Doc. 329] at 20–21, and he fails to show that he cannot pursue his claims using this discovery. Plaintiff repeatedly argues that the Court should reopen discovery because much of the requested discovery could prove crucial to his prima facie case. [Doc. 327] at 16–18, 23–24. If he believed that he did not have the information needed to prove his case, he should have moved for additional discovery before discovery terminated, not wait until the eleventh hour to make this request. "[T]here comes a point in litigation when the best way to differentiate between well-grounded claims and weak claims is to proceed to trial." *Elec. Bus. Sys., Inc. v. Omron Bus. Sys., Inc.*, No. 87-cv-2033 S, 1990 WL 95107, at *5 (D. Kan. June 12, 1990). After six years of litigation, this point has come.

Five of the six *Smith* factors weigh against reopening discovery. For the reasons explained, that the requested discovery is likely to lead to at least some relevant evidence does not outweigh

---

[7] Plaintiff deposed two Rule 30(b)(6) witness. [Doc. 327] at 7 & n.8. He fails to explain why those witnesses do not provide the testimony needed to prove his claim for breach of the obligation of good faith and fair dealing.

the other factors—especially Plaintiff's lack of diligence, the most important factor. The Court will not reopen discovery. Plaintiff's Motion is denied.

**B.     Alternatively, Plaintiff fails to show excusable neglect for filing the Motion after (1) the discovery and pretrial-motions deadlines, and (2) after he retained new counsel.**

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The discovery and pretrial-motions deadlines passed three years ago, and Plaintiff did not request additional discovery before either deadline expired. *See* [Doc. 64] at 3. Even if the Court accepted Plaintiff's reasoning that the need for much of the requested discovery did not appear until Judge Gonzales decided the Motions for Summary Judgment in May of 2018, Plaintiff fails to explain why he waited to file this Motion until over two years later. To the extent Plaintiff believes that his retaining of new counsel in December of 2019 justifies this late filing, he fails to explain why he waited over six months after retaining them to move to reopen discovery. Plaintiff entirely fails to address excusable neglect in his Motion, and it does not exist here.

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reopen Discovery for Limited Purpose [Doc. 327] is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

15