IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WAYNE KENNETH AUGÉ, II, M.D.,
*Individually and as Trustee on Behalf of*
*Covalent Global Trust*,

      Plaintiff,

vs.                                        CV No. 14-1089 KG/SMV

STRYKER CORPORATION, and
HOWMEDICA OSTEONICS CORP.,

      Defendants.

<u>ORDER GRANTING IN PART AND DENYING IN PART</u>
<u>PLAINTIFF'S MOTION IN LIMINE</u>

      This matter is before the Court on Plaintiff's Motion in Limine Number 2 to Exclude

Testimony of Karl Leinsing (Motion) (Doc. 350) and Defendants' Opposition to Plaintiff's

Motion in Limine Number 2 to Exclude Testimony of Karl Leinsing (Response) (Doc. 363).  In

his Motion, Plaintiff challenges the qualifications of Defendants' expert Karl Leinsing, in

addition to the relevance and reliability of his conclusions.  (Doc. 350) at 4-11.  The Court has

sufficient evidence to evaluate Mr. Leinsing's testimony without a hearing.  *See Dodge v. Cotter*

*Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003) (explaining that "district court has discretion to

limit the information upon which it will decide the *Daubert* issue").  After review of the parties'

briefing and the relevant law, the Court grants in part and denies in part Plaintiff's Motion (Doc.

350).

I.    *Background*

Defense expert Karl Leinsing is a licensed professional engineer with over 26 U.S.

patents for medical device products. (Doc. 363-1) at 2. Aside from inventing medical products,

Mr. Leinsing also serves as the President of ATech Designs, Inc., a medical device product

development and consulting company. *Id.* Over the years, Mr. Leinsing has been recognized by

the National Professional Engineering Society, the Governor of North Carolina, and LIFE

Magazine for his award-winning design developments. *Id.* In addition, Mr. Leinsing served as a

chairman for the medical device product development conference in Anaheim, California, and

teaches continuing education courses on medical device product development. *Id.* Related to

this case specifically, Mr. Leinsing has experience "develop[ing] a mitral valve repair device that

required a flexible drill...." *Id.* at 3.

After being hired by defense counsel, Mr. Leinsing reviewed the patents at issue to

ascertain whether Defendants' products fit within the ambit of the parties' negotiated agreement.

*Id.* at 7. In pertinent part, Mr. Leinsing's report "discusses and compares [Plaintiff's] disclosures

to prior art references" to determine whether they were otherwise "publicly available" and, thus,

not subject to the controlling contract. *Id.* at 7-9. Based on this analysis, Mr. Leinsing concludes

that Defendants' products should not be considered "improvements to Confidential Information"

as prohibited by the parties' agreement. *Id.* at 15. Similarly, Mr. Leinsing concludes that

Plaintiff's patents do not cover Defendants' current products at the center of the parties' dispute.

*Id.* at 16. Now, Plaintiff requests that the Court exclude several portions of Mr. Leinsing's

report, challenging both his qualifications to serve as an expert in federal court and the reliability

of his opinions. *See* (Doc. 350).

II.    Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony, directing

that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles and methods,
> and (3) the witness has applied the principles and methods reliably to the facts of
> the case.

Under Rule 702, a district court must conduct a two-step "gatekeeping" analysis to determine the

admissibility of expert opinions. *Kumho Tire., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)

(citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)); *Milne v. USA Cycling, Inc.*,

575 F.3d 1120, 1134 (10th Cir. 2009).  First, a court must assess whether the expert is

"qualified," by ascertaining their "knowledge, skill, experience, training, or education."

*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (citing Fed. R. Evid.

702).  For an expert to be deemed qualified under the Federal Rules, their testimony must be

"relevant" to the issues before the court. *Daubert*, 509 U.S. at 591.  Second, a court must

determine whether the expert's opinion is "reliable." *Id.* at 593-94.  An expert's opinion must be

both relevant and reliable to be admissible. *Milne*, 575 F.3d at 1134.

The party that proffers the expert testimony bears the burden of proving its compliance

with Rule 702 by a preponderance of the evidence.  Fed. R. Evid. 702 Advisory Committee

Notes (2000) (citing Fed. R. Evid. 104(a)).  Nonetheless, a court should liberally admit expert

testimony. *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995) (citing *Daubert*, 509

U.S. at 588).  Furthermore, a court is afforded broad "discretion in determining the competency

of an expert." *Id.* at 1525 (internal citation omitted).

III.     *Discussion*

In his Motion, Plaintiff offers four bases to exclude Mr. Leinsing's proposed opinions. *See* (Doc. 350) at 1. First, Plaintiff contends that Mr. Leinsing's opinions "improperly invade the role of the jury." *Id.* Second, Plaintiff argues that Mr. Leinsing's opinions are not relevant to the facts at issue. *Id.* Third, Plaintiff asserts that Mr. Leinsing's opinions are nothing more than "unsupported *ipse dixit.*" *Id.* Fourth and, finally, Plaintiff contends that Mr. Leinsing is unqualified to proffer an expert opinion on the issues before the jury. *Id.* The Court addresses each of Plaintiff's contentions in turn.

A.  *Whether Mr. Leinsing's Opinions "Invade the Role of the Jury"*

Plaintiff first alleges that three of Mr. Leinsing's proposed opinions "improperly invade the role of the jury." (Doc. 350) at 1. Specifically, Plaintiff contests the admissibility of Mr. Leinsing's opinions concerning:  (1) "the meaning of the February 2000 Confidentiality Agreement;" (2) "whether Defendants' conduct was permissible under the February 2000 Confidentiality Agreement;" and (3) "the meaning of [Plaintiff's] deposition testimony." *Id.* at 4-6, 11-12. In support of his first two challenges to Mr. Leinsing's opinion, Plaintiff argues that Mr. Leinsing attempts to improperly tell the jury what conclusion to reach, rather than assist them in understanding a fact at issue. *Id.* at 6. In response, Defendants agree to withdraw their request to elicit testimony from Mr. Leinsing regarding the scope of the February 2000 Confidentiality Agreement. (Doc. 363) at 3.

Particularly, Defendants explain that Mr. Leinsing's expert report was "served in March 2017, long before the Court's summary judgment order dated May 11, 2018." *Id.* at 3 n. 1. Prior to the Court's May 2018 ruling, the factfinder's interpretation of the February 2000 Confidentiality Agreement was a central issue surrounding Plaintiff's claims. *Id.* at 3-4. Now,

4

however, Plaintiff's claim regarding the February 2000 Confidentiality Agreement has been dismissed and, as a result, Defendants no longer need expert testimony to support their position. *Id.* Therefore, the first two opinions that purportedly usurp the role of the jury are excluded without objection.

Next, Plaintiff argues that Mr. Leinsing's report attempts to impermissibly "interpret and characteriz[e]" his deposition statements. (Doc. 350) at 11-12. Consequently, Plaintiff requests that the Court preclude Mr. Leinsing "from opining on the meaning of [Plaintiff's] testimony." *Id.* at 12. In their Response, Defendants contend that Mr. Leinsing "did nothing wrong" by quoting Plaintiff's deposition testimony. (Doc. 363) at 12. Instead, Defendants assert that these statements have probative value to assist the jury in evaluating the facts and data supporting Mr. Leinsing's opinion. *Id.*

In support of this argument, Plaintiff explains that during his deposition, defense counsel asked him if he was "the first to come up with [flexible drills]." (Doc. 350-1) at 2 (deposition transcript). In response, the transcript reflects that Plaintiff stated, "No, flexible drills have been around." *Id.* Subsequently, citing this response to counsel's question, Mr. Leinsing opined that Plaintiff "admitted that flexible drills were known and in the public domain prior to his disclosure of a flexible drill to [Defendants] in February 29, 2000." (Doc. 350-2) at 14. Plaintiff contends that this language in Mr. Leinsing's report constitutes an interpretation and characterization of his deposition testimony. (Doc. 350) at 11-12. The Court disagrees.

Most notably, Mr. Leinsing's report quotes Plaintiff's deposition testimony verbatim in the footnote that accompanies his statement. (Doc. 350-2) at 14. The Court is, therefore, unpersuaded that Mr. Leinsing's report attempts to "characterize" or "interpret" Plaintiff's testimony. Rather, Mr. Leinsing's summation of Plaintiff's testimony provides permissible

5

context and accurately captures Plaintiff's remarks. *See* Fed. R. Civil Pro. 703 Advisory

Committee Notes (explaining that "facts or data upon which expert opinions are based may ... be

derived from [the] ... presentation of data to the expert outside of court and other than by his

own perception"). Thus, the Court declines to conclude that Mr. Leinsing's opinion improperly

invades the role of the jury. Notwithstanding this conclusion, Plaintiff may introduce the

pertinent sections of his deposition transcript to alleviate any concern that the jury will not be

presented with a fair and accurate representation of his statements. *See* Fed. R. Civil Pro. 32

(explaining permissible use of depositions in court proceedings).

In sum, Plaintiff's request to exclude Mr. Leinsing's testimony regarding the parties'

February 2000 Confidentiality Agreement is granted without objection. Mr. Leinsing is,

therefore, precluded from proffering his opinion on this topic before the jury. Conversely,

Plaintiff's request to exclude Mr. Leinsing's opinions that rely on his deposition testimony is

without merit. As a result, the Court declines to grant Plaintiff's request to prohibit Mr. Leinsing

from citing this testimony when proffering his opinion. Instead, Plaintiff may introduce portions

of his deposition testimony to provide appropriate context for his statements. Plaintiff's

objection on this point is, therefore, granted in part and denied in part.

> ### B. Whether Mr. Leinsing's Opinions are Relevant

Next, Plaintiff argues that Mr. Leinsing's opinions reach beyond the scope of the parties'

dispute in this case. (Doc. 350) at 6-7. Particularly, Plaintiff asserts that he does not contend he

was "the first person to conceive of the idea of a curved guide, the idea of a flexible drill, the

idea of a flexible inserter, or the idea of a suture anchor." *Id.* at 7. On the contrary, he contends

that "he is the inventor of a flexible drill system." *Id.* For this reason, Plaintiff maintains that

Mr. Leinsing's opinions on whether he invented the component parts that comprise his flexible

drill system are irrelevant. *Id.*

In response, Defendants explain that Mr. Leinsing's testimony will "help the jury

understand the scope of [Plaintiff's] disclosures, what [Plaintiff's] purported invention is, and the

value of his contributions to the accused products." (Doc. 363) at 4-5. This knowledge,

Defendants contend, will assist the jury in deciding whether Defendants were unjustly enriched

and the extent of Plaintiff's entitlement to damages. *Id.* at 5. Consequently, Defendants argue

that Mr. Leinsing's testimony on the scope of Plaintiff's inventions is relevant to assist the trier

of fact. *Id.*

Evidence is considered "relevant if it has 'any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it

would be without the evidence.'" *United States v. Ibarra-Diaz*, 805 F.3d 908, 928-29 (10th Cir.

2015). If evidence is not relevant, it is inadmissible. *United States v. Guardia*, 135 F.3d 1326,

1328 (10th Cir. 1998) (quoting Fed. R. Evid. 402). Otherwise, a court should admit relevant

evidence. *Ibarra-Diaz*, 805 F.3d at 929 (citing Fed. R. Evid. 402). Nonetheless, Rule 403

"permits a court to 'exclude relevant evidence if its probative value is substantially outweighed

by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.*

Mr. Leinsing's opinions describing the availability of the component parts that constitute

Plaintiff's inventions are relevant to the case at bar. Most significantly, Plaintiff contends that

Defendants utilized his patented designs to create new device improvements without

compensating him. The material that composes his patented designs, and whether those

materials were publicly available for Defendants to utilize without compensating Plaintiff, is,

therefore, material to the jury's consideration.  This evidence illustrates the extent to which

Defendants relied on Plaintiff's purported inventions, as opposed to other designs already

circulating in the public forum.  Ultimately, these considerations are also relevant to the jury's

calculation of damages.

Moreover, Mr. Leinsing's opinions explain, at a minimum, important background

principles.  Indeed, the average juror is likely unfamiliar with the technicalities of orthopedic

invention and the component parts that are required to construct Plaintiff's designs.  In this

capacity, Mr. Leinsing's testimony will help the jury understand the scope of the parties' dispute

and assist the jury in narrowing the relevant question for consideration.  *See* Fed. R. Evid. 401,

Advisory Comm. Notes (explaining that evidence "which is essentially background in nature …

is universally offered and admitted as an aid to understanding").  For these reasons, the Court

denies Plaintiff's request to exclude Mr. Leinsing's opinions on the scope of patents available in

the public domain.  Simply stated, this evidence is relevant to assist the jury in understanding the

contours of Plaintiff's contentions, narrowing the issues, and calculating damages.

C. *Whether Mr. Leinsing's Opinions are Unsupported* Ipse Dixit

In his third request for exclusion, Plaintiff argues that Mr. Leinsing's opinions are

"unsupported *ipse dixit*."  (Doc. 350) at 7.  In pertinent part, Plaintiff asserts that Mr. Leinsing's

comparison of Plaintiff's "disclosures and preexisting patents lack any identified basis."  (Doc.

350) at 8.  Plaintiff likewise contends that Mr. Leinsing's comparison "lacks any articulated

standard" to test whether his conclusions are reliable.  *Id.* at 9.  Accordingly, Plaintiff maintains

that Mr. Leinsing's conclusions that compare his patents with those in the public domain are

unreliable.  *Id.* at 8-9.

In determining whether an expert's opinion is reliable, a court "must assess the reasoning

8

and methodology underlying the expert's opinion…." *United States v. Rodriguez-Felix*, 450

F.3d 1117, 1123 (10th Cir. 2006) (internal citation omitted).  To make this determination, a court

may consider:

> (1) Whether the theory at issue can be and has been tested; (2) whether the theory
> has been subjected to peer review and publication; (3) whether there is a known or
> potential rate of error and whether there are standards controlling the
> methodology's operation; and (4) whether the theory has been accepted in the
> relevant scientific community.

*Id.* (citing *Daubert*, 509 U.S. at 593-94).  A court is not required "to admit opinion evidence

which is connected to existing data only by the *ipse dixit* of the expert."  *Norris v. Baxter*

*Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005).  As a result, a court "may conclude that

there is simply too great an analytical gap between the data and the opinion proffered."  *Id.*

Plaintiff's criticism of Mr. Leinsing's report is more aptly framed as an attack on the

report's conclusions, rather than the methodology he employed.  Indeed, in his report, Mr.

Leinsing sets forth Plaintiff's patent disclosures both in a written description and through

photographs of the designs.  *See e.g.*, (Doc. 350-2) at 7-20.  Next, Mr. Leinsing follows the same

methodology for patent materials that were available in the public domain before Plaintiff

disclosed his designs to Defendants.  *Id.*  Then, Mr. Leinsing compares Plaintiff's disclosures

with the other patent materials.  *See e.g., id.* at 20 (comparing Plaintiff's "suture anchors" to

attached "U.S. Patent Nos. 5,464,407 [and] 5,928,252").  Lastly, Mr. Leinsing concludes that the

component parts of Plaintiff's designs were previously disclosed in the public domain.  *Id.*

(concluding that "each one of these types of anchors … was in the public domain as of the

February 29, 2000 disclosure date").

Mr. Leinsing's report is easy to follow and supported by his citations, design

photographs, written statements, and accompanying exhibits.  Equally, the logic Mr. Leinsing

employed, and his evidence in support, are prominently displayed in the report. As a result, the

Court denies Plaintiff's request to conclude that Mr. Leinsing's report contains unsupported *ipse*

*dixit*. On the contrary, the Court concludes that Mr. Leinsing's report illustrates the "specific

relation between [his] method, the proffered conclusions, and the particular factual

circumstances of the dispute." *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir.

2005). Plaintiff's request for exclusion on this basis is, therefore, denied.

### D. Whether Mr. Leinsing is Qualified to Testify as an Expert

Finally, Plaintiff challenges Mr. Leinsing's qualifications to serve as an expert witness in

this litigation. (Doc. 350) at 9. In support, Plaintiff contends that Mr. Leinsing is "not skilled in

the art of orthopedic surgery" and did not consult "with any orthopedic surgeon or doctor about

any of the devices at issue." *Id.* Moreover, Plaintiff argues Mr. Leinsing is "not a patent

attorney and not an expert in patent application." *Id.* at 10. Lastly, Plaintiff asserts that Mr.

Leinsing is "not an expert in the interpretation of contracts" and, therefore, cannot testify as an

expert on his "understanding of the February 2000 Confidentiality Agreement." *Id.* at 11.

As a preliminary matter, Plaintiff's last contention, challenging Mr. Leinsing's

credentials to offer an opinion on the interpretation of the parties' February 2000 Confidentiality

Agreement, is now moot. Indeed, Defendants agreed that Mr. Leinsing "is not going to offer

opinions regarding the meaning of or his interpretation of the Confidentiality Agreement." (Doc.

363) at 10. Accordingly, the Court shall only address the substance of Plaintiff's remaining two

arguments for asserting that Mr. Leinsing is unqualified.

To qualify as an expert, a witness must possess "such skill, experience or knowledge in

that particular field as to make it appear that his opinion would rest on substantial foundation and

would tend to aid the trier of fact in his search for truth." *Taber v. Allied Waste Systems, Inc.*,

642 Fed. Appx. 801, 807 (10th Cir. 2016) (quoting *LifeWise Master Funding*, 374 F.3d at 928).

An expert "should not be required to satisfy an overly narrow test of his own qualifications."

*Gardner v. General Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (citing Fed. R. Evid. 702

Advisory Committee Note (1972)).   Nonetheless, an expert must "stay[] within the reasonable

confines of his subject area."  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970

(10th Cir. 2001); *see also Taber*, 642 Fed. Appx. at 807 (same).

In this way, an expert may not rely on "general principles and concepts" to be qualified

under *Daubert*.  *Ralston*, 275 F.3d at 970 (internal citation and brackets omitted).  Resultingly,

merely possessing a degree in a particular field or having "some marginal familiarity with

general concepts," may be deemed insufficient to satisfy *Daubert*'s standards for expert

admissibility.  *Id.* at 969 (concluding district court did not err in finding expert unqualified who

"knew little—if anything—about the subject," and had "done no research" on topic); *see also*

*Taber*, 642 Fed. Appx. at 807 (holding that district court did not abuse its discretion in finding

expert unqualified who "conducted an estimated one thousand investigations" in his field but

"could recall working on only one case" similar to that at issue before court).

Here, Plaintiff contends that Mr. Leinsing is unqualified because he is neither an

orthopedic surgeon nor a patent attorney.  *See* (Doc. 350) at 10-11  Even so, Mr. Leinsing is a

recognized mechanical engineer, with experience as the founder and president of a medical

device product corporation.  *See* (Doc. 363-4) at 1.  Notably, Mr. Leinsing has nearly thirty years

of "experience in medical device product development and consulting" and is "a named inventor

on dozens of medical device patents."  (Doc. 363) at 8.  During his thirty years in the field, Mr.

Leinsing has gained experience "with medical device product development … including

consulting and some design work on bone, anchor screws, anchors, drills, and different types of

devices that relate to this case." *Id.* at 9.

The Court, therefore, rejects Plaintiff's contention that Mr. Leinsing is unqualified. In short, as a mechanical engineer with robust experience in patented medical product design, the Court is unpersuaded that Mr. Leinsing must possess the title of "doctor" or "attorney" to opine on the contested products in this case. Instead, the Federal Rules of Evidence do not contemplate such a narrow set of credentials for an expert's qualifications. *See Gardner*, 507 F.2d at 528 (cautioning courts not to require "overly narrow test" of expert qualifications). Resultingly, Plaintiff's argument on this point is denied.

IV.    *Conclusion*

In sum, Plaintiff's Motion (Doc. 350) is denied in part and granted in part. Particularly, the Court grants Plaintiff's request to prohibit Mr. Leinsing from testifying on his interpretation of the parties' February 2000 Confidentiality Agreement. Moreover, the Court denies Plaintiff's request to exclude Mr. Leinsing's opinions on the bases that he is unqualified, that his opinions are unsupported *ipse dixit*, and that his testimony otherwise improperly invades the role of the jury.

IT IS ORDERED.

_____
UNITED STATES DISTRICT JUDGE