IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WAYNE KENNETH AUGÉ, II, M.D.,
*Individually and as Trustee on Behalf of
Covalent Global Trust*,

      Plaintiff,

vs.                                                                    CV No. 14-1089 KG/SMV

STRYKER CORPORATION, and
HOWMEDICA OSTEONICS CORP.,

      Defendants.

<u>ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION IN LIMINE</u>

      This matter is before the Court on Defendants' Motion in Limine and Brief in Support

(Motion) (Doc. 352) and Plaintiff's Opposition to Stryker's Motion in Limine (Response) (Doc.

362). This is the last of five pretrial motions pending resolution before the Court. *See* (Docs.

349, 350, 351, 377). The Motion is now fully and timely briefed. *See* (Docs. 352, 362). After

review of the parties' briefing and the relevant law, the Court grants in part and denies in part

Defendants' Motion (Doc. 352).

     *I.*     *Background*

      At present, trial is scheduled to commence on January 24, 2022, with a pretrial

conference set for August 9, 2021. *See* (Doc. 395). Recently, the Court refined the permissible

evidence and claims the parties may present at trial. *See* (Docs. 397, 398, 399, 400). In pertinent

part, the Court opined that pursuant to New Mexico's conflicts of law analysis, Plaintiff's case is

governed by New Jersey law. *See* (Doc. 400). Consistent with this conclusion, the Court will assess Defendants' current substantive contentions under New Jersey law.

Four of Plaintiff's claims remain viable for resolution before the jury. Specifically, Plaintiff alleges: (1) breach of the parties' 2009 Royalty Agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) quantum meruit. *See* (Doc. 207). Notably, under New Mexico law, a plaintiff cannot recover under theories of both unjust enrichment and quantum meruit. *See* (Doc. 375-1) at 27 (citing *inter alia Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 21, 793 P.2d 855)). However, under New Jersey law, the two causes of action permit distinct avenues for relief. *Compare EnviroFinance Group, LLC v. Environmental Barrier Co., LLC*, 440 N.J. Super. 325, 349, 113 A.2d 775 (2015) (listing elements to recover under "equitable doctrine of quantum meruit") *with Lester Slaby, LLC v. Northeast Construction, LLC*, 2021 WL 1387907, at *3 (N.J. Super.) (reciting elements of unjust enrichment). Consequently, under New Jersey law, Plaintiff shall proceed to trial with each of his four claims intact, including separate causes of action for unjust enrichment and quantum meruit. *See Lester Slaby, LLC*, 2021 WL 1387907, at *3 (explaining that unjust enrichment is "separate and distinct quasi-contract theory" from quantum meruit).

II.     *Discussion*

In their present Motion, Defendants request a pretrial ruling on seven outstanding issues pending resolution before the Court. *See* (Doc. 352). Specifically, Defendants request that the Court exclude evidence and testimony related to: (1) punitive damages; (2) parol or extrinsic evidence regarding the parties' 2009 Royalty Agreement; (3) their wealth, financial strength, profits, and corporate size; (4) opinions from Plaintiff's expert, Dr. Wayne Burkhead; (5) the parties' unrelated disputes and resolutions; (6) Plaintiff's claims of other unpaid royalty

2

agreements; and (7) Plaintiff's retirement status and illness. *Id.* at 1-18. Plaintiff opposes the entirety of Defendants' Motion. *See* (Doc. 362). The Court will address each of Defendants' requests in turn.

### A.    *Punitive Damages*

Defendants first request that the Court exclude evidence related to Plaintiff's claim for punitive damages because he "failed to disclose the bases for his demand during discovery." (Doc. 352) at 11. In addition, Defendants argue that Plaintiff's failure to plead or timely disclose his request for punitive damages will result in unfair prejudice in their defense of this case. *Id.* In his Response, Plaintiff contends that Defendants "should have raised that issue with the Court years ago." (Doc. 362) at 17. Moreover, Plaintiff explains that a pretrial evidentiary motion is not the proper avenue to resolve Defendants' request for exclusion of evidence related to punitive damages. *Id.* at 17-18. For these reasons, Plaintiff asks that the Court reject Defendants' argument.

The Court agrees with Plaintiff that an evidentiary pretrial motion is not the appropriate vehicle to assert these contentions. *See id.* at 17 (citing (Doc. 332)). However, in the interest of readying this case for trial and narrowing the pertinent questions for presentation before the jury, the Court declines to deny Defendants' request because of their elected avenue of relief. Instead, the Court notes the labored history of the parties' punitive damages dispute, and the necessity of ascertaining the scope of the parties' contentions before trial commences. *See, e.g.*, (Doc. 377) (Motion to Bifurcate Punitive Damages); (Doc. 375-2) (Jury instruction coversheet listing dispute on damages instructions); (Doc. 383) at 1-4 (explaining parties' dispute to file amended pretrial order because of punitive damages demand). In short, the parties' dispute about whether Plaintiff can recover punitive damages requires resolution to effectively prepare for trial and,

resultingly, the interests of judicial efficiency and economy empower this Court to consider the issue on the merits. *See* D.N.M.LR-Civ. 1.7 (explaining "rules may be waived by a Judge to avoid injustice").

Whether Plaintiff timely disclosed his claim for punitive damages is insignificant, however, if such damages are unrecoverable. More specifically, under New Jersey law, "the concept of punitive damages has not been permitted in litigation involving breach of a commercial contract." *Sandler v. Lawn-a-Mat Chem. & Equip. Corp.*, 141 N.J. Super. 437, 449, 358 A.2d 805 (1976) (collecting cases); *see also Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 369-70, 544 A.2d 857 (1988) (explaining that "[w]ith rare exception, punitive damages are not available in an action for a breach of contract"). In this way, New Jersey courts agree that "punitive damages are unavailable generally for breach of contract." *Ali v. D.O.C.*, 2008 WL 5111274, at *13 (D.N.J.) (citing *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002)).

Most notably, New Jersey follows the Restatement (Second) of Contracts, which advises that "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." Restatement (Second) of Contracts § 355 (1981) (June 2021 update). In support, New Jersey courts recognize that, pursuant to the Punitive Damages Act, "punitive damages 'are awarded as punishment or deterrence for particularly egregious conduct' and 'must be reserved for special circumstances.'" *Giallombardo v. Kyriak*, 2021 WL 1847179, at *4 (N.J. Super.) (internal citation omitted). Therefore, requiring a tortious act to support a finding of punitive damages conforms with the New Jersey legislature's intent of punishing "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." *Id.* (internal quotations and citations omitted).

Consequently, the admissibility of evidence related to Plaintiff's claim for punitive damages hinges on whether his causes of action are based in contract, or if the alleged "breach is also a tort for which punitive damages are recoverable." Restatement (Second) of Contracts § 355 (1981) (June 2021 update); cf. *Sandler*, 141 N.J. Super. at 451 (explaining that "right to punitive damages [does not] turn simply upon the form of action involved, namely, whether it is designated as a tort rather than a contract" and listing exceptions). At present, Plaintiff's case consists of four claims for trial before the jury:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) quantum meruit. Each of these claims are based in contract and, as a result, punitive damages are not recoverable.

Particularly, both Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing require, as their first element, the existence of a valid contract between the parties. *See* (Doc. 375-1) at 32 (citing New Jersey Model Civil Jury Charges § 4.10A); *id.* at 37-39 (citing New Jersey Model Civil Jury Charges § 4.10J). Thus, it is axiomatic that both causes of action sound in contract rather than tort. *See e.g.*, *Sandler*, 141 N.J. Super. at 451 (concluding that "plaintiffs' grievance is founded upon [] the breach of contract between the parties—a contract which creates no special relationship or duty beyond that arising out of any commercial transaction [and] [a]s such, punitive damages are not recoverable").

Next, Plaintiff's cause of action for unjust enrichment is based in "a claim of quasi-contractual liability." *See Goldsmith v. Camden Cnty Surrogate's Off.*, 408 N.J. Super. 376, 382, 975 A.2d 459 (2009). In this way, "unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Id.* (collecting cases). Similarly, New Jersey law describes quantum meruit as a contract "implied by law," a "quasi or constructive" contract, and "a class of obligations which are imposed or created by law

5

without regard to the assent of the party bound." *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108, 219 A.2d 332 (1966); *see also Kopin v. Orange Products, Inc.*, 297 N.J. Super. 353, 367, 688 A.2d 130 (1997) (explaining that "[q]uantum meruit is a form of quasi-contract"); *Art Resources, LLC v. Hartz Carpet II Lted Partner.*, 2018 WL 2924359, at *5 (N.J. Super.) (same). Indeed, New Jersey law recognizes that claims for quantum meruit are "clothed with the semblance of contract for the purpose of the remedy...." *Callano*, 91 N.J. Super. at 108. Thus, Plaintiff's claims for quantum meruit and unjust enrichment are likewise grounded in the principles of contract law.

In summary, each of Plaintiff's four claims are founded upon the parties' breach of contract. As a result, punitive damages are not recoverable under New Jersey law absent a special exception. *See e.g., Gilliam v. Liberty Mut. Fire Ins. Co.*, 2014 WL 10191547, at *3 (explaining that "absent a special relationship between the parties or an aggravated set of circumstances, the general rule in New Jersey prohibits the award of punitive damages in contract actions"). For this reason, the Court grants Defendants' request to exclude evidence related to Plaintiff's claim for punitive damages. Plaintiff is, therefore, prohibited from recovering punitive damages on his claims for relief.[1]

### B.   Parol or Extrinsic Evidence

Next, Defendants request that the Court exclude any extrinsic evidence related to the parties' understanding of the 2009 Royalty Agreement. (Doc. 352) at 6. Defendants' argument is two-fold. First, Defendants assert that the 2009 Agreement is "admittedly unambiguous" and,

---

1. This precise issue—the legal grounds for punitive damages—was not fully developed in the parties' current briefs. However, the parties have litigated this question *ad nauseum* in their pretrial pleadings, such that the Court is fully advised of the parties' premises and positions. At this juncture, days before the scheduled pretrial conference, the legal validity of Plaintiff's claims for relief plainly require resolution.

therefore, antecedent and contemporaneous evidence is inadmissible to prove the parties' intent under the parol evidence rule. *See id.* Second, Defendants allege that admission of the parties' post-2009 discussions serves as an impermissible attempt to "modify or amend" the parties' agreement, or, alternatively, that they constitute "settlement offers" barring admission under Federal Rule of Evidence 408. *Id.* In contrast, Plaintiff asserts that "the Court already held that [Defendants] had not established that the 2009 Royalty Agreement unambiguously means that [Defendants] only need[] to pay royalties on the TwinLoop Flex." (Doc. 362) at 15. As a result, Plaintiff urges the Court to deny Defendants' request to exclude extrinsic evidence. *Id.* at 15-16.

> i.    *Admissibility of Antecedent and Contemporaneous Extrinsic Evidence*

The parol evidence rule is a rule of exclusion. *See e.g.*, *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 256, 791 A.2d 1068 (2002) (explaining that "parol evidence rule prohibits the introduction of oral promises which tend to alter or vary an integrated written instrument").[2] In a broad sense, the rule was drafted to bar evidence preceding a parties' written agreement. *See id.* Stated differently, the rule applies to prohibit the admission of evidence that would alter the terms of a subsequent written agreement. *Id.* (opining that "general rule is clear that a parol agreement which is in terms contradictory of the express words of a contemporaneous or subsequent written contract … [is] inadmissible").

By its very nature, the parol evidence rule only applies to curtail the admission of antecedent and contemporaneous evidence that varies or contradicts a subsequent written

---

2. Notably, "[t]he admissibility of evidence in diversity cases in federal court is generally governed by federal law." *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006). However, while the parol evidence rule "will affect the admissibility of some evidence, [it] in reality serve[s] substantive state policies regulating private transactions." *Id.* Thus, the Court applies New Jersey state substantive law to evaluate Defendants' contentions regarding application of the parol evidence rule.

contract.  *See Atlantic Northern Airlines v. Schwimmer*, 12 N.J. 293, 302, 96 A.2d 652 (1953) (explaining that "parol evidence rule purports to exclude testimony only when it is offered for the purpose of varying or contradicting terms of an integrated contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms").  Professor Marvin Chirelstein described the rule as embodying the logic that "since the completion and execution of a written contract is typically the concluding point in the bargaining process, one's ordinary expectation is that the document itself will contain all the conscious and important elements of the deal."  Marvin A. Chirelstein, *Concepts & Case Analysis in the Law of Contracts*, at 97 (5th ed. 2006).

The Restatement (Second) of Contracts memorializes this understanding.  *See* Restatement (Second) of Contracts § 213 (1981) (June 2021 update).  In particular, the Restatement explains that "a binding agreement discharges prior agreements."  *Id.* at § 213(A).  The comment section further clarifies that the rule "renders inoperative prior written agreements as well as prior oral agreements."  *See id.* § 213 cmt. a.

Since its inception, the rule has been relaxed in most jurisdictions, including in New Jersey.  *See Conway v. 287 Corp. Center Ass.*, 187 N.J. 259, 268-69, 901 A.2d 341 (2006) (distinguishing "restrictive view" under Restatement (First) of Contracts and "more expansive view" under Restatement (Second) of Contracts).  Under this expansive approach, states allow the liberal admission of antecedent and contemporaneous evidence to ascertain the truth of the parties' intent.  *Id.* at 269.  In a minority of states, however, the parol evidence rule is still strictly applied, permitting the admission of extrinsic evidence only if the contract is wholly ambiguous.  *Compare King v. Bay*, 867 So. 2d 1224, 1226 (Fla. App. 2004) (explaining that "law generally presumes that the parties, by making a writing on the subject, intended the writing to be the sole

expositor of their agreement" and, thus, "party seeking to introduce parol evidence must establish that the document is ambiguous and in need of interpretation") *and Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995) (holding that "it would be improper for this court to rewrite the transaction by looking to evidence outside the four corners of the contract to determine the intent of the parties") *with id.* at 116 (Lohr, J., dissenting) (explaining that "four corners approach to contract interpretation is in decline") *and Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 390, 682 P.2d 388 (1984) (rejecting "traditional view of the law of contracts" because of "harsh or illogical results").

Despite New Jersey's adoption of the expansive approach, the admission of parol evidence is unnecessary when the terms of the contract are unambiguous. *See Tomeo v. Edleston*, 2020 WL 1518020, at *4 (N.J. Super.) (interpreting *Conway* for principle that "consideration of parol evidence [is] only [permitted] where contractual terms are ambiguous"); *Capparelli v. Lopatin*, 459 N.J. Super. 584, 604, 212 A.3d 979 (2019) (opining that "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result" (quoting *Quinn v. Quinn*, 225 N.J. 34, 45, 137 A.3d 423 (2016)); *Teleki v. Talk Marketing Enterprises, Inc.*, 2012 WL 2283044, at *7 (N.J. Super.) (explaining that "where, as here, the terms of a contract … are clear and unambiguous, resort to parol evidence is improper").

Indeed, if the contract's terms are plain from the face of the document, then parol evidence will only serve to "modify or alter" the terms of the agreement, a practice which is expressly prohibited. *Capparelli*, 459 N.J. Super. at 604 (explaining that "extrinsic evidence should never be permitted to modify or curtail the terms of an agreement"). Nevertheless, "[w]hen a contract is ambiguous in a material respect, the parties must be given the opportunity

9

to illuminate the contract's meaning through the submission of extrinsic evidence." *Id.* (citing *Conway*, 187 N.J. at 268-70, 901 A.2d 341 (2006)). Ambiguity exists if the contract's terms are "susceptible to at least two reasonable alternative interpretations." *Lopatin*, 459 N.J. Super. at 604.

Here, the contract's terms are sufficiently ambiguous to permit the admissibility of antecedent and contemporaneous extrinsic evidence. Specifically, in its prior Memorandum Opinion and Order, this Court explained that Defendants purchased Plaintiff's "flexible drill technology" through the parties' execution of the 2009 Royalty Agreement. (Doc. 207) at 12. Resultingly, the Court concluded that the 2009 Royalty Agreement superseded the parties' earlier Confidentiality Agreements in many material respects. *Id.* at 9. After reaching this conclusion, the Court entered summary judgment in Defendants' favor on Plaintiff's claim for breach of the parties' Confidentiality Agreements. *Id.* at 9-10.

However, the Court declined to enter summary judgment in Defendants' favor on Plaintiff's claim for breach of the 2009 Royalty Agreement. *Id.* at 10. As a result, the Court left outstanding the question of whether the 2009 Royalty Agreement also directed Defendants to pay royalties on their sale of any subsequent "Products" it developed based on Plaintiff's flexible drill system. *See id.* at 9-10. More specifically, this question requires resolution of the underlying factual issue of whether the Iconix, VersiTomic, and MicroFX constitute "Products" that require payments under the Royalty Agreement. *See id.* at 12 (explaining that Defendants failed to demonstrate that "Royalty Agreement [also] foreclose[d] royalties on other products incorporating Plaintiff's flexible drill technology").

The Court's prior Opinion illustrates that antecedent and contemporaneous extrinsic evidence is necessary for the jury to ascertain what products the 2009 Royalty Agreement was

10

intended to cover and, more specifically, whether the Iconix, VersiTomic, and MicroFX constitute "Products" within the contract's contemplation. *See Delareto v. Totaro*, 2010 WL 3834365, at *3 (N.J. Super.) (explaining that under New Jersey law "interpretation or construction of a written contract is usually a legal question for the court, suitable for disposition on summary judgment, unless there is ambiguity or the need for parol evidence in aid of interpretation") (internal quotations, citations, and brackets omitted).  Simply stated, the answer to this question is not clear from the face of the 2009 Royalty Agreement.  Therefore, antecedent and contemporaneous extrinsic evidence is necessary to fairly ascertain the meaning of the language in the contract. *See Conway*, 187 N.J. at 270 (explaining that "[e]xtrinsic evidence may be used to uncover the true meaning of contractual terms"); *see also 539 Absecon Bldv., LLC v. Shan Enterprises Ltd. Partnership*, 2009 WL 775042, at *27 (N.J. Super.) (explaining that "[i]t is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract" (quoting *Conway*, 187 N.J. at 270))

In arguing to the contrary, Defendants focus on cases involving unambiguous contracts, where the admission of extrinsic evidence was unnecessary because the contract was clear on its face. *See 539 Absecon Bldv., LLC*, 2009 WL 775042, at *27 (N.J. Super.) (explaining that "terms of the notes themselves were sufficiently clear on their face and free from ambiguity"); *Delareto*, 2010 WL 3834365, at *3 (finding that "plaintiff does not claim that an ambiguity exists in the operating agreement" and, therefore, extrinsic evidence inadmissible).  Here, the contract's intended meaning for the term "Products" is unclear, as declared by this Court's prior Opinion and, resultingly, extrinsic evidence is admissible to ascertain the parties' intent. *See* (Doc. 207) (denying summary judgment for breach of 2009 Royalty Agreement).

11

In sum, the parol evidence rule does not apply to prohibit admission of antecedent and contemporaneous evidence. Rather, the contract's ambiguity, and New Jersey's expansive view of the parol evidence rule, favor the admission of this evidence. As a result, antecedent and contemporaneous evidence is admissible insofar as it does not alter the terms of the written agreement.

ii.     *Admissibility of Extrinsic Evidence that Postdates the Parties' 2009 Royalty Agreement*

After concluding that the contract is ambiguous and, therefore, antecedent and contemporaneous evidence is admissible to illustrate the contract's intent, the Court next examines whether evidence that postdates the parties' 2009 Royalty Agreement is likewise admissible. Evidence that postdates execution of the contract is outside the scope of the parol evidence rule—meaning, it is not generally excluded under this rule. Instead, admissibility of this evidence hinges on rules of basic contract interpretation. *See Regan v. Regan*, 246 N.J. Super. 473, 478, 587 A.2d 1330 (Ch. Div. 1990) (explaining that "conduct of the parties after execution of the agreement may be relevant in determining its meaning" (citing *inter alia Journeymen Barbers, etc., Local 687 v. Pollino*, 22 N.J. 389, 395 (1956)).

One such rule is that, when interpreting ambiguous contracts, the Court's objective is to "determine the intent of the parties." *Kieffer v. Best Buy*, 205 N.J. 213, 223, 14 A.3d 737 (2011); *see also Regan*, 246 N.J. Super. at 478 (opining that "one basic rule of interpretation requires the court to evaluate the common intention of the parties to a contract"). In this way, "the judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." *Kieffer*, 205 N.J. at 223. Thus, the parties cannot attempt to introduce evidence that seeks to rewrite the terms of the contract after its execution. Certainly, this principle applies equally to both extrinsic evidence prior to the

12

execution of the contract and to that from after execution of the agreement.

In arguing for exclusion, Defendants contend that Plaintiff's evidence from after execution of the parties' 2009 Royalty Agreement serves to retroactively "modify or amend the contract terms," rather than illustrate the parties' intent. *See* (Doc. 352) at 9. The Court agrees that, generally, a court should not attempt to modify a "finely drawn and precise contract entered into by experienced business people." *See Associated Business Brokers, Inc. v. Calderone*, 2010 WL 5420161, at *4 (N.J. Super.). Similarly, the Court notes the minute distinction between evidence that illustrates the "intent and meaning" of the parties' agreement and that which attempts to retroactively modify or amend the contract's terms. *See Conway*, 187 N.J. at 269 (clarifying that language explaining "intent and meaning" of contract is permissible).

The case Defendants cite is illustrative of this distinction. In *Calderone*, the New Jersey Superior Court explained that "the use by the trial court of parol evidence was appropriate to plumb the shared intention of the parties to the [] Agreement." 2010 WL 5420161, at *3. However, the Court found that the trial judge "misapplied the parol evidence rule" when he opined that "the [] Agreement had evolved," "the [] Agreement was not the last word as to the deal," and "the terms of the [] Agreement [were] reasonably altered by the course of dealing between the parties." *Id.* In rendering these latter deductions, the trial judge utilized extrinsic evidence to modify and manipulate the parties' agreement—rather than merely analyzing the evidence to ascertain the intent of the contract's language. *Id.* at *3-4. Consistent with the *Calderone* Court's directive, this Court will permit the post-2009 evidence for the narrow purpose of demonstrating the contract's intent, rather than enabling it to retroactively modify the contract's terms.

Despite the general admissibility of extrinsic evidence that postdates the parties' 2009

Royalty Agreement under New Jersey substantive law, however, the Federal Rules of Evidence

caution against the evidence's wholesale admission.[3]  First, the Court notes that any relevancy of

the parties' post-2009 communications is outweighed by the threat of undue delay, wasting time,

and needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.  Indeed, approximately

five years elapsed between the parties' execution of the 2009 Royalty Agreement and the

initiation of this lawsuit.  At this juncture, the Court is strained to accept that all post-2009

communications are relevant to assist the parties in presenting their case.

The Court's conclusion to exclude this evidence is further supported by Rule 408.

Pursuant to Rule 408(a)(1)-(2), evidence of a parties' conduct or statement "made during

compromise negotiations about the claim" cannot be offered "to prove or disprove the validity or

amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."

The pivotal consideration under Rule 408 is when the alleged compromises were proffered, and

under what circumstances.  *See E.E.O.C. v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1544 (10th

Cir. 1991) (stating "crucial inquiry" under Rule 408 involves when compromise negotiations

occurred); *see also Oberhamer v. Deep Rock Water Co.*, 2009 WL 1193737, at *5 (D. Colo.)

(explaining that "offers to compromise before a legal controversy arises are distinguishable from

those made after"); Fed. R. Evid. 408 Advisory Comm. Notes (explaining "controversy over

whether a given statement falls within or without the protected area").  Moreover, "on balance …

the better practice is to exclude evidence of compromises or compromise offers whenever the

---

3.  As a "procedural" rule in the conflicts of law analysis, the Court applies the forum state's evidentiary rules—*i.e.,* the Federal Rules of Evidence.  *See Sims*, 469 F.3d at 880 (explaining that admissibility of evidence in diversity cases is generally governed by federal law, unless evidentiary question is "so dependent on a state substantive policy") (internal citation omitted).

issue of admissibility is doubtful." *Southwest Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F.Supp. 2d 1253, 1258 (D. Colo. 2003) (citing *Bradbury v. Phillips Petroleum Co.*, 815 F.3d 1356, 1364 (10th Cir. 1987)). This preference in favor of exclusion supports Rule 408's intent to promote "the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408 Advisory Comm. Notes.

After review, the Court determines that exclusion of the parties' post-2009 communications better effectuates the intent of Rule 408. Notwithstanding this conclusion, either party may petition the Court to admit specific evidence postdating the parties' 2009 Royalty Agreement. Specifically, although the Court will exclude this evidence as a general matter, either party may show, through an appropriate proffer, that particular evidence falls outside the scope of Rule 408 and conforms with the substantive considerations of New Jersey law. At this juncture, however, the Court will not permit this evidence absent particularized exceptions to this ruling.

In summary, the Court denies Defendants' request to exclude antecedent and contemporaneous parol evidence to assist the jury in ascertaining the parties' intent under the contract. In reaching this conclusion, the Court agrees that the 2009 Royalty Agreement is ambiguous and, thus, the admission of parol evidence is permissible under New Jersey law. Moreover, evidence that postdates the execution of the contract is not contemplated by the parol evidence rule and, therefore, is not *per se* inadmissible. Nevertheless, consistent with general contract principles, the Court will only permit such evidence that does not attempt to modify or alter the parties' agreement. If the parties can isolate relevant post-2009 comments or exchanges that conform with both New Jersey law and the Federal Rules, the Court will consider those requests in turn. Specifically, any request for admission must illustrate that the evidence does

not seek to retroactively modify the parties' contract and is not within the ambit of Rule 408.

Thus, Defendants' request on this point is granted in part and denied in part.

### C.    Defendants' Wealth, Financial Strength, Revenue, and Size

Next, Defendants request that the Court exclude evidence related to its wealth, financial

strength, size, and revenue generated from its sale of the Iconix, VersiTomic, and MicroFX

products. (Doc. 352) at 1.  In support of its requests for exclusion, Defendants argue this

information is irrelevant under Federal Rule of Evidence 401 and unfairly prejudicial under Rule

403.  *Id.*  Furthermore, Defendants contend that Plaintiff "did not plead or timely disclose" his

theory for "disgorgement of profits" at trial.  *Id.* at 1-6.  Therefore, Defendants assert that

evidence of its product revenue should also be precluded on this basis.  *Id.*

Pursuant to Federal Rule of Evidence 401, evidence is relevant if:  "(a) it has any

tendency to make a fact more or less probable than it would be without the evidence;" and "(b)

the fact is of consequence in determining the action."  "Rule 401 is a liberal standard," and

'[e]xcept for certain well-defined instances, all relevant evidence is admissible."  *United States v.

Leonard*, 439 F.3d 648, 651 (10th Cir. 2006).  Even if evidence is relevant, it may be excluded

"if its probative value is substantially outweighed by a danger of ... unfair prejudice."  Fed. R.

Evid. 403.  Evidence is "unfairly prejudicial" if it has "an undue tendency to suggest decision on

an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403

Advisory Comm. Notes.

The Court agrees with Defendants' reasoning to exclude evidence of its financial strength

and wealth.  Most importantly, after concluding that punitive damages are not recoverable under

New Jersey law, evidence of Defendants' wealth and financial strength are irrelevant for the

jury's consideration under Rule 401.  In addition, Plaintiff does not proffer any probative value

that can be deduced from this evidence to outweigh the risk of unduly prejudicing Defendants or inflaming the jury.  Instead, Plaintiff does not indicate that he intends to proffer this evidence at trial.  *See* (Doc. 362) at 11-13.  As a result, the Court grants Defendants' request to exclude evidence related to its wealth and financial strength from the jury's purview.

Next, the Court considers whether evidence of Defendants' product revenue is relevant. Under Plaintiff's theory of quantum meruit, he must prove "an expectation of compensation" for his work and "the reasonable value of the services."  *See Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 172 N.J. 60, 69, 796 A.2d 238 (2002); *see also Lester Slaby, LLC.*, 2021 WL 1387907, at *3 (explaining theory of quantum meruit "calls for payment of 'just and reasonable compensation'").  In addition, to prove his claim of unjust enrichment, Plaintiff must demonstrate that Defendants were "enriched," that they "received a benefit," and "retention of the benefit without payment therefor would be unjust."  *Lester Slaby, LLC.*, 2021 WL 1387907, at *3.  Two of Plaintiff's four claims, therefore, require evidence of the "benefits" and "compensation" that Defendants received from its sale of the disputed products.

Consequently, Plaintiff may utilize evidence of Defendants' profits to calculate his entitlement to royalty payments.  In other words, while Defendants' profits are not *per se* recoverable, the overall profit figure is relevant to calculate Plaintiff's entitlement to damages. Moreover, the probative value of allowing Plaintiff to present evidence in support of his claim for damages substantially outweighs any threat of unfair prejudice under Rule 403.  Therefore, the Court rejects Defendants' request for exclusion of its product revenue under Rules 401 and 403.

The Court reaches this conclusion after considering Defendants' assertion that Plaintiff failed to properly plead his claims requiring proof of their profits.  *See* (Doc. 352) at 2-6.  In

17

rejecting this contention, the Court notes that it set forth the claims that would proceed to trial in May 2018, nearly four years before the parties' scheduled trial date. *See* (Doc. 207). Therefore, the Court is unpersuaded that Defendants were not adequately apprised that Plaintiff's claims would include some assessment of the value of their product revenue before the jury. To the contrary, Defendants received ample notice of the claims that the jury would hear, and the elements Plaintiff would seek to establish to prove his case at trial.

Lastly, the Court rejects Defendants' contention that evidence of their corporate size is irrelevant under Rule 401. *See* (Doc. 352) at 1-6. On the contrary, Plaintiff asserts that he intends to use evidence of Defendants' size—specifically, Defendants' status as large corporations—to illustrate their business sophistication and financial prowess. *See* (Doc. 362) at 13. In part, Plaintiff alleges that this evidence demonstrates the absence of mistake, and that Defendants knew the scope of their duties under the parties' 2009 Royalty Agreement. *Id.* The Court agrees that this evidence is relevant to demonstrate whether Defendants preformed their contractual obligations in good faith, an essential component of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

The Court is likewise unpersuaded that this evidence will prejudice Defendants under Rule 403. Indeed, Defendants have not illustrated how evidence of their corporate size or stature would mislead the jury, or result in a verdict formed from an improper basis. However, such evidence cannot exceed the scope of what is necessary to illustrate Plaintiff's point. The Court will not permit, for example, a full-fledged trial on Defendants' business venture. Instead, any evidence must be appropriately tailored to fit the relevancy considerations contemplated under Rule 401.

In sum, the Court grants in part and denies in part Defendants' request to exclude evidence of its wealth, financial strength, profits, and size.  Specifically, evidence of Defendants' wealth and financial strength are excluded under Rules 401 and 403.  Conversely, evidence of Defendants' profits from the sale of the disputed products and their corporate size are relevant for the jury's consideration.  Notwithstanding this conclusion, Plaintiff must confine his proposed testimony and evidence to fit within the contours of what is necessary to prove his claims at trial.  The Court will not permit the introduction of this evidence for an improper purpose.

### D.      Dr. Wayne Burkhead's Opinions

Next, Defendants request that the Court exclude opinion evidence from Plaintiff's expert, Dr. Wayne Burkhead.  (Doc. 352) at 13.  In their Motion, Defendants explain that Dr. Burkhead compares the "technical operation of the Accused Products" to Plaintiff's "original sketches" to reach his conclusions.  *Id.*  This method, Defendants contend, is unreliable and, therefore, Dr. Burkhead's conclusion that Plaintiff was the first to "imagine[] the Accused Products at-issue in this case" should be excluded.  *Id.*  On the same basis, Defendants request that the Court exclude any similar lay or expert opinions that Plaintiff intends to proffer through the testimony of other witnesses.  *Id.* at 14.

In determining whether an expert's opinion is reliable, a court "must assess the reasoning and methodology underlying the expert's opinion...."  *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (internal citation omitted).  To make this determination, a court may consider:

> (1) Whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the

relevant scientific community.

*Id.* (citing *Daubert*, 509 U.S. at 593-94).  Nonetheless, this list "is neither definitive nor

exhaustive" and "a trial judge has wide discretion both in deciding how to assess an expert's

reliability and in making a determination of that reliability." *See Bitler v. A.O. Smith Corp.*, 400

F.3d 1227, 1233 (10th Cir. 2005) (citing *inter alia Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S.

137, 150 (1999)).

In pertinent part, Defendants claim that Dr. Burkhead's report is unreliable "because the

patent figures vary from the actual products at-issue [and, thus,] any reliance on patent figures or

specifications is likely to confuse the jury." (Doc. 352) at 14.  Basically, Defendants assert that

the distinction between the patent designs and the actual products in dispute are too dissimilar to

form a reliable basis in support of Dr. Burkhead's expert opinion. *Id.*  The Court disagrees with

this characterization of Dr. Burkhead's report.

Principally, Dr. Burkhead explains that he was hired to "opine as to whether or not

[Defendants'] subsequent design modifications to [Plaintiff's] design submissions … represent

improvements upon the proprietary information disclosed by [Plaintiff]." (Doc. 362-28) at 3.  In

reaching his conclusions, Dr. Burkhead explains that he utilized his "experience as an actively

practicing and consulting orthopedic surgeon, [] experience testifying in one or more cases

involving surgical instrumentation, [and] the evidence available." *Id.* at 4.  Moreover, while he

compares the pertinent patent sketches, Dr. Burkhead also analyzes the final products that

Defendants sold, and the original design ideas that Plaintiff disclosed. *Id.*  Thus, Dr. Burkhead's

report relies on more than just the patent design drawings to support his conclusions.

In short, the Court rejects Defendants' assertion that Dr. Burkhead's opinions are

unreliable because they cite the parties' initial patent designs.  While Dr. Burkhead offers this

20

evidence to support his conclusion, he also analyzes other pertinent data to support his opinion. Consequently, the Court concludes that Dr. Burkhead's reasoning and methodology, as delineated in his report, are sufficiently reliable to satisfy the evidentiary thresholds for admission. Therefore, the Court declines to preclude Dr. Burkhead from proffering expert testimony at trial.

In addition, the Court denies Defendants' broader request to exclude all evidence related to the parties' original patent designs from introduction at trial. At a minimum, these illustrations are relevant to assist the jury in understanding the nature and origin of the parties' dispute. It is likely, for example, that the jurors will be unfamiliar with orthopedic invention or, more specifically, flexible drill technology. As a result, the patent design drawings aid in illustrating the basic tenets of the parties' disputed technology and detail the relevant underpinnings of the products. For these reasons, the Court denies Defendants' request for exclusion on this ground.

E.  *Unrelated Royalty Payments & Disputes*

Defendants next argue that evidence of prior royalty payments related to the sale of the TwinLoop FLEX are irrelevant and should be excluded from the jury's consideration. (Doc. 352) at 16-17. In addition, Defendants assert that they paid the TwinLoop FLEX royalty payments as an offer of compromise under Rule 408, because "the amount of resources required to investigate and confirm [Plaintiff's] position vastly outweighed the amount he claimed he was owed." *Id.* at 17. On the other hand, Plaintiff asserts that Defendants' payments for the TwinLoop FLEX are an important piece "of the parties' relationship," and relevant to illustrate the shared intent of the 2009 Royalty Agreement. (Doc. 362) at 21.

The Court agrees that the TwinLoop FLEX royalty payments are a subsidiary issue, not directly relevant to the jury's contemplation.  In addition, the rationale supporting Defendants' decision to make these payments is plainly outside the purview of the jury's consideration. Instead, the relevant question before the jury is whether the 2009 Royalty Agreement *also* (in addition to the TwinLoop FLEX or notwithstanding this clause in the contract) required Defendants to pay Plaintiff royalties on the other "Products"—*i.e.*, the Iconix, VersiTomic, and MicroFX.

While the TwinLoop FLEX and Defendants' related payments are not squarely before the jury, it would be unduly burdensome and a waste of time to scrub the record of any mention of these products.  In addition, this evidence is sufficiently relevant and probative to explain the proper scope of the parties' prior business relationship.  Therefore, at this juncture, a blanket prohibition on mention of the TwinLoop FLEX would unduly restrict the parties in presenting their case before the jury. As a result, the Court concludes that excluding this evidence would result in unfair prejudice to Plaintiff under Rule 403.

Relatedly, Defendants request that the Court exclude all evidence related to the "curved labrum set." (Doc. 352) at 15-16.  The curved labrum set is, in its most basic form, a prior rendition of the TwinLoop FLEX—a model that Defendants developed but never manufactured because of cost concerns.  *See* (Doc. 362) at 19.  Defendants assert that, like the TwinLoop FLEX, the curved labrum set is merely evidence of other prior agreements between the parties that does not bear on Plaintiff's current claims for relief.  (Doc. 352) at 16.  Defendants also maintain that its prior payments to Plaintiff for use of the curved labrum set constitute offers of settlement under Rule 408.  *Id.*

The parties' prior discussions regarding the curved labrum set harbors many of the same logistical challenges as that presented from the TwinLoop FLEX.  Indeed, while not directly underlying the present question before the jury, this evidence helps illustrate the parties' prior business dealings and how they communicated to negotiate agreements in their business relationship.  In weighing these considerations, the Court declines to enter a prohibition against mention of the curved labrum set at trial, recognizing this evidence may become relevant to assist the parties with trial strategy and explaining the scope of the parties' business relationship. However, like all evidence the parties seek to introduce, it must be appropriately tailored to fit the facts and circumstances relevant to the jury's consideration.

In addition, Plaintiff may not proffer the numerical figure that Defendants' previously paid, to protect the integrity of their prior offers under Rule 408.  Indeed, any numerical figure related to either the curved labrum set or the TwinLoop FLEX is irrelevant and unfairly prejudicial to Defendants.  Thus, while the Court agrees that this evidence is relevant to assist the jury in understanding the nature of the parties' relationship, it may not intrude on the contours of Rule 408.  Any such attempt is plainly improper.  On these two claims of exclusion, therefore, the Court grants in part and denies in part Defendants' request.

### F.   Plaintiff's Retirement and Illness

Lastly, Defendants ask that the Court exclude evidence of Plaintiff's medical condition and his retirement from the practice of medicine.  (Doc. 352) at 17-18.  In support, Defendants assert that this evidence is irrelevant under Rule 401 and serves to impermissibly evoke sympathy from the jury.  *Id.* at 18.  In response, Plaintiff posits that this information is relevant to his background as an orthopedic surgeon.  (Doc. 362) at 22.  Therefore, Plaintiff asks that the Court deny Defendants' request to exclude this evidence.  *Id.*

The Court agrees that evidence of a witness' medical condition and retirement status—in a case involving a contract dispute—is irrelevant.  In its simplest form, this evidence may evoke sympathy from the jury, unrelated to the parties' dispute or Defendants' conduct.  Nevertheless, to allow Plaintiff to explain his background before the jury, the Court will permit testimony that he no longer practices medicine or works in orthopedic surgery.  This statement is both truthful and neutral, alleviating the threat of unfair sympathy or prejudice.  Defendants' final request is, therefore, granted.

### III.   Conclusion

In summary, evidence related to Plaintiff's request for punitive damages is inadmissible. In pertinent part, the Court concludes that punitive damages are not recoverable for contract claims under New Jersey law.  Next, the Court determines that antecedent and contemporaneous evidence that predates the parties' 2009 Royalty Agreement is admissible under New Jersey law. In contrast, the Court concludes that extrinsic evidence postdating the parties' 2009 Royalty Agreement is generally inadmissible under the Federal Rules.  Nonetheless, the Court will permit the parties to present an evidentiary proffer, requesting admission of particularized post-2009 evidence that conforms with Rule 408 and illustrates the parties' intent under the 2009 Royalty Agreement.

Moreover, the Court concludes that evidence of Defendants' wealth and financial strength are excluded under Rule 403.  The Court notes that, in the absence of a claim for punitive damages, this evidence has little probative value to combat the risk of unfair prejudice. Relatedly, evidence of Defendants' revenue from the disputed products is admissible at trial. This evidence may be used, for example, to assist Plaintiff in calculating his entitlement to

damages.  Next, evidence of Defendants' corporate size is also admissible.  In short, the Court

concludes that the risk of unfair prejudice does not outweigh the probative value of this evidence.

The Court also finds that the report authored by Plaintiff's expert, Dr. Burkhead, is

relevant and reliable.  Consequently, Dr. Burkhead's findings, and the similar testimony offered

through other witnesses, is admissible at trial.  In addition, evidence of the parties' prior

payments and royalty disputes is relevant to the jury's contemplation.  Notwithstanding this

conclusion, Plaintiff may not disclose the monetary figures or present prohibited information

under Rule 408.

Finally, the Court concludes that evidence of Plaintiff's medical condition and retirement

status is irrelevant and therefore inadmissible.  In pertinent part, this evidence seeks to evoke

unfair sympathy unrelated to the present dispute.  However, the Court will permit testimony from

Plaintiff only that he no longer practices medicine or works as an orthopedic surgeon.  For each

of these reasons, Defendants' Motion in Limine (Doc. 352) is granted in part and denied in part.

IT IS ORDERED.

UNITED STATES DISTRICT JUDGE