IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WAYNE KENNETHE AUGÉ, II, M.D.,
*Individually and as Trustee on Behalf of
Covalent Global Trust*,

       Plaintiff,

vs.                                                                      Civ. No. 14-1089 KG/SMV

STRYKER CORPORATION, and
HOWMEDICA OSTEONICS CORP.,

       Defendants.

ORDER FOLLOWING PRETRIAL CONFERENCE

The Court held a Pretrial Conference in this case on Wednesday, January 12, 2022, which

was attended by counsel for Plaintiff and Defendants.  The following matters were discussed and

decided at the Pretrial Conference:

1.  Defendants argue that Plaintiff seeks disgorgement of profits, which is not an available
    <u>remedy under New Jersey law, and thus the Court should exclude profit evidence.</u>

The Court heard argument from counsel on this point.  The Court notes that Plaintiff

expressly disclaimed the assertion that he seeks disgorgement of profits, *per se*, in the Second

Supplemental Proposed Pretrial Order (Doc. 420), and again at the Pretrial Conference.  Having

considered the parties' arguments, and Plaintiff's representation that he does not seek

disgorgement *per se*, the Court is persuaded that Plaintiff seeks to introduce profit and revenue

evidence to establish the damages element of his equitable claims.  Under Plaintiff's *quantum*

*meruit* theory, New Jersey law requires proof of "an expectation of compensation" and "the

reasonable value of the services." *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 172

N.J. 60, 69, 796 A.2d 238 (2002); *Lester Slaby, LLC v. Northwest Construction, LLC*, 2021 WL

1387907, at *3 (N.J. Super.); *see also* (Doc. 401) at 17 (denying Defendants' Motion *in Limine*

to exclude profit and revenue evidence). Similarly, Plaintiff's claim for unjust enrichment requires proof that Defendants were "enriched," that they "received a benefit," and that "retention of the benefit without payment therefor would be unjust." *Lester Slaby, LLC*, 2021 WL 1387907, at *3; (Doc. 401) at 17.

The Court concludes that this evidence is relevant to Plaintiff's damages claims under equitable theories of recovery, and that introduction of this evidence is not tantamount to seeking disgorgement of profits. To the extent Defendants raised this issue as an objection in the Second Supplemental Proposed Pretrial Order, the objection is overruled.

2. Defendants argue that Plaintiff previously stipulated to the existence of a contract, and objects to the withdrawal of this "previously-undisputed and stipulated fact."

The Court heard from counsel regarding this issue. The crux of Defendants' objection remains their objection that Plaintiff should not be allowed to proceed on contractual and quasi-contractual claims. The Court considered this argument many times and again rejects it, for the reasons outlined in its previous rulings and at the Pretrial Conference. While it is true that there is a signed writing between the parties, the meaning of that writing remains in dispute. To the extent Defendants raised this issue as an objection in the Second Supplemental Proposed Pretrial Order, the objection is overruled.

3. Defendants implicitly challenge Plaintiff's expert, Keith Ugone, on the basis that he did not apply reliable principles and methods that would assist the jury in assessing the "fair value" of Plaintiff's services or the benefit Defendants' received based on Defendants' profits.

As an initial matter, the Court confirmed, and defense counsel agreed, that Defendants did not file a *Daubert* motion with respect to Mr. Ugone's expert report or his opinions. The Court then heard argument from counsel on this point.

Defendants argue that Plaintiff previously stipulated that profits are "out" or irrelevant in Document 240, on the basis that a damages award based on profits would be punitive and not compensatory. Defendants further contend that Mr. Ugone only calculated profits, and not "value," such that his testimony would not assist the jury.

Plaintiff responds that the issue about profits and value has always been live and in the case, and that the instant challenge is untimely and procedurally improper. Plaintiff points out that Defendants filed a motion *in limine* seeking to exclude evidence of profits, which the Court denied at Document 401. Finally, Plaintiff notes that he is required to prove damages and that a jury may consider, but is not bound by, any argument based on profits.

The Court notes that the parties have been aware since May 2018, when the Court entered its first Memorandum Opinion and Order narrowing the claims for trial, (Doc. 207), that Plaintiff's equitable claims would proceed and go to the jury. If Defendants intended to challenge Plaintiff's expert's methodology, the time to do so was during dispositive and/or *Daubert* motions practice. Moreover, Defendants raised this issue of the "reasonable value" or "fair value" damages model with respect to the equitable claims in their Motion *in Limine*. (Doc. 352) at 2-3. The Court ruled on Defendants' Motion on August 5, 2021, and stated that it was "unpersuaded that Defendants were not adequately apprised that Plaintiff's claims would include some assessment of the value of their product revenue before the jury." (Doc. 401) at 18.

With the benefit of additional argument from counsel, the Court remains unpersuaded. The Court agrees that profit and revenue evidence will be relevant on the issue of damages, and that Mr. Ugone's testimony may aid the jury in considering these matters. Moreover, Defendants waited until the deadline to submit the parties' proposed Pretrial Order to raise the issue with respect to Mr. Ugone. The Court finds that Defendants have waived this argument.

Nevertheless, Defendants may cross-examine Mr. Ugone on his principles and methods as it remains for the jury to determine the weight it will give to his testimony.

4. Defendants argue that interpretation of the royalty period under the 2009 Royalty Agreement is a legal question the Court should resolve pretrial.

The Court heard argument on this point at the Pretrial Conference. As the Court previously ruled, and as the parties illustrated in presenting competing interpretations of the royalty period provision, the 2009 Royalty Agreement is ambiguous. New Jersey law provides that when the contract terms are ambiguous and the parties dispute their meaning (as is the case here), construction of the contract and application of any evidence submitted to prove the surrounding circumstances are for the jury. NJ Model Civil Jury Charge 4.10H(2); *State Farm Mut. Auto. Ins. Co. v. Anderson*, 70 N.J. Super. 520, 524 (App. Div. 1961).

The Court concludes that the royalty period provision, Section 9(b) of the 2009 Royalty Agreement, is ambiguous with respect to the period of time for which royalties are owed. Specifically, the provision is susceptible to at least two reasonable interpretations, as articulated by the parties at the Pretrial Conference. Because the provision is ambiguous, New Jersey law commits interpretation of the provision to the jury. This Court will do the same.

5. Plaintiff asserts that a post-trial accounting is appropriate both for damages and to determine a full and final list of "Accused Products."

The history of this case evinces multiple long-standing disputes, including an ongoing dispute about which products in the Iconic, VersiTomic, and MicroFX lines are the "Accused Products." Plaintiff agrees that not every product under the three product lines incorporates technology that Plaintiff contends he created. However, Plaintiff further asserts that he has been unable to determine the full scope of which products incorporate his technology due to

Defendants' intransigence.  To that end, Plaintiff seeks a post-trial accounting to determine all products that use his technology.

Defendants, of course, oppose this request.  Defendants assert that they served Plaintiff with an Interrogatory during discovery that asked him to identify the Accused Products.  Plaintiff did so, and has not supplemented that discovery response.  Moreover, Defendants assert that they turned over all product design files as of a date-certain, but admit that additional products may have been added later.  Defendants contends this ends the inquiry.

In reply, Plaintiff asserts that he had only a list of the products and not full design specifications, so he was required to guess.  And while Plaintiff concedes the design files had been turned over, they were designated "Attorney Eyes Only" at the time Plaintiff answered the Interrogatory.

As for the damages issue, Plaintiff contends that Defendants turned over sales data through 2020, but have not produced updated profit and revenue data.  Defendants assert they were not required to do so based on Judge Vidmar's order on a motion to compel in 2018.

The parties acknowledge that the landscape of the case has changed in the intervening four years.  Specifically, Judge Vidmar entered his order on the eve of trial, though the trial did not proceed and has since been reset several times.

Defendants represented at the Pretrial Conference that they would be able to obtain updated sales data before trial but would not be able to obtain updated profit and revenue data.

Defendants will produce updated sales data to Plaintiff no later than seven days before trial.

Finally, the parties requested time to meet and confer on this issue.  That request is granted.  In the meantime, Plaintiff will submit a proposed jury instruction on the question of

identifying the Accused Products, and the Court will take Plaintiff's request for a post-trial accounting under advisement.

6. <u>Preliminary Jury Instructions were discussed and approved.</u>

The Court provided the parties with draft preliminary jury instructions before the Pretrial Conference. Counsel had the opportunity to review the draft preliminary instructions. The parties proposed changes to the preliminary jury instructions, which the Court incorporated. Subject to the parties' ability to argue final jury instructions, the preliminary jury instructions circulated on the afternoon of Wednesday, January 12, 2022, are approved.

7. <u>Testing for COVID-19 and courtroom admission.</u>

The parties, counsel, staff or assistants for the attorneys, and all witnesses are required to take a COVID-19 test and submit a negative result to the Court <u>prior</u> to admission to the courtroom. For attorneys attending the final jury instructions conference, this means the COVID-19 test must be submitted before that conference. If an individual has taken a test but does not yet have test results, the Court will accept the results of a home test.

Any person who does not produce test results or produces a positive test result will not be allowed into the courtroom.

If a witness tests positive for COVID-19 and is able to do so, the witness may testify remotely. The party calling the witness is responsible for ensuring the witness has adequate audio and video equipment to appear remotely and to be available to testify at the appointed time and without delay.

The Court requires all persons present in the courtroom to wear a mask at all times. The exceptions to this rule are: 1) the witness testifying may remove his/her mask; and 2) the attorney arguing or questioning may remove his/her mask.

8. Disputed exhibits.

The parties submitted several sets of exhibit lists: a master list of stipulated exhibits (Doc. 443-1); a master list of disputed exhibits (Doc. 443-2); Plaintiff's list of disputed exhibits that will definitely be used at trial and need pretrial consideration (Doc. 441-1); and Defendants list of disputed exhibits that will definitely be used at trial and need pretrial consideration (Doc. 442-1). The Court addressed each exhibit list in turn.

As noted at the Pretrial Conference, exhibits may be "preadmitted," in that they are available for use at trial with no further action, only those exhibits that are actually utilized at trial will be made available to the jury for its deliberations.

The following exhibits were identified as disputed in Doc. 441-1 or Doc. 442-1, but the parties withdrew their objections, and these exhibits were preadmitted:

Plaintiff's Exhibits: 3, 69, 98, and 207.

Defendants' Exhibits: FX, GD, GI, GM, GN, GO, GQ, GR, GT, GX, GZ, HR, HS, IG, IH, IN, IO, IP, IQ, IR, IS, IV, and IY.

The following exhibits were withdrawn from pretrial consideration, but may still be raised at trial subject to objections:

Defendants' Exhibits DK, DL, FS and JC.

The following of Plaintiff's Exhibits were argued at the Pretrial Conference:

**Ex. 4 – Feb. 29, 2000 Confidentiality Agreement**

Defendants object to this exhibit based on Federal Rules of Evidence 402 and 403. Having considered the objections, the Court finds that the document is relevant and the probative value outweighs the risk of jury confusion and/or prejudice to Defendants. The objections are overruled and the exhibit will be admitted subject to authentication.

Defendants will provide a proposed limiting instruction for proper consideration of this exhibit by 5:00pm on Tuesday, January 18, 2022.

**Ex. 12 – June 1, 2001 Email correspondence from L. Smith to W. Auge re curved labrum**

The parties stipulated to authenticity. Defendants object to this exhibit based on Rules 402, 403, 408, and 802. Having considered the objections, including argument from counsel, the Court determines that Rule 408 does not apply as this email does not constitute conduct or speech within the scope of compromise negotiations. Moreover, the email is relevant and probative, and its value as parol evidence for interpretation of the 2009 Royalty Agreement and with respect to the equitable claims outweighs any risk of jury confusion or prejudice to the Defendants. The objections are overruled and the exhibit is admitted.

**Ex. 19 – Jan. 28, 2002 Email re curved labrum guides, instrumentation, etc. one percent royalty**

Defendants object to this exhibit based on Rules 402, 403, 408, and 802. Having considered the objections, including argument of counsel, the Court determines that Rule 408 does not apply as this email does not constitute conduct or speech within the scope of compromise negotiations. The email is not hearsay pursuant to Rule 801(d)(2), statement of a party opponent. Moreover, the email is relevant and its probative value outweighs any risk of undue prejudice to the Defendants. The objections are overruled and the exhibit will be admitted subject to authentication.

**Ex. 26 – May 21, 2003 email from L. Smith (Director of Marketing, Stryker Sports Medicine) to Dr. Augé re curved labrum set**

The parties stipulated to authenticity. Defendants object to this exhibit based on Rules 402, 403, 408, and 802. Having considered the objections, including argument of counsel, the Court determines that Rule 408 does not apply as this email does not constitute conduct or

speech within the scope of compromise negotiations.  The email is not hearsay pursuant to Rule 801(d)(2), statement of a party opponent.  Moreover, the email is relevant and its probative value outweighs any risk of undue prejudice to the Defendants.  The objections are overruled and the exhibit will be admitted.

### Ex. 36 – Aug. 16, 2007 Mutual Nondisclosure Agreement

Defendants object to this exhibit based on Rules 402, 403, and 802.  Having considered the objections, including argument of counsel, the Court determines that the agreement is not hearsay pursuant to Rule 803(6), records of a regularly conducted activity, and is relevant to interpretations of the 2009 Royalty Agreement and the equitable claims.  The agreement predates the Royalty Agreement and is admissible under New Jersey law as parol evidence.  The probative value outweighs any risk of jury confusion or prejudice to the Defendants.  The objections are overruled and the exhibit will be admitted subject to authentication.

### Ex. 47 – Oct. 22, 2008 Email Correspondence between R. Yearsley and Augé re Draft Royalty Agreement

Defendants object to this exhibit based on Rules 402, 403, and 802.  Having considered the objections, including argument of counsel, the Court determines that the email is not hearsay pursuant to Rule 801(d)(2), statement of a party opponent and is admissible under New Jersey law as parol evidence to aid in interpreting the 2009 Royalty Agreement.  The email is also relevant to Plaintiff's equitable claims.  Moreover, the email is relevant and its probative value outweighs any risk of undue prejudice to the Defendants.  The objections are overruled and the exhibit will be admitted subject to authentication.

### Ex. 53 – Feb. 17, 2009 Updated Draft Royalty Agreement

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, and 802.  Having considered the objections, including argument of counsel, the Court

determines that exhibit is not hearsay: the attached email constitutes the statement of a party

opponent under Rule 801(d)(2), and the draft agreement is admissible under Rule 803(6) as the

record of regularly conducted activity. Additionally, the exhibit is admissible as parol evidence

under New Jersey law to aid in interpretation of the 2009 Royalty Agreement. The exhibit is

relevant, and its probative value outweighs any risk of jury confusion or prejudice to the

Defendants. The objections are overruled and the exhibit will be admitted.

### Ex. 61 – Feb. 20, 2009 Correspondence re Auge Disclosures for Royalty Agreement

The parties stipulated to authenticity. Defendants object to this exhibit based on Rules

402, 403, and 802. Having considered the objections, including argument of counsel, the Court

determines that the exhibit does not constitute hearsay, pursuant to Rule 801(d)(2), and that it is

relevant. However, the Court is not persuaded the exhibit passes the balancing test of Rule 403.

Accordingly, the exhibit will not be preadmitted. This ruling is subject to reconsideration at trial,

as the probative value may become more clear.

### Ex. 71 – Apr. 2, 2009 Emails re agreement with Dr. Auge

The parties stipulated to authenticity. Defendants object to this exhibit based on Rules

402, 403, 602, and 802. Having considered the objections, including argument of counsel, the

Court determines that this exhibit does not constitute hearsay under Rule 801(d)(2). Plaintiff

agreed to reduce this exhibit to only page 3 of 18, the email from E. Teutsch, and will resubmit

as such. With that stipulation, the Court agrees the exhibit is relevant, and the probative value

outweighs any risk of prejudice to Defendants. The objections are overruled and the exhibit will

be admitted.

**Ex. 81 – July 3, 2009 Email from Dr. Auge to E. Teutsch re termination**

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules

402, 403, and 802.  Having considered the objections, including argument of counsel, the Court

is not persuaded the exhibit is admissible.  Accordingly, the exhibit will not be preadmitted.

This ruling is subject to reconsideration at trial, as the probative value may become more clear

and any issues regarding hearsay may be resolved.

**Ex. 105 – May 6, 2011 Email from Ryan Yearsley to Wayne Auge re two additional
implant products released based on FLEX technology**

Defendants object to this exhibit based on Rules 402, 403, and 802.  At the Pretrial

Conference, Plaintiff agreed to pare this exhibit down to the relevant email and resubmit.  With

that agreement, and having considered the objections, including argument of counsel, the Court

concludes the exhibit is not hearsay under Rule 801(d)(2), and is relevant to the parties'

understanding of the Royalty Agreement before the dispute arose.  Accordingly, the probative

value outweighs any risk of prejudice to the Defendants.  The objections are overruled and the

exhibit will be admitted subject to authentication.

**Ex. 122 – Sep. 21, 2012 Email from Ryan Yearsley re adding ICONIX 1&2 to
royalty agreement**

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules

402, 403, and 802.  At the Pretrial Conference, Plaintiff agreed to pare this exhibit down to the

relevant email and resubmit.  With that agreement, and having considered the objections,

including argument of counsel, the Court concludes the exhibit is not hearsay under Rule

801(d)(2), and is relevant to the parties' understanding of the Royalty Agreement before the

dispute arose.  Accordingly, the probative value outweighs any risk of prejudice to the

Defendants.  The objections are overruled and the exhibit will be admitted.

**Ex. 123 – Sep. 21, 2012 Email from Ryan Yearsley to S. Stopper itemizing royalty to be applied to specific part numbers**

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, 602, and 802.  At the Pretrial Conference, Plaintiff agreed to pare this exhibit down to the relevant email(s) and resubmit.  With that agreement, and having considered the objections, including argument of counsel, the Court concludes the exhibit is not hearsay under Rule 801(d)(2), and is relevant to the parties' understanding of the Royalty Agreement before the dispute arose.  Accordingly, the probative value outweighs any risk of prejudice to the Defendants.  The objections are overruled and the exhibit will be admitted.

**Ex. 129 – Mar. 6, 2013 Correspondence Re Iconix Ownership**

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, and 802.  At the Pretrial Conference, Plaintiff agreed to pare this exhibit down to the relevant email and resubmit.  With that agreement, and having considered the objections, including argument of counsel, the Court concludes the exhibit is not hearsay under Rule 801(d)(2), and is relevant to the parties' understanding of the Royalty Agreement before the dispute arose.  Accordingly, the probative value outweighs any risk of prejudice to the Defendants.  The objections are overruled and the exhibit will be admitted.

**Ex. 133 – Apr. 24, 2013 Email from R. Yearsley to Auge re royalty amendment**

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, 408, and 802, and the Court's ruling on Defendants' Motion *in Limine* No. 2.  At the Pretrial Conference, Plaintiff agreed to pare this exhibit down to the relevant email and resubmit. With that agreement, and having considered the objections, including argument of counsel, the Court concludes the exhibit is not hearsay under Rule 801(d)(2), and is relevant to the parties' understanding of the Royalty Agreement before the dispute arose.  Accordingly, the probative

value outweighs any risk of prejudice to the Defendants.  Additionally, the Court concludes that Rule 408 does not apply and the email is not part of compromise negotiations.  Finally, with respect to the Court's prior ruling (Doc. 401), the Court is not persuaded that this exhibit seeks to retroactively modify the parties' contract, but rather reflects the parties' understanding before the dispute arose.  The objections are overruled and the exhibit will be admitted.

### Ex. 135 – Apr. 10, 2013 Email from R. Yearsley to Auge re New FLEX Products

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, 408, and 802, and the Court's ruling on Defendants' Motion *in Limine* No. 2.  At the Pretrial Conference, Plaintiff agreed to pare this exhibit down to the relevant email and resubmit. With that agreement, and having considered the objections, including argument of counsel, the Court concludes the exhibit is not hearsay under Rule 801(d)(2), and is relevant to the parties' understanding of the Royalty Agreement before the dispute arose.  Accordingly, the probative value outweighs any risk of prejudice to the Defendants.  Additionally, the Court concludes that Rule 408 does not apply and the email is not part of compromise negotiations.  Finally, with respect to the Court's prior ruling (Doc. 401), the Court is not persuaded that this exhibit seeks to retroactively modify the parties' contract, but rather reflects the parties' understanding before the dispute arose.  The objections are overruled and the exhibit will be admitted.

### Ex. 142 – Dec. 13, 2013 R. Yearsley sends Auge re amendment to Royalty Agreement

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, 408, and 802, and the Court's ruling on Defendants' Motion *in Limine* No. 2. This email does not constitute hearsay pursuant to Rule 801(d)(2).  However, the Court concludes that the exhibit fails the Rule 403 balancing test.  Accordingly, the Court will not preadmit the exhibit.  Plaintiff may use this exhibit for impeachment purposes and to refresh the witness's

recollection, but the exhibit is excluded.  In that way, the objections are sustained, subject to reconsideration at trial.

### Ex. 144 – Jan. 4, 2014 Emails between R. Yearsley and Auge re New FLEX Products

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, 408, and 802, and the Court's ruling on Defendants' Motion *in Limine* No. 2.  This email does not constitute hearsay pursuant to Rule 801(d)(2).  However, the Court is concerned that the exhibit fails the Rule 403 balancing test and may fall within the ambit of Rule 408.  Accordingly, the Court will not preadmit the exhibit.  Plaintiff nevertheless may elicit testimony relating to the substance of the email.  In that way, the objections are sustained, subject to reconsideration at trial.

### Ex. 146 – Feb. 10, 2014 Email from R. Yearlsey to S. Stopper re ICONIX royalties for Q4 2014

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 402, 403, 602, and 802, and the Court's ruling on Defendants' Motion *in Limine* No. 2.  This email string does not constitute hearsay pursuant to Rule 801(d)(2).  However, the Court is concerned that the exhibit fails the Rule 403 balancing test and may be unduly confusing for the jury.  Accordingly, the Court will not preadmit the exhibit, subject to reconsideration at trial.

### Ex. 208 – Brochure Iconix Anchors

At the Pretrial Conference, Plaintiff withdrew this exhibit entirely.  Plaintiff may use this exhibit as a demonstrative aid if he delineates between accused and non-accused products.

### Ex. 209 – Brochure Iconix Speed

At the Pretrial Conference, Plaintiff withdrew this exhibit entirely.  Plaintiff may use this exhibit as a demonstrative aid if he delineates between accused and non-accused products.

**Ex. 265 – Defendants' Responses to Plaintiff's First Set of Interrogatories**

The parties stipulated to authenticity.  Defendants object to this exhibit based on Rules 403, 602, and 802.  As an initial matter, the Court notes that Interrogatory answers are inherently statements of a party opponent and, thus, not hearsay under Rule 801(d)(2).  At the Pretrial Conference, Plaintiff indicated he would pare this exhibit down and address the matter at trial. This exhibit is taken under advisement until the time of trial.

The following of Defendants' Exhibits were argued at the Pretrial Conference:

**Ex. DH – 2009-02-19 Email chain between Ryan Yearsley and Augé; Subject: Contract and Catch-Up**

Plaintiff originally objected to this exhibit based on Rule 106.  The parties came to an agreement and resolved the objection.  Defendants will resubmit the updated exhibit, which will be admitted.

**Ex. DM – 2009-02-20 Attachment E: Checklist for RedFlags, Wayne Augé**
**Ex. DN – 2009-02-20 Memo from Yearsley to Professional Affairs, Subject: Dr. Wayne Augé's Development Contract, Attachment E: Checklist for Red Flags**
**Ex. DT – 2009-03-13 Memo from Ryan Yearsley to Professional Affairs, Subject: Dr. Wayne Augé's Development Contract, Attachment E: Checklist for Red Flags**
**Ex. DW – 2009-07-15 Attachment "Auge packet" to Email from Chu to Yearsley, Subject: Auge – U**
**Ex. DX – 2009-07-15 Email from Chu to Yearsley, Subject: Auge – U (attaching "Auge packet")**

The parties stipulated to authenticity with respect to these exhibits.  With respect to each exhibit, Plaintiff objects on the basis of Rules 402, 403, 609(b), 609(c), and this Court's prior ruling found at Document 397.  Defendants will attempt to address the objections by redacting the exhibits, and will seek concurrence from Plaintiff.  Defendants will then resubmit the proposed exhibits.  In this way, these exhibits are taken under advisement.

**Ex. DZ – 2009-07-21 Wire Transfer from Stryker to COSPR—in the amount of $273,649.76**

Plaintiff objects to this exhibit based on Rules 403 and 901. Having considered the objections, including argument of counsel, the Court concludes the exhibit is relevant and will provide the jury context about the parties' contractual relationship. In that way, the probative value outweighs the risk of any jury confusion or prejudice to Plaintiff. The Rule 403 objection is overruled and the exhibit will be admitted subject to authentication.

**Ex. FM – Capital Expenditure Request, Stryker Orthopaedics Division**

The parties stipulated to authenticity. Plaintiff objects to this exhibit based on Rules 402 and 403. At the Pretrial Conference, Plaintiff agreed that the exhibit is relevant on the issue of damages and goes directly to Defendants' valuation of intellectual property. Having considered the objections, including argument of counsel, the Court concludes the exhibit is relevant and its probative value outweighs the risk of jury confusion and undue delay. The objections are overruled, and the exhibit will be admitted.

**Ex. FP – Howmedica Purchase of Assets from Laurane Medical and Laurent Fumex**

The parties stipulated to authenticity. Plaintiff objects to this exhibit based on Rules 402 and 403. At the Pretrial Conference, Plaintiff agreed that the exhibit is relevant on the issue of damages. The Court initially upheld Plaintiff's objections and excluded the exhibit due to minimal probative value and the risk of jury confusion, under Rule 403. However, Defendants made an oral motion for reconsideration on the basis that Defendants' expert relied on this document to help explain valuation of the benefit Defendants received. With that additional explanation and elucidation of the probative value, the Court considered the objections and overrules the objections. Exhibit FP will be admitted.

**Ex. JG – 2009-02-14 Assignment and Royalty Agreement, FLEX System, DRAFT (Attachment to 2009-02-17 Email from Yearsley to Auge, Subject: Contract and Catch-Up)**

Plaintiff originally objected to this exhibit based on Rule 106.  The parties came to an agreement and resolved the objection.  Defendants will resubmit the updated exhibit, which will be admitted.

**Ex. JH – 2009-02-17 Email from Yearsley to Augé, Subject: Contract and Catch-Up**

Plaintiff originally objected to this exhibit based on Rule 106.  The parties came to an agreement and resolved the objection.  Defendants will resubmit the updated exhibit, which will be admitted.

The parties will submit a revised/updated joint exhibit list by Friday, January 14, 2022, at 5:00 pm.  This updated list will serve as the preadmission list.

Though not originally submitted on Defendants' list of exhibits for consideration at the Pretrial Conference, the parties also argued Defendants' Exhibits CD, CE, CL, CM, CN, and CQ.  Plaintiff objects to these exhibits based on relevance and hearsay.  Having considered all of the objections, including argument of counsel, the Court concludes the exhibits are admissible.  With respect to Rule 802, the exhibits not being offered for the truth of the matter asserted and, therefore, are not hearsay.  Even if the exhibits are offered for the truth of the matter asserted, they are not hearsay under Rule 803(6).  And even if the exhibits contain hearsay, the exhibits are admissible under Rule 807.  With respect to Rule 807, the Court finds the exhibits bear sufficient guarantees of trustworthiness, taking into consideration the totality of the circumstances, and the exhibits are more probative on the point (valuation of Plaintiff's idea) than any other evidence that the proponent can obtain through reasonable efforts.  The Court notes that Defendants have given Plaintiff reasonable notice of their intent to offer the statement, has done so in writing, and before trial.  Incumbent in the Rule 807 analysis is the Court's

determination that the exhibits are relevant and probative on the issue of damages.  Accordingly, Plaintiff's objections are overruled and the exhibits are admitted.

9. <u>General trial instructions and administrative matters.</u>

The Court will seat eight (8) jurors for this civil case.  Each side will have a total of 45 minutes to conduct *voir dire*, after the Court conducts its standard *voir dire*.  If there are topics or areas the parties would prefer the Court cover in *voir dire*, rather than covering those topics themselves, the parties may submit those requests to the Court by 5:00pm on Tuesday, January 18, 2022.  The Court explained its jury selection process.

The parties and counsel will be in the courtroom by 8:15 a.m. every morning.  Counsel will ensure that witnesses are available and ready to go so that we may use all of every trial day and avoid delays.

Each party will have 45 minutes for opening statements.  Counsel may freely interact with exhibits and approach the witness, but will otherwise remain within one arm's length of the podium at all times.

In the event a bench conference is necessary, one—and only one—attorney from each side will approach the bench.

Hardcopy of all admitted exhibits will remain on the table in front of the bench.  Counsel will only use those exhibits, not other copies, when examining witnesses.

10. <u>Outstanding matters</u>

Plaintiff will ensure that he submits (or submitted) a proposed jury instruction regarding the appropriate scope and use of evidence of Plaintiff's prior civil case under Rule 608(b).

The Second Supplemental Proposed Pretrial Order contains a request from Plaintiff that the Court compel Defendants to turn over the attached email Mr. Yearsley sent Plaintiff in 2008.

The email has been submitted as Exhibit 47.  The Court heard argument on this point.  Given that the attachment was in Plaintiff's custody at some time, and may still exist in the annals of his email, and given the 11th hour nature of the request, the Court denies Plaintiff's request and deems the matter waived.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE