## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WAYNE KENNETH AUGÉ, II, M.D.,
Individually and as Trustee on behalf of
The Covalent Global Trust,

       Plaintiffs,

v.                                                                                    Case No.  1:14-cv-01089-KG-SMV

STRYKER CORPORATION et al.,

       Defendants.

## FINAL PRETRIAL ORDER

This matter is before the Court pursuant to Fed. R. Civ. P. 16.  The parties previously submitted a Pretrial Order on November 10, 2017 [Doc. 203] and a Supplemental Pretrial Order on April 3, 2019 [Doc. 247].  Pursuant to the Court's Order dated August 9, 2021 [Doc. 407], the parties hereby submit this Second Supplemental Joint Pretrial Order.

## I.  APPEARANCES

Attorneys who will try this action:

For Plaintiff

                                      Stephen R. Brown
                                      Michael Kozlowski
                                      Matthew H. Griffin
                                      Esbrook Law P.C.
                                      77 W. Wacker, Suite 4500
                                      Chicago, Illinois 60601

                                      Nathan T. Nieman
                                      Modrall, Sperling, Roehl, Harris & Sisk, P.A.
                                      Post Office Box 2168
                                      Albuquerque, New Mexico 87103-2168

For Defendants

Monica R. Garcia
**Butt Thornton & Baehr PC**
4101 Indian School Rd. NE, Suite 300S
PO Box 3170
Albuquerque, NM 87190

B. Trent Webb
Aaron Hankel
Ashley Harrison
**Shook, Hardy & Bacon LLP**
2555 Grand Blvd.
Kansas City, MO 64108

Sharon Israel
**Shook, Hardy & Bacon LLP**
600 Travis Street, Suite 3400
Houston, TX 77002

## II.  JURISDICTION AND RELIEF SOUGHT

**A.**    **Subject Matter Jurisdiction.**

**1.**    **Was this action removed or transferred from another forum?** __ Yes  **X** No

**2.**    **Is subject matter jurisdiction of this Court contested?**

**X**   Uncontested  _____ Contested  _____ Party contesting

**3.**    **Asserted basis for jurisdiction.**

_____ Federal Question   **X**   Diversity   _____ Other

Statutory Provision(s) Invoked:  **28 U.S.C. § 1332**

**B.**    **Personal Jurisdiction and Venue.**

**1.**    **Is personal jurisdiction contested?**

**X**   Uncontested  _____ Contested

**2.**    **Is venue contested?**

**X**   Uncontested  _____ Contested  _____ Party Contesting

**C.**    **Are the proper parties before the Court?**

2

___**X**___ Uncontested   _____ Contested

**D.   Identify the affirmative relief sought in this action.**

**1.   Plaintiff seeks:**   Plaintiff seeks a judgment that Defendants breached an Assignment and Royalty Agreement that the parties agreed to on July 21, 2009 (the "2009 Royalty Agreement") and their duty of good faith and fair dealing by failing to treat the products in the Iconix, VersiTomic, and MicroFX product lines as royalty-bearing, failing to add the products in these product lines to the list of royalty-bearing products, and failing to pay him all royalties due on these product lines.[1]  Plaintiff also seeks a judgment that the royalty period specified in the 2009 Royalty Agreement is the later of (i) August 20, 2030, or (ii) seven years from the first commercial sale of each royalty-bearing product.  As damages for Defendants' breaches, Plaintiff seeks approximately $1.4 million.[2]

---

[1] **PLAINTIFF**:  For the avoidance of doubt, and notwithstanding anything herein to the contrary, Plaintiff does not stipulate to the existence of a contract, and Plaintiff expressly reserves his right to present both his equitable and legal theories to the jury.  (*See* Order Denying Oral Mot. to Submit Suppl. Briefing at 2–3, ECF No. 406.)

**DEFENDANT**:  ~~Consistent with the seven-plus years of this proceeding, Stryker contends there is a valid, enforceable contract.  *See, e.g.*, Doc. 1, ¶ 25 (alleging breach of contract for "series of agreements entered by the parties culminating in the July 21, 2009 Royalty Agreement").  For this reason, Stryker reserves its objection to Plaintiff's withdrawal of this previously-undisputed and stipulated fact.~~

COURT: The parties resolved this issue at the pretrial conference.  Equitable and contractual claims will proceed to the jury.

[2] **PLAINTIFF**:  This case concerns Defendants' breach of their obligation to pay Dr. Augé royalties on products that make use of, or are improvements or modifications to, his flexible drill system invention, including, but not limited to, the Iconix, VersiTomic, and MicroFX product lines.  (First Am. Compl. ¶ 25 ("By the actions alleged herein, Stryker and Howmedica breached their contractual obligations to Dr. Augé by utilizing his proprietary designs, techniques and enhancements, and then by failing . . . to pay him compensation for product lines including but not necessarily limited to those named Iconix, VersiTomic and MicroFX, all in violation of a series of agreements entered by the parties culminating in the July 21, 2009 Royalty Agreement."), ECF No. 34.)  The damages numbers are based on the sales figures Defendants provided for a certain subset of products in the Iconix, VersiTomic, and MicroFX product lines through partial year 2016.  Dr. Keith Ugone provided his supplemental expert report in this matter on April 4, 2017.  Dr. Ugone's supplemental expert report was based on sales data reflected in a document dated December 19, 2016.  Dr. Ugone stated that additional compensation and royalties would be owed to Plaintiff for the remainder of 2016 and on a going-forward basis assuming Defendants continue to sell the products.  (*See*

In the alternative, Plaintiff asserts equitable claims for unjust enrichment and quantum meruit. Plaintiff seeks a judgment that Defendants were unjustly enriched by their use of Plaintiff's invention and that he is entitled to relief. As damages, Plaintiff seeks approximately $20 million.[3]

If there is a finding of liability, Plaintiff seeks a post-trial accounting to determine the damages to which he is entitled.

---

Ugone Suppl. Report at nn. 11 & 13.) Defendants have continued to sell the certain subset of products as well as other products and new products in the Iconix, VersiTomic, and MicroFX product lines. If there is a finding of liability, a post-trial accounting is necessary to determine damages for sales not covered in Dr. Ugone's report. Furthermore, the jury may determine that the Royalty Period runs until August 20, 2030. In February 2021, Plaintiff proposed the following compromise on updated sales data to Defendants: "(a) 45 days before the trial date, Defendants provide then-current sales data to Plaintiff; and (b) within 15 days of receiving the updated sales data, Dr. Ugone will provide an updated calculation of royalty damages." Defendants rejected that compromise. Accordingly, Plaintiff intends to present his claim for damages based on Dr. Ugone's report, and Plaintiff will seek a post-trial accounting if there is a finding of liability. Available sales data to the first quarter of 2020 remains limited to the certain subset of products included and will be two years old by the time the case is tried.

**DEFENDANT**: Last year, Stryker supplemented product sales information for all accused products through the first quarter of 2020. Because this data covers more than seven years since "the first commercial sale of a Product," this supplemental discovery mooted any need for additional sales data from Stryker, let alone any need for further supplementation after trial via post-trial discovery or accounting.

Moreover, the post-trial accounting, if ordered, should not encompass sales of "other products and new products in the Iconix, VersiTomic, and MicroFX product lines" that are "not covered in Dr. Ugone's report," as Plaintiff appears to request. This is not a bellwether case involving bellwether products, and Plaintiff's vague references to "other products" and "new products" rings as hollow today as it did in 2018 when the Magistrate denied Plaintiff's motion for additional discovery as untimely. Doc. 233 at 3-4 ("The required update is temporal only; no sales data is required for items not already listed STRAUGE 88339.").

COURT: Defendant ordered to produced updated sales data no later than seven (7) days before trial.

[3] **DEFENDANT**: Defendants note that Plaintiff's $20 million unjust enrichment damages request is based on Defendants' profits, in contravention of Plaintiff's assertion in Section VI, *infra*, that "Plaintiff is not seeking disgorgement of profits."

**PLAINTIFF**: Despite Defendants' repeated assertions to the contrary, Plaintiff is not seeking disgorgement. This is made clear by Plaintiff's proposed instruction to the jury on damages, which states: "If you decide that Dr. Augé is to be awarded damages for his claim for unjust enrichment, in deciding the amount of damages, you may consider, but are not bound by, the profits that Defendants derived from their sale of products that made use of, or were modifications or improvements to, the flexible drill system that he invented." (*See* Pl. Disputed Instruction No. 42 at p. 53, ECF No. 375-1.) The parties will be submitting revised jury instructions to the Court on November 24, 2021.

2.      **Defendant seeks:**  Defendants seek a finding that Defendants have not breached the Assignment and Royalty Agreement executed on July 21, 2009 (Doc. 20-6) (hereinafter, "Royalty Agreement"), or any obligation of good faith and fair dealing associated with the same, because Defendants have performed their obligations under the contract and have acted in good faith in performing under the contract. Defendants seek a finding that Defendants are not liable to Plaintiff for the quasi-contractual claims of quantum meruit and unjust enrichment, which were "Pled as an Alternative" to each other (Doc. 34, Counts VI and VII), because there is a valid, unrescinded contract between the parties, and Plaintiff has not and cannot dispute either validity or enforceability of the contract. Defendants further seek a finding that Plaintiff's unjust enrichment and/or quantum meruit claims do not entitle Plaintiff to any further compensation beyond what has been previously paid to him and what is owing to him pursuant to the Royalty Agreement. To the extent Plaintiff is entitled to any equitable relief, Defendants contend that such relief is limited to the fair value of the benefit/services allegedly conferred. Finally, Defendants assert the defenses of contract and performance, ~~waiver,~~ and unclean hands.[4]

### III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

A.      **Plaintiff's claims:**  Plaintiff is an orthopedic surgeon and the inventor of a flexible drill system designed for use in orthopedic surgeries.  He disclosed his invention to Defendants pursuant to a series of confidentiality agreements between the parties that protected his rights to his invention.  Defendants acknowledged that this flexible drill system was Plaintiff's invention and acknowledged that they would compensate him if they sold products that made use of, or were improvements or modifications to, his invention.

---

[4] COURT: At the pretrial conference, Defendants withdrew and otherwise abandoned the affirmative defense of waiver.

Defendants sell products designed for use in orthopedic surgeries under the Iconix, VersiTomic, and MicroFX product lines. Plaintiff contends that these products make use of, or are improvements or modifications to, his flexible drill system. While Defendants did, in fact, compensate him in connection with their sales of the Iconix products, they stopped paying him after a period of 15 months. Defendants have since refused to pay Plaintiff anything in connection with their sales of the Iconix products and have not paid Plaintiff anything in connection with the sales of the VersiTomic and MicroFX products.

Plaintiff is asserting a claim under the 2009 Royalty Agreement. If Plaintiff's rights to compensation for Defendants' sales of the Iconix, VersiTomic, and MicroFX product lines are governed by the 2009 Royalty Agreement, then Plaintiff contends that Defendants violated the 2009 Royalty Agreement and breached the implied covenant of good faith and fair dealing by failing to treat the products in these product lines as royalty-bearing, failing to add the products in these product lines to the list of royalty-bearing products, and failing to pay him all royalties due on these product lines.

As an alternative to his breach of contract claims, Plaintiff is asserting claims for unjust enrichment and quantum meruit. If the Royalty Agreement is not a valid contract (for example, if there was no meeting of the minds) or if Plaintiff's rights to compensation for Defendants' sales of the Iconix, VersiTomic, and MicroFX product lines are not governed by the 2009 Royalty Agreement, then Plaintiff asserts that Defendants were unjustly enriched by their use of Plaintiff's invention.

Plaintiff disputes Defendants' defenses and disputes the arguments Defendants raise in support of those defenses below.

6

**B.**     **Defendants' defenses:**   This case centers on a dispute arising from a contract between the parties, and Plaintiff's allegations that Defendants have breached the same. Defendants' position is simple:  in July 2009, the parties entered into a definitive "Assignment and Royalty Agreement" defining the parties' legal relationship with respect to "certain technology, intellectual property, and know-how related to a flexible drill, guide, and anchor system" employing a curved guide and a flexible drill for implanting suture anchors into bone. Doc. 20-6. The Royalty Agreement is a valid, enforceable agreement, and Defendants have paid all monies owed to Plaintiff under the same. Although Plaintiff has claimed that he is entitled to the benefit of a series of confidentiality agreements entered with Defendants, the Court dismissed those allegations on summary judgment. Doc. 207 at 11. And while Plaintiff claims he is entitled to equitable relief based on his alternative claims of unjust enrichment and quantum meruit, those claims are improper in view of the parties' express agreement defining their respective rights and obligations and covering the identical subject matter underpinning his equitable claims—that is, an anchor insertion system employing a flexible drill and curved guide.

Because Defendants have fully performed each obligation owed to Plaintiff and are not in breach of any express or implied covenant in the Royalty Agreement, Defendants have raised defenses of contract and performance, as well as waiver—each largely premised on the express agreements and warranties agreed to by the parties in the controlling contractual agreement.

Defendants also anticipate the evidence at trial will demonstrate Plaintiff's claims are barred by unclean hands. For example, in the Royalty Agreement, Plaintiff represented and warranted that he had "assigned and is obligated to assign to COSPR all of his right, title and interest in and to any such Intellectual Property ... conceived or reduced to practice by Augé that relates to the design, engineering or marketing of the Products." Doc. 20-6, ¶ 5(a). Plaintiff also

represented and warranted that there were no known agreements that conflicted with, or otherwise impaired, the rights granted to Defendants pursuant to the Royalty Agreement. Doc. 20-6, ¶ 5(b). Relying on Plaintiff's representations and warranties, Defendants provided Plaintiff with valuable consideration in the form of a lump-sum licensing fee and on-going royalty fees in exchange for ownership and licensing rights to Plaintiff's intellectual property. Further, at all times before and during this litigation, Defendants made all required royalty payments to Plaintiff owing under the Royalty Agreement, which Plaintiff accepted without reservation.

Contrary to Plaintiff's representations and warranties in the Royalty Agreement, during litigation, Plaintiff alleged the earlier confidentiality agreements *did* conflict with or otherwise impair the rights granted to Defendants in the Royalty Agreement—claiming that the Royalty Agreement "intentionally excluded ... rights to Improvements" and thus did not assign all of his right, title and interest in and to his Intellectual Property relating to flexible drill technology.  Doc. 178-4 at 5; *see also* Doc. 186, Pl. Opp'n to Summary Judgment, at 6-7 (arguing that Plaintiff assigned only some, "but not all," of his Intellectual Property disclosed to Stryker).  The Court disposed of these claims at summary judgment, finding that "the Royalty Agreement permitted Defendants to use confidential information pertaining to all flexible drill technology" and that the earlier confidentiality agreements "do not prohibit Defendants from manufacturing Improvements to Plaintiff's flexible drill technology, including the Iconix, VersiTomic, and MicroFX devices." Doc. 207 at 11. Plaintiff should thus be estopped from now seeking to derogate or detract from the rights conveyed to Defendants through, ~~and Plaintiff's continued enjoyment of the benefits under the 2009 Royalty Agreement~~ unclean hands.[5]

---

[5] COURT: This change was discussed and approved by the parties at the pretrial conference.

## IV.  FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A.      Stipulated Factual Contentions.**

~~The parties stipulate to the authenticity of the following documents, without waiving any other objection with respect to the admissibility of part or all of any listed document under the Federal Rules of Evidence:~~

~~1.      Assignment and Royalty Agreement dated July 21, 2009 between Howmedica Osteonics Corp and COSPR (AUGE000411-18).~~

~~2.      An Assignment and Royalty Agreement dated February 26, 2009 between Howmedica and COSPR and Wayne K. Augé II, M.D. (AUGÉ 00397-402).~~

~~3.      An Assignment and Royalty Agreement dated March 3, 2009 between Howmedica, and COSPR and Wayne K. Augé II (AUGÉ 00404-410).~~

~~4.      Draft of an Assignment and Royalty Agreement to be dated in July 2009 between Howmedica and COSPR and Wayne K. Augé II (AUGÉ 00385-390).~~

~~5.      Draft of an Assignment and Royalty Agreement to be dated in July 2009 between Howmedica and COSPR and Wayne K. Augé II (AUGÉ 00391-396).~~

~~6.      Memo dated February 20, 2009 from Ryan Yearsley concerning an agreement with COSPR/Dr. Augé (STRAUGE 000993-1013).~~

~~7.      Memo dated March 13, 2009 from Ryan Yearsley concerning Dr. Augé's Development Contract (STRAUGE 000991).~~

~~8.      Development Agreement Request Form requested by Ryan Yearsley dated February 23, 2009 (STRAUGE 000982-989).~~

~~9.      Draft of a First Amendment to Assignment and Royalty Agreement to be dated in April 2013 between Howmedica and COSPR and Dr. Augé (AUGÉ 000347-350).~~

9

10. ~~Draft of a First Amendment to Assignment and Royalty Agreement to be made as of May 2013 and effective as of September 1, 2012 between Howmedica and COSPR and Dr. Augé (AUGÉ 000351-354).~~

11. ~~Draft of First Amendment to Assignment and Royalty Agreement prepared by Dr. Augé to be effective September 12, 2012, between Howmedica, COSPR and Dr. Augé (AUGÉ000355-357).~~

12. ~~Asset Purchase Agreement between Howmedica and Laurane Medical S.A.S. dated May 17, 2011 (STRAUGE 00088347-387).~~

13. ~~Assignment and Assumption Agreement dated May 17, 2011 between Howmedica and Laurane Medical S.A.S. (STRAUGE00088388).~~

14. ~~Patent Assignment dated May 17, 2011 between Howmedica and Laurane Medical S.A.S. (STRAUGE00088390).~~

15. ~~Invention Assignment dated May 17, 2011 between Laurane Medical S.A.S. and Howmedica (STRAUGE 00088394-96).~~

16. ~~Copyright Assignment by Laurane Medical S.A.S. to Howmedica dated May 17, 2011 (STRAUGE00088398-400).~~

17. ~~Intellectual Property Purchase Agreement dated May 17, 2011 between Howmedica and Laurane Fumex (STRAUGE00088402-427).~~

18. ~~Patent Assignment dated May 17, 2011 by Laurent Fumex to Howmedica (STRAUGE00088429-431).~~

19. ~~Invention Assignment dated May 17, 2011 by Laurent Fumex to Howmedica (STRAUGE 00088433-435).~~

20. ~~Copyright Assignment dated May 17, 2011 by Laurent Fumex to Howmedica (STRAUGE0088437-439).~~

21. ~~U.S. Patent No. 8,911,474 B2.~~

22. ~~Prosecution records for U.S. Patent No. 8,911,474 (U.S. Patent Application No. 12/460,310).~~

23. ~~U.S. Patent No. 8,439,947 B2.~~

24. ~~Prosecution records for U.S. Patent No. 8,439,947 (U.S. Patent Application No. 12/821,504).~~

25. ~~U.S. Patent No. 9,545,252 B2.~~

26. ~~U.S. Patent No. 9,445,803 B2.~~

27. ~~U.S. Patent Application No. 13/441,290.~~

28. ~~U.S. Patent Application No. 14/308,208.~~

29. ~~U.S. Patent Application No. 14/553,474.~~

30. ~~U.S. Patent No. 9,232,954 B2.~~

31. ~~U.S. Patent Application No. 13/085,882.~~

32. ~~U.S. Patent No. 9,078,740 B2.~~

33. ~~U.S. Patent Application No. 14/322,600.~~

34. ~~U.S. Patent Application No. 14/591,581.~~

35. ~~U.S. Patent Application No. 13/368,730.~~

36. ~~Medical instruments Defendants produced in discovery in this matter, numbered STRAUGE PHYSICAL 002 through 010, 01 through 017, 019 through 022, 024 through 27 and 029 through 031, are genuine exemplars of the medical instruments sold by Stryker and/or Howmedica that they represent.~~

The Court and the parties spent considerable time working through exhibits prior to and during the Pretrial Conference.  The exhibit lists submitted at Documents 442-1, 443-1, 443-2, and 444-1, as further amended in the Court's Order Following Pretrial Conference (Doc. **XX**) govern stipulations as to authenticity and stipulations to admissibility.

**The parties further stipulate to the following facts:**

37.     Dr. Augé was a named inventor on U.S. Patent No. 8,911,474 B2.

38.     Dr. Augé was a named inventor on U.S. Patent No. 8,439,947 B2.

39.     Plaintiff assigned to Plaintiff's company known as the Center of Orthopaedic and Sports Performance Research, Inc. ("COSPR") all of his right, title, and interest in and to any Intellectual Property conceived or reduced to practice by Dr. Augé relating to the design, engineering, and marketing of a flexible drill, guide, and anchor system.

40.     Dr. Augé assigned to COSPR all of his right, title, and interest in and to any Intellectual Property conceived or reduced to practice by Dr. Augé relating to the design, engineering, and marketing of flexible drill, guide, and anchor systems employing a curved guide and flexible drill system to drill bone and insert anchors to allow suturing during orthopaedic surgery.

41.     As of July 21, 2009, COSPR owned the technology, intellectual property, and know-how conceived or reduced to practice by Dr. Augé related to a flexible drill, guide, and anchor system for implanting suture anchors into bone for soft tissue repair designed for use in orthopaedic and other types of surgical procedures.

42.     As of July 21, 2009, COSPR owned the technology, intellectual property, and know-how in the "Confidential Information" allegedly disclosed to Defendants concerning flexible drill, guide, and anchor systems.

12

**B.     Contested Material Facts.**

**1.     Plaintiff's Contentions:**   Plaintiff contends that:   (a) Defendants' Iconix, VersiTomic, and MicroFX products make use of, or are improvements or modifications to, Plaintiff's invention; (b) Defendants consistently acknowledged that the flexible drill system was Dr. Augé's invention and consistently represented and/or agreed that they would compensate him if they sold products that made use of, or were improvements or modifications to, the flexible drill system; (c) if Plaintiff's rights to compensation for Defendants' sales of the Iconix, VersiTomic, and MicroFX product lines are governed by the 2009 Royalty Agreement, then under the parties' 2009 Royalty Agreement, the parties intended that Defendants would pay royalties to Plaintiff for their sales for any products, such as the Iconix, VersiTomic, or MicroFX product lines, that made use of, or were improvements or modifications to, his invention; (d) if Plaintiff's rights to compensation for Defendants' sales of the Iconix, VersiTomic, and MicroFX products are governed by the 2009 Royalty Agreement, then under the parties' 2009 Royalty Agreement, the royalty period is the later of (i) August 20, 2030, or (ii) seven years from the first commercial sale of each royalty-bearing product; and (e) Defendants were unjustly enriched by their use of Plaintiff's invention.

**2.     Defendants' Contentions:**   Defendants deny Plaintiff's contentions, and specifically: (a) deny that Defendants' Iconix, VersiTomic, and MicroFX products make use of, or are improvements or modifications to, any flexible drill technology that Dr. Augé had or retained rights to; (b) deny that Defendants acknowledged, represented, or agreed that they would compensate Dr. Augé if they sold independently-developed products that made use of, or were improvements or modifications to, the flexible drill technology; (c) deny that, under the parties' 2009 Royalty Agreement, the parties intended that Defendants would pay royalties to Dr. Augé

for sales of products that were independently developed, marketed, and sold merely because the products involved the use of flexible technologies; (d) deny that either of the Royalty Periods proposed by Plaintiff is accurate or will be supported by any evidence at trial; and (e) deny that Plaintiff expected to receive remuneration for independently-developed products at the time he conferred on Defendants his intellectual property and exclusive rights, and further deny that Dr. Augé's failure to receive remuneration for those independently-developed products enriched Defendants beyond their contractual rights. Defendants contend they developed the accused products independent of Dr. Augé; he was not involved or consulted in their development or design. For example, the Iconix products were based on development work acquired by Stryker in an asset and technology purchase of a French company known as Laurane Medical. The VersiTomic products were developed in cooperation with another doctor. All of the accused products were designed, developed, and commercialized without any input or assistance from Dr. Augé. ~~Defendants further contend that Dr. Augé has waived his rights to challenge the validity or enforceability of the 2009 Royalty Agreement, including additional proceeds thereunder, by having accepted the benefits of the agreement throughout this lawsuit.~~[6]   Defendants further contend that Dr. Augé's hands are unclean in view of certain representations and warranties made at that time of the agreement that are contrary to his theories in litigation and anticipated claims at trial.

### V.  APPLICABLE LAW

A.      **Do the parties agree which law controls the action?**

    __X__  Yes  ____  No

---

[6] COURT: Defendants withdrew and otherwise abandoned the defense of waiver at the pretrial conference.

New Jersey law applies to all claims.

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

N/A.

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

1.     **Plaintiff:**  There are no contested issues of law for the Court to decide in advance of trial.  When Plaintiff sought to file a second supplemental pretrial order on March 3, 2021, Defendants refused to cooperate with Plaintiff on preparing a supplemental pretrial order.  Instead, Defendants asserted a supplemental pretrial order was not warranted.  (*See* Pl. Notice of Filing of 2nd Supp. Pretrial Order at 1, ECF No. 336.)  Contrary to Defendants' contentions below, Plaintiff is not seeking disgorgement of profits, and Plaintiff has proposed a jury instruction for the jury to resolve the parties' dispute regarding the length of the Royalty Period.  The time for raising these issues has long since passed.  The Court should not entertain these further requests for additional briefing from Defendants.

2.     **Defendant:**

a.     ~~Available Relief.~~  ~~Plaintiff originally sought disgorgement of Stryker's~~ ~~profits based on a liquidated damages provision included in a series of confidentiality agreements~~ ~~between the parties from 2000 to 2007.~~ ~~*See, e.g.*, Doc. 20-1 at 2.~~ ~~These confidentiality agreements,~~ ~~however, were superseded by the parties' 2009 Royalty Agreement and, as such, Plaintiff's claims~~ ~~seeking disgorgement were dismissed on summary judgment.~~ ~~*Compare* Doc. 207 at 6 ("Plaintiff~~ ~~contends [Stryker's] devices constitute 'Improvements' as defined by the Confidentiality~~ ~~Agreements. Hence, he claims ownership of both devices and any profits therefrom. If the Court~~ ~~disagrees, Plaintiff alternatively argues he is entitled to royalties on [Stryker's] devices."),~~ *~~with~~* ~~§~~

~~II.D.1, *supra*. Plaintiff now intends to seek the relief defined in the dismissed confidentiality agreements under the guise of his equitable claims of unjust enrichment and/or quantum meruit. Plaintiff's position is untenable, as (1) disgorgement of profits is not an available remedy for Plaintiff's equitable claims under New Jersey law and (2) Plaintiff's expert did not apply reliable principles and methods that would assist the jury in assessing the "fair value" based on Stryker's profits. Given the significance of these legal disputes, including their likely impact at trial, Stryker believes pre-trial clarity is necessary in whatever method and manner is most convenient to the Court.[7]~~

> b.  ~~<u>Royalty Period</u>.  The 2009 Royalty Agreement sets forth the period of time~~

~~for which royalties are owed, stating that Stryker shall pay royalties:~~

> ~~for a period of seven (7) years from the date of the first commercial sale of a Product or, if letters patent of the United States are issued in respect of the Patent Applications, the claims of which cover the Product, the life of such patent (the applicable period being defined as the "Royalty Period") whichever is longer . . .~~

~~Doc. 20-6 at 4, § 9(b).  Plaintiff contends that, for each product that Defendants sell that makes use of, or is a modification or improvement to, the flexible drill system that he invented, the Royalty Period is the later of (1) August 20, 2030, or (2) seven years from the first commercial sale of each such royalty-bearing product. For the accused ICONIX, VersiTomic, and MicroFX products, Stryker contends the Royalty Period is seven years from the first commercial sale of a~~

---

[7] COURT: The parties argued the issues of disgorgement and the principles/methods of Plaintiff's expert at the pretrial conference.  The Court concluded that profit evidence is relevant and admissible, and not tantamount to seeking disgorgement of profits.  This objection is overruled.

With respect to Plaintiff's expert, the Court also considered this issue.  The Court again concluded that profit and revenue evidence will be relevant on the issue of damages, and that Mr. Ugone's testimony may aid the jury in considering these matters.  Given the timing of this issue, the Court finds that Defendants have waived this argument.  Nevertheless Defendants may cross-examine Mr. Ugone on his principles and methods as it remains for the jury to determine the weight it will give to his testimony.

~~product covered by the Royalty Agreement (2009 to 2016). Stryker respectfully requests that the Court interpret the Royalty Agreement to determine the meaning of the "Royalty Period" provision in Section 9(b). Resolution of this question will crystallize and potentially streamline the issues for the jury.~~[8]

## VII.  MOTIONS

**A.    Pending Motions (indicate the date filed):**

**1.    Plaintiff:**  ~~On September 8, 2021, Plaintiff filed a Motion to Depose Ryan Yearsley (ECF No. 410). On September 22, 2021, Defendants filed a brief in opposition (ECF No. 413), and Plaintiff filed a reply on October 6, 2021 (ECF No. 417). Briefing on this motion is complete.~~

~~Plaintiff requests that the Court permit Plaintiff to make the proffer contemplated by the Court's Order on Defendants' Motions in Limine after the resolution of Plaintiff's pending Motion to Depose Ryan Yearsley. (*See* Order on Defs.' Mots. in Limine at 15-16, ECF No. 401.)~~[9]

**2.    Defendant:**  None.

**B.    Motions which may be filed:**

**1.    Plaintiff:**  None anticipated at this time.

**2.    Defendant:**  ~~If helpful to the Court, Stryker will file a motion and provide briefing on the contested issues of law set forth above.~~[10]

**3.    Other Motions:**  None anticipated at this time.

---

[8] COURT: The Court also considered this issue at the pretrial conference. As explained at the pretrial conference, interpretation of ambiguous contract provision is committed to the jury under New Jersey law. Interpretation of the royalty period provision, therefore, remains a fact question for the jury.

[9] COURT: This motion was resolved by Memorandum Opinion and Order on November 19, 2021. (Doc. 430).

[10] COURT: No additional briefing will be required or accepted.

## VIII.  DISCOVERY

**A.**    **Has discovery been completed?   X   Yes  _____ No**

**B.**    **Are there any discovery matters of which the Court should be aware?**

~~**Plaintiff's Position:**  Yes.  Plaintiff has requested that Defendants locate and produce a single email dated October 22, 2008 from Ryan Yearsley (then a director of marketing at Stryker) to Dr. Augé.  In this October 22, 2008 email, Mr. Yearsley appeared to attach what may be a first (or at least a very early) draft of the 2009 Royalty Agreement and draft of the Exhibit A listing "Products."  Based on Plaintiff's review — and Defendants have not contended otherwise — Defendants did not produce the October 22, 2008 email during discovery.  Plaintiff attempted to locate this email within his files, but he was unable to do so because he does not have records from his email service dating back that far.  Plaintiff asked Defendants to locate and produce this single email and its attachments because this email and its attachments may reflect critical information that is central to this case.  Defendants refused.  Plaintiff asks the Court to compel Defendants to locate and produce this single email and its attachments.~~[11]

**Defendants' Position:**  None at this time.

## IX.  ANTICIPATED WITNESSES

**A.**    **Plaintiff's Witnesses:**

1.    Plaintiff will call or have available at trial the following witnesses:

    (a) Wayne K. Augé, II
    (b) Keith Ugone
    (c) Wayne Z. Burkhead
    (d) Ryan Yearsley
    (e) John Mortarotti

---

[11] COURT: The Court heard argument from counsel on this matter at the pretrial conference.  For the reasons stated on the record, the Court deems this issue waived and denies Plaintiff's request for an order compelling Defendants to produce the email attachment.

2.      Plaintiff may call the following witnesses:

(a) Lisa Smith
(b) Bradley Shirley
(c) Eric Teutsch
(d) Joey Coddington
(e) One or more witnesses identified by Defendants

**B.      Defendants' Witnesses:**

1.      Defendant will call or have available at trial the following witnesses:

(a) Nicolas Mead
(b) Kyle Pilgeram
(c) Karl Leinsing
(d) Ambreen Salters

2.      Defendant may call the following witnesses:

(a) Wayne K. Augé, II
(b) Lisa Smith
(c) Ryan Yearsley
(d) Bryan Larson
(e) Eric Teutsch
(f) One or more witnesses identified by Plaintiff

## X.  TRIAL PREPARATION

**A.      Exhibits.**

On November 24, 2021, each party will file with a Clerk an updated exhibit list, as specified

in the Court's August 9, 2021 Order Setting Pretrial Deadlines (Doc. 407).

**B.      Witness Lists.**

**1.      Witness List:**  Previously-submitted on March 11, 2021 (Docs. 369, 372).

**2.      Deposition Testimony Designations:**  None.

**3.      Objections to Deposition Testimony Designations:**  None.

**C.      Voir Dire.**

1.      **If allowed, do the parties wish to participate in voir dire?**

Plaintiff                    **X**   Yes  _____ No

Defendant                 **X**   Yes  _____ No

2.      **Voir Dire Questions:**  Previously-submitted on March 22, 2021 (Docs. 378, 380).

**D.      Jury Instructions and Verdict.**

1.      **Jury  Instructions –** On November 24, 2021, each party will file with a Clerk revised proposed jury instructions, as specified in the Court's August 9, 2021 Order Setting Pretrial Deadlines (Doc. 407).

3.      **Deadlines for Submitting Instructions.**

a.      Jury instructions are to be filed with the Court on November 24, 2021, inclusive of objections thereto.

b.      Supplemental unanticipated jury instructions may be submitted at trial.

4.      **Joint Statement of Case.**

Pursuant to the Court's August 9, 2021 Order Setting Pretrial Deadlines (Doc. 407), the revised joint statement of the case is being submitted on November 15, 2021, contemporaneously with this supplemental joint pretrial order.

## XI. OTHER MATTERS

**A.      Settlement Possibilities.**

1.      The possibility of settlement in this case is considered:

 **X**  Poor  _____ Fair  _____ Good  _____ Excellent  _____ Unknown

2.      Do the parties have a settlement conference set with the assigned Magistrate Judge?

_____ Yes  **X**   No  If yes, when? _____

If a settlement conference has already been held, indicate approximate date:  July 23, 2019.

20

Would a follow-up settlement conference be beneficial?      **X**   Yes      _____ No

3.      Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial?

If yes, please identify: _____

If no, explain why not: _____

**B.      Length of Trial and Trial Setting.**

1.      This action is a      _____ Bench Trial   **X**  Jury Trial      _____ Both

2.      The case is set for trial on      **January 24, 2022**      .  If there is no setting, the parties estimate they will be ready for trial by at date set by the Court; the parties, however, request at least 30 days' advance notice of the trial date.

3.      The estimated length of trial is   **5**   day(s).

<h2 style="text-align:center">XII. EXCEPTIONS</h2>

None.

<h2 style="text-align:center">XIII. MODIFICATIONS-INTERPRETATION</h2>

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this _____ day of _____, 20___.

By:   /s/ Stephen R. Brown

ESBROOK LAW P.C.
Christopher J. Esbrook, admitted *pro hac vice*
Stephen R. Brown, admitted *pro hac vice*
77 West Wacker, Suite 4500
Chicago, Illinois 60601
Telephone: 312.319.7680
christopher.esbrook@esbrooklaw.com
stephen.brown@esbrooklaw.com

MODRALL, SPERLING, ROEHL,
HARRIS & SISK, P.A.

Nathan T. Nieman
Post Office Box 2168
Albuquerque, New Mexico 87103-2168
Telephone: 505.848.1800
ntn@modrall.com

*Counsel for Plaintiff Wayne Kenneth Augé, II,*
*M.D., Individually and as Trustee on Behalf*
*of Covalent Global Trust*

By:   /s/ Aaron Hankel

SHOOK, HARDY & BACON L.L.P
B. Trent Webb, admitted *pro hac vice*
Aaron Hankel, admitted *pro hac vice*
Beth Larigan, admitted *pro hac vice*
Ashley N. Harrison, admitted *pro hac vice*
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 474.6550
bwebb@shb.com
ahankel@shb.com
blarigan@shb.com
aharrison@shb.com

BUTT, THORNTON & BAEHR, PC
Monica R. Garcia
P.O. Box 3170
Albuquerque, NM 87190
P: 505-884-0777
mrgarcia@btblaw.com

*Counsel for Defendants*

UNITED STATES DISTRICT JUDGE

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 15th day of November, 2021, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.


ESBROOK LAW P.C.

By:  /s/ Stephen R. Brown