IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WAYNE KENNETH AUGÉ, II, M.D.,
*Individually and as Trustee on Behalf of
Covalent Global Trust*,

    Plaintiff,

vs.                                                         Civ. No. 14-1089 KG/SMV

STRYKER CORPORATION, and
HOWMEDICA OSTEONICS CORP.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

After the close of Plaintiff's case-in-chief, Defendants made an oral Motion for Judgment as a Matter of Law on all claims, pursuant to Federal Rule of Civil Procedure 50, and subsequently filed a written Motion on substantially the same grounds (Doc. 485). The Court considers the written motion as a supplement to the oral record. The Court will not require Plaintiff to file a written response. For the reasons explained herein, Defendants' Motion is denied.[1]

Rule 50(a) provides that a court *may* grant a motion for judgment as a matter of law where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (quoting *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006)).

---

[1] The Court ruled from the bench on May 18, 2022. This written Memorandum Opinion and Order memorializes, but does not alter, the Court's prior oral ruling.

"A district court's refusal to grant judgment as matter of law may be reversed only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in [the moving party]'s favor." *Elm Ridge Expl. Co.*, 721 F.3d 1199, 1216 (10th Cir. 2013) (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1214-15 (10th Cir. 2008)).

Plaintiff brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Alternatively, Plaintiff brings equitable claims for unjust enrichment and quantum meruit. Defendants move for judgment as a matter of law on all four claims.

To succeed on his breach of contract claim, Plaintiff must establish four elements. Defendants only disputed the final two elements, that is, that Defendants did not perform under the contract and that Plaintiff did not suffer a loss. However, Dr. Augé testified to his understanding of the Royalty Agreement, which is that products using or incorporating or improving upon his design or his idea would be added to Exhibit A, the list of royalty-bearing products. Moreover, Dr. Augé testified to, and Plaintiff tendered into evidence, emails between Dr. Augé and Ryan Yearsley, then-Director of Marketing at Stryker, after the 2009 Royalty Agreement was signed. The parties' course of dealing, as testified to by Dr. Augé and illustrated by Mr. Yearsley's emails, could support a finding that the parties intended to expand the list of royalty-bearing products on an *ad hoc* basis and that such expansion did not constitute a formal amendment to the contract. Moreover, based on this evidence, a reasonable jury could find that the 2009 Royalty Agreement encompassed all of the accused products, and Defendants breached the contract by failing to pay royalties to Plaintiff.

Plaintiff's expert, Dr. Ugone, testified to various royalty calculations using different, disputed, royalty periods under the 2009 Agreement. Using this information, the jury could find

2

that Dr. Augé suffered a financial loss—the unpaid royalties—due to Defendants' breach of the contract.

For these reasons, Defendants' Motion is denied as to the breach of contract claim.

To succeed on his claim for breach of the implied covenant of good faith and fair dealing, Plaintiff must prove three elements. Defendants only challenge sufficiency of the evidence on the second and third prongs, that is, Defendants contend no evidence exists to find that they acted in bad faith to deprive Plaintiff of rights or benefits under the 2009 Agreement, and that no evidence exists to establish that Plaintiff suffered an injury.

For the reasons discussed above, a reasonable jury could find that Plaintiff suffered a financial loss in the form of unpaid royalties.

With respect to the second element, Dr. Augé testified that he met with Mr. Yearsley at a conference and discussed the patent Defendants obtained on his invention. When he went home, Dr. Augé testified that he did some patent research and found that Defendants had submitted additional patent applications, referencing his patent number but not including his name, that appeared to incorporate his invention. Dr. Augé also testified that neither Mr. Yearsley nor anyone else at Defendants had alerted him to these additional patent applications. Moreover, Dr. Augé testified—and referenced emails from Mr. Yearsley—that Defendants sent a proposed contract modification that would eliminate that patent term from the royalty period on the same day that Defendants were alerted additional patents would issue. Taken together, a reasonable jury could find that Defendants acted in bad faith to deprive Plaintiff of royalty benefits under the contract.

For these reasons, Defendants' Motion for Judgment as a Matter of Law is denied with respect to the claim for breach of the implied covenant of good faith and fair dealing.

3

Defendants further argue that the breach of the implied covenant claim is duplicative of the breach of contract claim. While it may be true that Plaintiff must elect remedies if he prevails, the Court will not dismiss the breach of the implied covenant claim at this time.

With respect to the equitable claims, Defendants argue these should be dismissed, primarily, because it is undisputed that a contract exists and the equitable claims are unavailable. While it is undisputed that a signed writing exists, the dispute in this case centers on the meaning of the contract and whether the parties had a meeting of the minds. The Court previously ruled that the contract is ambiguous, and a reasonable jury could find that no meeting of the minds occurred on the definition of capital-P Products. Accordingly, the Court does not find, as a matter of law, that the 2009 Royalty Agreement forecloses Plaintiff's equitable claims.

Turning to the unjust enrichment claim, Defendants argue that Plaintiff failed to show they received a benefit beyond the 2009 Royalty Agreement. As just discussed, the Court is not persuaded. Defendants further contend that Plaintiff failed to introduce evidence regarding the reasonable value of the benefit Defendants received. But Dr. Ugone testified to the gross sales Defendants conducted on the accused products, a rough profit figure, and royalties calculations. Based on this information, a reasonable jury could infer the reasonable value of the alleged benefit Defendants received. Of course, the reasonable value constitutes an equitable finding which inherently involves some flexibility, and Dr. Ugone's testimony allowed for this flexibility. That is, his testimony constituted guidance rather than an edict. Based on this evidence, a reasonable jury could find in Plaintiff's favor on the unjust enrichment claim. Therefore, Defendants' motion is denied.

Finally, Defendants argue Plaintiff's claim for quantum meruit fails because there is no evidence showing Defendants received a benefit and no evidence showing Plaintiff had a

reasonable expectation he would be paid. With respect to the benefit argument, the Court remains unpersuaded for the reasons discussed above. With respect to the reasonable expectation of payment argument, the simple existence of the signed 2009 Royalty Agreement shows Plaintiff reasonably expected to be compensated, as do his emails with Mr. Yearsley and other of Defendants' employees regarding compensation. For these reasons, the Motion is denied.

Defendants made several additional arguments that merit discussion. First, Defendants argue that Court's Exhibit 1, and the Court's prior rulings, establish that Defendants acted in compliance with the 2009 Royalty Agreement because they purchased the relevant technology and were contractually allowed to use that information. That is not in dispute. The dispute is whether Defendants were required to pay royalties to, or otherwise compensate, Plaintiff for those ongoing developments. Court's Exhibit 1 does not, as a matter of law, foreclose Plaintiff's claims.

Next, with respect to the equitable claims, Defendants urge that no nexus exists between profits and the value of Plaintiff's purported contribution. The Court disagrees. While it is true that disgorgement of profits is not an available remedy under New Jersey law, New Jersey courts allow the jury to consider profits when evaluating equitable damages. *See Cohu & Stetson, Inc. v. Skowronek*, 136 N.J. Super. 97, 104 (N.J. Super. Ct. Law Div. 1975) (describing unjust enrichment and stating that a person who receives a voluntary benefit "is liable to make restitution if the circumstances of its receipt or retention are such that, as between the two persons, it would be unjust for the recipient to retain the benefit"); *Wanaque Borough Sewerage Auth. v. Township of West Milford*, 144 N.J. 564, 575 (1996) (stating that recovery under

doctrine of restitution "is typically measured by the amount the defendant has benefitted from the plaintiff's performance").

Lastly, Defendants request a ruling as a matter of the law on the royalty period enshrined in section 9b. The Court denies this request. As the Court discussed in previous rulings, the royalty period is subject to at least two reasonable interpretations, and is therefore a question for the jury. Additionally, Defendants asked the Court to limit the royalty period to the 7-year term as there is no evidence of other applicable patents. However, the jury could reasonably find that the Royalty Agreement applies to subsequent improvements and modifications based on Plaintiff's invention, and additional patents could subsequently issue. Therefore, the Court will decline Defendants' invitation and will not limit the royalty period to the 7-year term, whatever the jury decides that means, at this time.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE